IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ARRELLO BARNES,

        Plaintiff,

    v.

ANTHONY ANNUCCI, *et al.*,

        Defendants.

_____

Civil Action No.
9:15-CV-0777 (GLS/DEP)

<u>APPEARANCES</u>:

<u>FOR PLAINTIFF</u>:

ARRELLO BARNES, *Pro Se*
00-A-0597
Southport Correctional Facility
P.O. Box 2000
Pine City, NY 14871

<u>FOR DEFENDANTS</u>:

HON. ERIC T. SCHNEIDERMAN
New York State Attorney General
The Capitol
Albany, NY 12224

<u>OF COUNSEL</u>:

COLLEEN D. GALLIGAN, ESQ.
Assistant Attorney General

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Arrello Barnes, a New York State prison inmate, has commenced this action against several individuals, pursuant to 42 U.S.C. § 1983, claiming that they have deprived him of his civil rights. Although the scope of plaintiff's claims has since been narrowed by the court, as originally pleaded, plaintiff's complaint generally alleged that twenty individuals employed by the New York State Department of Corrections and Community Supervision ("DOCCS") violated his rights under the First, Eighth, and Fourteenth Amendments through a series of actions related to disciplinary proceedings brought against plaintiff while he was incarcerated at four correctional facilities operated by the DOCCS. As a result of an earlier court decision, remaining for consideration are plaintiff's claims arising under the First and Fourteenth Amendments against fourteen defendants.

Currently pending before the court is a motion brought by the defendants seeking revocation of plaintiff's *in forma pauperis* ("IFP") status pursuant to 28 U.S.C. § 1915(g) and conditional dismissal of plaintiff's complaint. For the reasons set forth below, I recommend that the motion be denied.

I. BACKGROUND

Plaintiff commenced this action on or about June 25, 2015, by the filing of a complaint and accompanying application for leave to proceed IFP and motion for a preliminary injunction. Dkt. Nos. 1, 2, 4. Although plaintiff's original IFP application was denied by the court as incomplete, his subsequent motion for IFP status was granted. Dkt. Nos. 5, 6, 10.

On September 17, 2015, Senior District Judge Gary L. Sharpe issued a decision and order, pursuant to 28 U.S.C. §§ 1915(e), 1915A, *sua sponte* dismissing (1) all claims for money damages asserted against the defendants sued in their official capacities; (2) all claims asserted against defendants Miller, Eastman, Boyea, Janora, Stickney, and Waters; and (3) plaintiff's Eighth Amendment claims. *See generally* Dkt. No. 10. Judge Sharpe also determined, however, that plaintiff's First and Fourteenth Amendment claims asserted against defendants Annucci, Bell, Borowski, Coveny, Frazier, Hanson, Mahuta, Maxwell, McKeighan, Narkiewicz, Ollies, West, Whitford, and Venetozzi should survive the court's *sua sponte* review of the complaint and require a response from those defendants. *Id.* Plaintiff thereafter filed an amended complaint, Dkt. No. 18, reflecting the court's rulings contained in the initial order, and on

3

October 26, 2015, Judge Sharpe accepted that amended complaint, which is now the operative pleading in the case. Dkt. No. 17.

On January 15, 2016, defendants filed a motion pursuant to section 28 U.S.C. § 1915(g) requesting that the court revoke plaintiff's IFP status and conditionally dismiss his complaint. Dkt. No. 30. Defendants contend that, as of October 16, 2014, plaintiff had accrued his third strike and thus is not entitled to IFP status, and that plaintiff has not alleged entitlement to the narrow imminent-danger exception set forth within the statute. *See generally* Dkt. No. 30-1. Accordingly, defendants request an order conditionally dismissing plaintiff's complaint unless plaintiff pays the requisite filing fee. *Id.* Plaintiff has since responded to defendants' motion, arguing that he has not incurred three strikes and, therefore, the motion should be denied. Dkt. No. 40. Defendants' motion, which is fully briefed, is now before me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

## II.    DISCUSSION

When a civil action is commenced in a federal district court, the

statutory filing fee, set at $400 at the time this suit was commenced, must

ordinarily be paid.[1] 28 U.S.C. §§ 1915(a). Although a court is authorized to

permit a litigant to proceed IFP if it is determined that he is unable to pay

the required filing fee, section 1915(g) provides that

> [i]n no event shall a prisoner bring a civil action or
> appeal a judgment in a civil action or proceeding
> under this section if the prisoner has, on 3 or more
> prior occasions, while incarcerated or detained in
> any facility, brought an action or appeal in a court of
> the United States that was dismissed on the
> grounds that it is frivolous, malicious, or fails to state
> a claim upon which relief may be granted, unless
> the prisoner is under imminent danger of serious
> physical injury.

28 U.S.C. § 1915(g). The manifest intent of Congress in enacting this

"three strikes" provision was to deter the filing of multiple, frivolous civil

rights suits by prison inmates. *Tafari v. Hues*, 473 F.3d 440, 443-44 (2d

Cir. 2007) (citing *Nicholas v. Tucker*, 114 F.3d 17, 19 (2d Cir. 1997));

*accord*, *Gill v. Pidlychak*, No. 02-CV-1460, 2006 WL 3751340, at *2

(N.D.N.Y. Dec. 19, 2006) (Scullin, S.J., *adopting report and*

---

[1]    The total cost for filing a civil action in this court is $400.00, consisting of the civil filing fee of $350.00, *see* 28 U.S.C. § 1914(a), and an administrative fee of $50.00. Although an inmate granted IFP status is not required to pay the $50.00 administrative fee, he is required to pay, over time, the full amount of the $350.00 filing fee regardless of the outcome of the action. *See* 28 U.S.C. § 1915(b)(3).

*recommendation by* Treece, M.J.).[2] The prophylactic effect envisioned under section 1915(g) is accomplished by requiring a prisoner who has incurred three strikes to apply the same cost-benefit analysis that other civil litigants engage in before filing suit – that is, the provision forces an inmate to assess whether the result sought to be achieved justifies paying the entire filing fee in advance, rather than in small increments from his inmate account. *Tafari*, 473 F.3d at 443.

The Second Circuit has defined a frivolous claim as one that "lacks an arguable basis either in law or in fact." *Tafari*, 473 F.3d at 442 (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). To determine whether a dismissal satisfies the failure-to-state-a-claim prong of section 1915, courts have looked to Rule 12(b)(6) of the Federal Rules of Civil Procedure for guidance. *Tafari*, 473 F.3d at 442. The question of whether the dismissal of a prior action constitutes a strike for purposes of section 1915(g) is a matter of statutory interpretation, and as such a question for the court. *Id.*

In this case, defendants contend that two mandates issued by the Second Circuit Court of Appeals dismissing appeals filed by the plaintiff as "lack[ing] an arguable basis in fact or law" constitute strikes under section

---

[2]     All unreported decisions cited in this report have been appended for the convenience of the *pro se* plaintiff.

1915(g). [Dkt. No. 30-2 at 3-4](#),35-36; *see also Barnes v. Ross*, No. 14-1614, Dkt. No. 45 (2d Cir. filed May 8, 2014); *Barnes v. Ricks*, No. 06-4237 (2d Cir. filed Sept. 12, 2006). I agree that those two dismissals represent strikes for purposes of section 1915(g). *See Tafari*, 473 F.3d at 442 ("An appeal is frivolous when it lacks an arguable basis either in law or in fact.").

The third purported strike to which defendants cite stems from *Barnes v. Ross*, No. 12-CV-1916 (S.D.N.Y. filed Mar. 14, 2012). In that case, District Judge Kevin Castel granted a summary judgment motion by the defendants and dismissed plaintiff's complaint in a twenty-eight page decision in which he analyzed the record evidence and concluded that plaintiff's claims should be dismissed on the merits. *Ross*, No. 12-CV-1916, Dkt. No. 107. In that decision, the court concluded that plaintiff only offered "conclusory assertions of misdiagnosis and discrimination that are unsupported by evidence, an affidavit that contradicts his own sworn testimony, and affidavits from other . . . inmates that contain vague or irrelevant assertions" in opposition to the defendants' motion. *Id.*, Dkt. No. 107 at 1.

Absent an explicit finding of frivolousness, maliciousness, or failure to state a claim upon which relief may be granted, it is doubtful that the

entry of summary judgment dismissing a complaint can qualify as a strike under section 1915(g). Indeed, courts in this circuit have routinely held that a dismissal at the summary judgment stage does not count as a strike for purposes of section 1915(g). *See Hayes v. Herb*, No. 11-CV-1271, 2014 WL 1292235, at *9 (N.D.N.Y. Mar. 31, 2014) (Sharpe, J., *adopting report and recommendation by* Peebles, M.J.) (holding that a case dismissed at summary judgment would not count as a strike against plaintiff for IFP purposes); *Orraca v. Augustine*, No. 10-CV-0840, 2013 WL 5411703, at *2 n.4 (W.D.N.Y. Sept. 26, 2013) (noting that cases dismissed on a motion for summary judgment do not count as strikes); *Sidney v. Fischer*, No. 09-CV-1326, 2011 WL 4478679, at *3 (N.D.N.Y. Aug. 8, 2011) (Baxter, M.J.) (noting that, in the Second Circuit, cases decided at summary judgment do not generally qualify as a strike); *Lewis v. Healy*, No. 08-CV-0148, 2008 WL 5157194, at *5 n.6 (N.D.N.Y. Dec. 8, 2008) (Kahn, J., *adopting report and recommendation by* Peebles, M.J.) (finding that one of the plaintiff's previous dismissals "likely does not qualify as a strike since [his] claims were dismissed on motion for summary judgment, rather than based upon a failure to state a claim upon which relief may be granted"); *Martin v. Wallis*, No. 07-CV-0175, 2008 WL 3471864, at *4 (D. Vt. Aug. 12, 2008) ("[C]ourts have also held that a case decided at summary judgment

8

generally does not qualify for a strike under [section] 1915."); *Ramsey v. Goord*, No. 05-CV-0047, 2007 WL 1199573, at *2 (W.D.N.Y. Apr. 19, 2007) ("Moreover, a dismissal on summary judgment is generally not considered within the parameters of the three-strikes rule's requirement that the actions be dismissed as frivolous, malicious, or for failure to state a claim."); *see also Richardson v. Ray*, 402 F. App'x 775, 776 (4th Cir. 2010). In granting the defendants' motion for summary judgment in *Barnes v. Ross*, Judge Castel explicitly considered and relied on evidence outside of the pleadings. This fact undermines any potential argument that the dismissal of plaintiff's claims in that action could properly be construed as having been based upon the finding of a failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and thus falling within the scope of section 1915(g). *Barnes v. Ross*, No. 12-CV-1916, Dkt. No. 107.

Because defendants have demonstrated that plaintiff Barnes has incurred only two strikes for purposes of section 1915(g), and the court's independent review of plaintiff's litigation history supports that conclusion, defendants' motion should be denied, and plaintiff's IFP status should remain intact.

III.   <u>SUMMARY AND RECOMMENDATION</u>

While the defendants have demonstrated that plaintiff Barnes has earned two strikes under the three-strikes provision of section 1915(g), the third determination offered by the defendants as a purported strike does not qualify because it was based upon the entry of summary judgment dismissing plaintiff's complaint, and not upon a finding that plaintiff's complaint was frivolous, malicious or failed to state a claim upon which relief could be granted. Accordingly, it is respectfully

RECOMMENDED that defendants' motion to revoke plaintiff's IFP status and conditionally dismiss the complaint in this matter, Dkt. No. 30, be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 86 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

Dated:     August 10, 2016
           Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Anthony G. GILL, Plaintiff,
v.
Chris PIDLYPCHAK, Correction Officer and T.G.
Dygert, Correction Officer, Defendants.
No. 902-CV-1460 (FJS/RFT).

Dec. 19, 2006.

Anthony G. Gill, of counsel, Comstock, NY, Plaintiff, Pro Se.

Hon. Eliot Spitzer, Attorney General of the State of New York, Douglas Goglia, Esq., Asst. Attorney General, of counsel, Albany, NY, for Defendants.

### *DECISION AND ORDER*

FREDERICK J. SCULLIN, JR., S.J.

**\*1** The above-captioned matter having been presented to me by the Report-Recommendation of Magistrate Judge Randolph F. Treece filed November 20, 2006 and the Court having reviewed the Report-Recommendation and the entire file in this matter, and no objections to said Report-Recommendation having been filed, it is hereby

**ORDERED,** that the Report-Recommendation of Magistrate Judge Randolph F. Treece filed November 20, 2006 is **ACCEPTED** in its entirety, for the reasons stated therein; and it is further

**ORDERED,** that the Order granting Gill's IFP status is **VACATED;** and it is further

**ORDERED,** that Defendants' Letter-Motion seeking dismissal of Gill's Complaint pursuant to 28 U.S.C. § 1915(g) is **GRANTED** unless Gill pays the filing fee of $150.00 within thirty days of this final order.

**IT IS SO ORDERED.**

RANDOLPH F. TREECE, United States Magistrate Judge.

### *REPORT-RECOMMENDATION and ORDER*
### I. INTRODUCTION

Pro se Plaintiff Anthony Gill brings this civil action pursuant to 42 U.S.C. § 1983, alleging Defendants violated his civil rights while he was incarcerated at the Auburn Correctional Facility. Dkt. No. 1, Compl. [FN1] Specifically, Gills alleges Defendants Pidlypchak and Dygert filed false misbehavior reports against him and harassed him in retaliation for the filing of numerous institutional grievances against them and a civil lawsuit against Pidlypchak for smoking violations. Compl., Pl.'s Statement of Facts.

> FN1. On December 23, 2002, Defendants filed a Motion to Dismiss Gill's Complaint pursuant to FED.R.CIV.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Dkt. No. 6, Mot. to Dismiss. By Order of the Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky sitting by designation, Defendants' Motion was granted dismissing Gill's complaint with prejudice. Dkt. No. 17, Decision & Order, dated July 28, 2003. Judgment was entered on August 1, 2003 and Gill appealed. Dkt. Nos. 18 & 19, Notice of Appeal, dated Aug. 4, 2003. The Second Circuit affirmed the District Court's dismissal of Gill's Eighth Amendment claim, but vacated the Judgment of the District Court dismissing Gill's First Amendment claim and remanded the action back to the District Court. *Gill v. Pidlypchak,* 389 F.3d 379 (2d Cir.2004).

Presently before the Court is Defendants' Letter-Motion requesting an order revoking Gill's *in forma pauperis* (IFP) status and conditionally dismissing this action pursuant to 28 U.S.C. § 1915(g) pending Gill's prompt payment of the statutory filing fee of $150.00.[FN2] Dkt. No. 35, Defs.' Lt.-Mot., dated June 19, 2006, at p. 1. Gill opposes the motion. Dkt. No. 38, Pl.'s Lt.-Resp.,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

dated July 21, 2006. For the reasons that follow, it is hereby recommended that the Order granting Gill's IFP status be **vacated** and that Defendants' Motion pursuant to § 1915(g) be **granted** unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court.

> FN2. Although Defendants' Letter-Motion states $250.00 as the required filing fee for this action, Defs.' Lt.-Mot. at p. 1, "[D]efendants and their counsel acknowledge that the filing fee was $150.00 when this action was commenced, and their request that [P]laintiff be required to fully pay a filing fee of $250.00 to avoid the dismissal of this action was merely an oversight." Dkt. No. 37, Defs.' Lt.-Reply, dated July 27, 2006, at p. 1.

## II. DISCUSSION

### A. 28 U.S.C. § 1915

Under 28 U.S.C. § 1915, individuals may seek leave of the court to pursue their claims without prepayment of fees and costs and proceed with the litigation as a poor person or *in forma pauperis.* 28 U.S.C. § 1915(a)(1). The IFP statute enables prisoners to similarly apply for this privilege, and indeed, many, if not most, incarcerated individuals bringing suits have taken advantage of such opportunity. *Id.* at § 1915(a)(2). Also under this statute, a court may *sua sponte* dismiss a case if it determines that such action is (1) frivolous or malicious, (2) fails to state a claim on which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. *Id.* at § 1915(e)(2).

**\*2** Recognizing the potential for prisoner abuse and seeking to relieve congestion of patently frivolous prisoner suits, Congress enacted the Prisoner Litigation Reform Act (**PLRA**) of 1996, which renders several restrictions on a **prisoner's** ability to exploit the justice system. One such mechanism is the so-called "three **strikes** rule" which bars inmates from proceeding IFP after three or more previous claims, where the prisoner was granted IFP status, have been **dismissed** as "frivolous, malicious, or [for] fail[ing] to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." *Id.*

In recognizing the legitimate government interests fostered by the **PLRA** amendments, the Second Circuit stated that,

> [p]rior to the enactment of the *in forma pauperis* amendments, inmates suffered no economic disincentive to **filing lawsuits**. Indeed, the very nature of incarceration-prisoners have substantial free time on their hands, their basic living expenses are paid by the state and they are provided free of charge the essential resources needed to **file** actions and appeals, such as paper, pens, envelopes and legal materials-has fostered a " ' nothing to lose and everything to gain' " environment which allows inmates indiscriminately to **file** suit at taxpayers' expense. *See Anderson v. Coughlin, 700 F.2d 37, 42 (2d Cir.1983)* (quoting *Jones v. Bales,* 58 F.R.D. 453, 463-64 (N.D.Ga.1972), *aff'd,* 480 F.2d 805 (5th Cir.1973).

> *Nicholas v. Tucker* 114 F.3d 17, 20 (2d Cir.1997).

In calculating which cases **count** towards the three **strikes** rule, a court may look to **dismissals** which predated the enactment of the **PLRA**. *Welch v. Galie, 207 F.3d 130, 132 (2d Cir.2000).* The Second Circuit has held such a calculation to be proper and constitutional given that the determination to revoke IFP status in no way affects the merits of the **prisoner's** case, but rather prevents the inmate from continuing suit without the payment of fees. *Id.*

### B. Gill's "Three Strikes"

As noted by the Second Circuit, Gill "is no stranger ... to the federal courts." *Gill v. Pidlypchak,* 389 F.3d 379, 384 (2d Cir.2004). He "has **commenced** at least 116 different [actions] against the State of New York, its executive agencies, and its officials and employees, *see Gill v. Calescibetta,* 00-CV-1553, Decision & Order, dated Aug. 5, 2004, at p. 3, n. 2 (N.D.N.Y.); has **filed** at least thirty-nine (39) different **lawsuits** in district courts within the Second Circuit, *see* Defs.' Lt.-Mot., Supp. 4; and has initiated nineteen (19) suits, in addition to the pending action, in this District alone.[FN3] In fact, this Court has previously held that in light of Gill's experience in federal court and his overly litigious nature, he is not

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

entitled to "the special solicitude afforded [to] *pro se* litigants [.]" *Gill v. Riddick,* 2005 WL 755745, at *2 (N.D.N.Y. Mar. 31, 2005).

> **FN3.** *See* (1) *Gill v. LeFevre,* 85-CV-1534 (HGM/RWS) (closed on Jan. 17, 1992-failure to prosecute); (2) *Gill v. Padilla,* 88-CV-147 (NPM/RWS) (closed on Mar. 26, 1992-failure to prosecute); (3) *Gill v. Burch,* 94-CV-369 (FJS/DNH) (closed on Apr. 1, 1999-Defs.' Mot. for Summ. J. granted); (4) *Gill v. Kramer,* 98-CV-45 (FJS/GJD) (closed on Sept. 30, 1999-Stip. of Discont.); (5) *Gill v. Anderson,* 98-CV-1472 (LEK/GLS) (closed on Mar. 3, 2003-Defs.' Mot. for Summ. J. granted); (6) *Gill v. Gummerson,* 99-CV-761 (NAM/DEP) (closed on Aug. 20, 2003-Jury Verdict for Defs.); (7) *Gill v. Dann,* 00-CV-566 (NAM/RFT) (closed on Nov. 21, 2001-failure to prosecute); (8) *Gill v. Tuttle,* 00-CV-585 (DNH/DRH) (currently pending); (9) *Gill v. Doe,* 00-CV-983 (GLS/DEP) (closed on June 8, 2004-Defs.' Mot. for Summ. J. granted); (10) *Gill v. Calescibetta,* 00-CV-1553 (LEK/DEP) (currently stayed); (11) *Gill v. McGinnis,* 00-CV-1787 (LEK/RWS) *(habeas corpus* petition transferred to S.D.N.Y. on Dec. 19, 2000); (12) *Gill v. Smith,* 00-CV-1905 (FJS/GJD) (currently pending); (13) *Gill v. Butero,* 01-CV-82 (LEK/DRH) (closed on Apr. 30, 2003-Defs.' Mot. to Dismiss granted at trial); (14) *Gill v. Hoadley,* 01-CV-323 (FJS/DEP) (currently pending); (15) *Gill v. Steinberg,* 02-CV-82 (DNH/DEP) (closed on Feb. 19, 2004-Stip. of Discont.); (16) *Gill v. Pflueger,* 02-CV-130 (DNH/GJD) (closed on Jan. 30, 2003-Defs.' Mot. to Dismiss granted); (17) *Gill v. Coyne,* 02-CV-1380 (TJM/GHL) (closed on June 22, 2006-Defs.' Mot. for Summ. J. granted); (18) *Gill v. Erickson,* 02-CV-1573 (LEK/RFT) (transferred to S.D.N.Y. on Jan. 21, 2003); and (19) *Gill v. Riddick,* 03-CV-1456 (NAM/RFT) (currently pending).

When Gill commenced this action on November 20, 2002, he had already acquired at least three "strikes" for purposes of § 1915(g). A review of the cases cited in Defendants' Letter-Motion shows that Gill, while incarcerated or detained, brought actions on three or more occasions that were dismissed for "strike" reasons: *Gill v. Accetulli,* 92-CV-5039 (S.D.N.Y. July 8, 1992) (dismissed *sua sponte* as "lack[ing] an arguable basis either in law or in fact") (internal quotation marks and citations omitted); *Gill v. Anna M. Kross Center,* 92-CV-9326 (S.D.N.Y. Dec. 28, 1992) (dismissed *sua sponte* as "lack[ing] an arguable basis either in law or in fact") (internal quotation marks and citations omitted); *Gill v. LeFevre,* 85-CV-1534 (N.D.N.Y. Jan. 13, 1992) (dismissed for failure to prosecute pursuant to FED.R.CIV.P. 11); and *Gill v. Padilla,* 88-CV-147 (N.D.N.Y. Mar. 24, 1992) (dismissed for failure to prosecute pursuant to FED.R.CIV.P. 11).[FN4] Defs.' Lt.-Mot. at p. 2.

> **FN4.** In their Letter-Motion, Defendants' assert that "[i]n light of *Gill v. Eberhardt,* 04-CV-197Sc (W.D.N.Y. July 30, 2004), Gill is collaterally estopped from asserting that he has not accrued four 'strikes' by the end of 1992, and at least six 'strikes' in total." Defs.' Lt.-Mot. at p. 2, n. 4; *see* Defs.' Lt.-Reply at p. 2. Defendants' concede, however, that two of six actions cited as "strikes" by the Western District in the *Eberhardt* decision, *"Gill v. Anderson* and *Gill v. Pflueger* [,] ... were dismissed after this action was commenced, and therefore, do not count as 'strikes' for purposes of assessing whether Gill is entitled to IFP status[.]" Defs.' Lt.-Mot. at p. 2. Therefore, Defendants' rely on the remaining four cases to support their conclusion that Gill has acquired the requisite "three strikes" to revoke his IFP status. While the Court agrees with Defendants' conclusion, we do not rely on Defendants' estoppel reasoning as the *Eberhardt* case was not decided by the Western District until after Gill commenced this action. We, instead, engage in our own independent review of the cases cited in the *Eberhardt* decision.

## C. Application of *Snider v. Melindez* and *DeLeon v. Doe*

**\*3** Gill contends that § 1915(g) does not apply to him because the cases cited in Defendants' Letter-Motion as "strikes" do not meet the requirements set forth by the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

Second Circuit in *Snider v. Melindez,* 199 F.3d 108 (2d Cir.1999) and clarified in *DeLeon v. Doe,* 361 F.3d 93 (2d Cir.2004). Pl.'s Lt.-Resp. at pp. 2-3. According to Gill, the cited cases "fail to indicate w [h]ere dismissals [were] with prejudice or without prejudice as mandated in *Snider.*" Pl.'s Lt.-Resp. at p. 3.

In *Snider v. Melindez,* the Second Circuit held that the "three strikes rule" was intended to apply to those "nonmeritorious suits dismissed with prejudice, not suits dismissed without prejudice for failure to comply with a procedural prerequisite." *Snider v. Melindez,* 199 F.3d at 111.[FN5] The Court noted in that case that there are a variety of procedural reasons for which a case may be dismissed *sua sponte* and such a dismissal does not necessarily render a determination on the merits as, for example, a dismissal for frivolousness would. *See id.* at 111-113. Indeed, the Supreme Court has directed that an action is frivolous when it is based on an indisputably meritless legal theory or presents factual contentions that are clearly baseless, thus such dismissal is one on the "merits" of the case. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989) (cited in *Welch v. Galie,* 207 F.3d 130, 132 (2d Cir.2000)).

> FN5. In *Snider,* the Second Circuit held that a pre-answer dismissal based upon a failure to exhaust administrative remedies is a dismissal for failure to comply with procedural prerequisites and such a non prejudicial dismissal does not count towards the "three strikes rule."

In *DeLeon v. Doe,* the Second Circuit, in upholding its ruling in *Snider,* reiterated that "district court judgments *should* clearly set forth the reasons for dismissal, including whether the dismissal is because the claim is frivolous, malicious, or fails to state a claim, whether it is because the prisoner has failed to exhaust an available administrative remedy, or for other reasons." 361 F.3d at 95 (emphasis in original) (internal quotation marks omitted). The Second Circuit further noted that "[t]hese judgment[s] should also state whether the dismissal is with prejudice or without," and that "[c]larifications of this sort 'will undoubtedly assist subsequent courts that must determine whether a plaintiff is barred from maintaining an action *in forma pauperis* by the three strikes rule of Section 1915(g).' " *Id.*

Gill's interpretation of *Snider* and *DeLeon* as they apply to the cases cited by the Defendants is flawed. First, although *Snider* is clear in its application to those cases dismissed on the merits, the Second Circuit does not mandate that district courts expressly use the language "with or without prejudice" in judgments of dismissal. The language used by the Second Circuit, specifically the term "should," indicates that the language is advisory or instructive rather than mandatory. If the Second Circuit had intended district courts to include this specific language, as Gill argues, it would have stated that the district courts "must" or "shall," which indicates a mandate or requirement.

**\*4** Second, Gill's arguments display a crafty articulation of both the *Snider* and *Doe* cases as they apply to § 1915(g) strikes. Both cases addressed the issue of "whether the entry of a strike [under § 1915(g) ] is properly considered *at the time an action is dismissed.*" *Id.* (citing *Snider v. Melindez,* 199 F.3d at 115) (emphasis added). While the Second Circuit expressed strong doubt about this issue in *Snider,* it decided the matter in *DeLeon* and held that "district courts should not issue these **strikes** one by one, in their orders of judgment, as they dispose of suits that may ultimately-upon determination at a proper time-qualify as **strikes** under the terms of § 1915(g)." [FN6] *Id* .

> FN6. The Second Circuit in *DeLeon* based its holding on its rationale in *Snider,* which reads:
>
> The designation of **strikes** has no practical consequences until a defendant in a **prisoner's lawsuit** raises the contention that the **prisoner's** suit or appeal may not be maintained *in forma pauperis* pursuant to 28 U.S.C. § 1915 because the prisoner has accumulated three **strikes**. At that time, because a practical consequence turns on the answer to the question, a court will need to determine whether the prisoner should be charged with three **strikes**. Litigation over the issue at an earlier juncture would involve the courts in disputes that might never have any practical consequence.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

*DeLeon v. Doe,* 361 F.3d at 95 (quoting *Snider v. Melindez,* 199 F.3d at 115).

The Second Circuit also stated that "[c]ontemporanous classification of dismissals as strikes or non-strikes at a time when the ruling has no immediate consequences may also lead district courts to undertake such classifications carelessly, and with inadequate explanation of why a given dismissal falls into one category and not the other." *Id.* (quoting *Snider v. Melindez,* 199 F.3d at 115, n. 4).

Here, Gill challenges four cases cited by the Defendants as "strikes." Pl.'s Lt.-Resp. at p. 3. Addressing these cases specifically in light of Gill's arguments and as noted above, we find that all four actions were dismissed on the merits and therefore, qualify as "strikes" against Gill for purposes of the "three strikes rule."

Although the Southern District in deciding *Accettulli* and *Kross* did not expressly state that the cases were dismissed "with prejudice" in the orders of dismissal, the District Court dismissed Gill's claims in both cases because they "lack[ed] an arguable basis either in law or fact." *Gill v. Accettulli,* 92-CV-5039, Order of Dismissal, dated July 8, 1992, at p. 4 (S.D.N.Y .) (citing *Neitzke v. Williams,* 490 U.S. at 325); *Gill v. Anna M. Kross Center,* 92-CV-9326, Order of Dismissal, dated Dec. 28, 1992, at p. 2 (S.D.N.Y .) (citing *Neitzke v. Williams,* 490 U.S. at 325). Additionally, in *Kross,* the district court went on to "certify pursuant to 28 U.S.C. § 1915(a) that any appeal from this order would not be taken in good faith." *Kross,* 92-CV-9326, at p. 2. Most importantly, Gill himself concedes that both the *Accettulli* and *Kross* cases "were **dismissed** due to they lacked an arguable basis in law or in fact." Pl.'s Lt.-Resp. at p. 3. In light of these statements and Gill's concession, the **dismissals** of the claims in these cases were clearly on the merits, even though the court did not specifically use the language "with or without prejudice." Each of these cases would, therefore, qualify as "**strikes**" against the Plaintiff.

A review of the docket shows that both the *LeFevre* and *Padilla* cases were **dismissed** by the Northern District for failure to prosecute pursuant to Rule 11 of the Federal Rules of Civil Procedure.[FN7] By his own admission, Gill concedes that these two cases were **dismissed** pursuant to FED.R.CIV.P. 11. Irrespective of specific language used in the District's Decisions and Orders **dismissing** these actions, we find that a Rule 11 **dismissal** is a **dismissal** on the merits. Therefore, these two cases would also each qualify as "**strikes**" against the Plaintiff.

FN7. A history of failure to prosecute is akin to the **filing** of a frivolous claim.

From the discussion and analysis above, it is clear that these types of **dismissals** are precisely what Congress had in mind when it enacted the **PLRA**, hoping to discourage and limit the amount of *frivolous* **lawsuits** brought by prisoner litigants. Accordingly, the Court finds that Gill, while incarcerated or detained, had acquired at least three "**strikes**" at the time he **commenced** the present action.

**D. Exception to the "Three Strikes Rule"**

**\*5** Notwithstanding prior **dismissals**, an inmate can overcome the "three **strikes** rule" and proceed with an action if the prisoner can show that he or she "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). This imminent danger exception, however, applies only to impending harms that existed at the time the complaint is filed, and not to those harms which already occurred. *Malik v. McGinnis,* 293 F.3d 559, 563 (2d Cir.2002) ( "[T]he language of § 1915(g) makes clear that the 'imminent danger' exception only applies to danger existing at the time the complaint is filed."). Based upon a review of Gill's Complaint, there is nothing to suggest that he was under imminent threat of serious physical injury at the time he filed his Complaint. While Gill raises this exception in his opposition to Defendants' Motion, his claim that he "was encountering impending harms at the time [he] filed this [C]omplaint due to [the fact that] he was still incarcerated at Auburn C[orrectional] F[acility]" is clearly insufficient to overcome the "three strikes rule." Pl.'s Lt.-Resp. at p. 2. Permitting a prisoner to defeat the "three strikes" bar by simply citing incarceration as the impending harm runs afoul of Congress' intent in enacting § 1915 and would essentially render the PLRA meaningless.

**E. Revoking Gill's IFP Status**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

Gill argues that the Defendants are estopped from moving to revoke his *in forma pauperis* status because they failed to move for revocation during earlier proceedings, specifically in their Rule 12(b)(6) Motion to Dismiss, filed on December 23, 2002, *see* Dkt. No. 6, in their Letters to the Court in support of their Motion to Dismiss, filed on April 24, 2003 and May 7, 2003, *see* Dkt. Nos. 14 & 15, during Plaintiff's oral deposition taken in May 2005, or in Defendants' Answer, filed on June 20, 2006.[FN8] Pl.'s Lt.-Resp. at p. 4.

> **FN8.** Gill also cites applications made by the Defendants to the Second Circuit during his Appeal of Judge Hood's Order and Judgment, *see* Dkt. Nos. 17-19, wherein he alleges Defendants failed to move for revocation of his IFP status, which was granted by the Circuit on August 1, 2003. Pl.'s Lt.-Resp. at pp. 4-5. IFP status granted by the Second Circuit is separate and distinct from IFP status granted by the Northern District. Defendants' objections to IFP status granted by the Second Circuit are not relevant to Defendants' application before this Court and would have no bearing on his IFP status in this District. Further, any objections put forth by the Defendants' in papers submitted to the Second Circuit cannot be accessed or considered by this Court.

Contrary to Gill's suggestion, dismissal is not precluded by the fact that a litigant has already been granted IFP status. "When a court becomes aware of three prior strikes only after granting IFP status, the court may appropriately revoke that status and bar the complaint under § 1915(g)." *Polanco v. Burge,* 05-CV-651, Rep.-Rec. & Order, dated May 12, 2006, at p. 3 (N.D.N.Y) (citing *McFadden v. Parpan,* 16 F.Supp.2d 246, 247 (E.D.N.Y.1998)).

In light of the foregoing, it is recommended that the Order granting IFP status to Gill be **vacated** and that Gill's Complaint be dismissed unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that the Order granting Gill's IFP status (Dkt. No. 4) be VACATED; and it is further

**RECOMMENDED** that Defendants' Letter-Motion seeking dismissal of Gill's Complaint pursuant to 28 U.S.C. § 1915(g) (Dkt. No. 35) be **GRANTED** unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court; and it is further

**\*6 ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72, 6(a) & 6(e).

N.D.N.Y.,2006.

Gill v. Pidlypchak
Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)
**(Cite as: 2006 WL 3751340 (N.D.N.Y.))**


Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Anthony G. Gill, Plaintiff,
v.
Chris PIDLYPCHAK, Correction Officer and T.G.
Dygert, Correction Officer, Defendants.

No. 902-CV-1460 (FJS/RFT).
Dec. 19, 2006.

Anthony G. Gill, of counsel, Comstock, NY,
Plaintiff, Pro Se.

Hon. Eliot Spitzer, Attorney General of the State of
New York, Douglas Goglia, Esq., Asst. Attorney
General, of counsel, Albany, NY, for Defendants.

### DECISION AND ORDER
FREDERICK J. SCULLIN, JR., S.J.

**\*1** The above-captioned matter having been
presented to me by the Report-Recommendation of
Magistrate Judge Randolph F. Treece filed Novem-
ber 20, 2006 and the Court having reviewed the Re-
port-Recommendation and the entire file in this
matter, and no objections to said Report-
Recommendation having been filed, it is hereby

ORDERED, that the Report-Recommendation
of Magistrate Judge Randolph F. Treece filed
November 20, 2006 is **ACCEPTED** in its entirety,
for the reasons stated therein; and it is further

ORDERED, that the Order granting Gill's IFP
status is **VACATED;** and it is further

ORDERED, that Defendants' Letter-Motion
seeking dismissal of Gill's Complaint pursuant to
28 U.S.C. § 1915(g) is **GRANTED** unless Gill pays
the filing fee of $150.00 within thirty days of this
final order.

IT IS SO ORDERED.

RANDOLPH F. TREECE, United States Magistrate
Judge.
### *REPORT-RECOMMENDATION and ORDER*
### I. INTRODUCTION
Pro se Plaintiff Anthony Gill brings this civil
action pursuant to 42 U.S.C. § 1983, alleging De-
fendants violated his civil rights while he was in-
carcerated at the Auburn Correctional Facility. Dkt.
No. 1, Compl. FN1 Specifically, Gills alleges De-
fendants Pidlypchak and Dygert filed false misbe-
havior reports against him and harassed him in re-
taliation for the filing of numerous institutional
grievances against them and a civil lawsuit against
Pidlypchak for smoking violations. Compl., Pl.'s
Statement of Facts.

> FN1. On December 23, 2002, Defendants
> filed a Motion to Dismiss Gill's Complaint
> pursuant to FED.R.CIV.P. 12(b)(6) for
> failure to state a claim upon which relief
> can be granted. Dkt. No. 6, Mot. to Dis-
> miss. By Order of the Honorable Joseph
> M. Hood, United States District Judge for
> the Eastern District of Kentucky sitting by
> designation, Defendants' Motion was gran-
> ted dismissing Gill's complaint with preju-
> dice. Dkt. No. 17, Decision & Order, dated
> July 28, 2003. Judgment was entered on
> August 1, 2003 and Gill appealed. Dkt.
> Nos. 18 & 19, Notice of Appeal, dated
> Aug. 4, 2003. The Second Circuit affirmed
> the District Court's dismissal of Gill's
> Eighth Amendment claim, but vacated the
> Judgment of the District Court dismissing
> Gill's First Amendment claim and re-
> manded the action back to the District
> Court. *Gill v. Pidlypchak,* 389 F.3d 379
> (2d Cir.2004).

Presently before the Court is Defendants' Let-
ter-Motion requesting an order revoking Gill's *in
forma pauperis* (IFP) status and conditionally dis-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

missing this action pursuant to 28 U.S.C. § 1915(g) pending Gill's prompt payment of the statutory filing fee of $150.00.[FN2] Dkt. No. 35, Defs.' Lt.-Mot., dated June 19, 2006, at p. 1. Gill opposes the motion. Dkt. No. 38, Pl.'s Lt.-Resp., dated July 21, 2006. For the reasons that follow, it is hereby recommended that the Order granting Gill's IFP status be **vacated** and that Defendants' Motion pursuant to § 1915(g) be **granted** unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court.

> FN2. Although Defendants' Letter-Motion states $250.00 as the required filing fee for this action, Defs.' Lt.-Mot. at p. 1, "[D]efendants and their counsel acknowledge that the filing fee was $150.00 when this action was commenced, and their request that [P]laintiff be required to fully pay a filing fee of $250.00 to avoid the dismissal of this action was merely an oversight." Dkt. No. 37, Defs.' Lt.-Reply, dated July 27, 2006, at p. 1.

## II. DISCUSSION
### A. 28 U.S.C. § 1915

Under 28 U.S.C. § 1915, individuals may seek leave of the court to pursue their claims without prepayment of fees and costs and proceed with the litigation as a poor person or *in forma pauperis.* 28 U.S.C. § 1915(a)(1). The IFP statute enables prisoners to similarly apply for this privilege, and indeed, many, if not most, incarcerated individuals bringing suits have taken advantage of such opportunity. *Id.* at § 1915(a)(2). Also under this statute, a court may *sua sponte* dismiss a case if it determines that such action is (1) frivolous or malicious, (2) fails to state a claim on which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. *Id.* at § 1915(e)(2) .

**\*2** Recognizing the potential for prisoner abuse and seeking to relieve congestion of patently frivolous prisoner suits, Congress enacted the Prisoner Litigation Reform Act (PLRA) of 1996, which

renders several restrictions on a prisoner's ability to exploit the justice system. One such mechanism is the so-called "three strikes rule" which bars inmates from proceeding IFP after three or more previous claims, where the prisoner was granted IFP status, have been dismissed as "frivolous, malicious, or [for] fail[ing] to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." *Id.*

In recognizing the legitimate government interests fostered by the PLRA amendments, the Second Circuit stated that,

> [p]rior to the enactment of the *in forma pauperis* amendments, inmates suffered no economic disincentive to filing lawsuits. Indeed, the very nature of incarceration-prisoners have substantial free time on their hands, their basic living expenses are paid by the state and they are provided free of charge the essential resources needed to file actions and appeals, such as paper, pens, envelopes and legal materials-has fostered a " 'nothing to lose and everything to gain' " environment which allows inmates indiscriminately to file suit at taxpayers' expense. *See Anderson v. Coughlin,* 700 F.2d 37, 42 (2d Cir.1983) (quoting *Jones v. Bales,* 58 F.R.D. 453, 463-64 (N.D.Ga.1972), *aff'd,* 480 F.2d 805 (5th Cir.1973).

> *Nicholas v. Tucker* 114 F.3d 17, 20 (2d Cir.1997).

In calculating which cases count towards the three strikes rule, a court may look to dismissals which predated the enactment of the PLRA. *Welch v. Galie,* 207 F.3d 130, 132 (2d Cir.2000). The Second Circuit has held such a calculation to be proper and constitutional given that the determination to revoke IFP status in no way affects the merits of the prisoner's case, but rather prevents the inmate from continuing suit without the payment of fees. *Id.*

### B. Gill's "Three Strikes"

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)
**(Cite as: 2006 WL 3751340 (N.D.N.Y.))**

As noted by the Second Circuit, Gill "is no stranger ... to the federal courts." *Gill v. Pidlypchak,* 389 F.3d 379, 384 (2d Cir.2004). He "has commenced at least 116 different [actions] against the State of New York, its executive agencies, and its officials and employees, *see Gill v. Calescibetta,* 00-CV-1553, Decision & Order, dated Aug. 5, 2004, at p. 3, n. 2 (N.D.N.Y.); has filed at least thirty-nine (39) different lawsuits in district courts within the Second Circuit, *see* Defs.' Lt.-Mot., Supp. 4; and has initiated nineteen (19) suits, in addition to the pending action, in this District alone.[FN3] In fact, this Court has previously held that in light of Gill's experience in federal court and his overly litigious nature, he is not entitled to "the special solicitude afforded [to] *pro se* litigants [.]" *Gill v. Riddick,* 2005 WL 755745, at *2 (N.D.N.Y. Mar. 31, 2005).

> FN3. *See* (1) *Gill v. LeFevre,* 85-CV-1534 (HGM/RWS) (closed on Jan. 17, 1992-failure to prosecute); (2) *Gill v. Padilla,* 88-CV-147 (NPM/RWS) (closed on Mar. 26, 1992-failure to prosecute); (3) *Gill v. Burch,* 94-CV-369 (FJS/DNH) (closed on Apr. 1, 1999-Defs.' Mot. for Summ. J. granted); (4) *Gill v. Kramer,* 98-CV-45 (FJS/GJD) (closed on Sept. 30, 1999-Stip. of Discont.); (5) *Gill v. Anderson,* 98-CV-1472 (LEK/GLS) (closed on Mar. 3, 2003-Defs.' Mot. for Summ. J. granted); (6) *Gill v. Gummerson,* 99-CV-761 (NAM/DEP) (closed on Aug. 20, 2003-Jury Verdict for Defs.); (7) *Gill v. Dann,* 00-CV-566 (NAM/RFT) (closed on Nov. 21, 2001-failure to prosecute); (8) *Gill v. Tuttle,* 00-CV-585 (DNH/DRH) (currently pending); (9) *Gill v. Doe,* 00-CV-983 (GLS/DEP) (closed on June 8, 2004-Defs.' Mot. for Summ. J. granted); (10) *Gill v. Calescibetta,* 00-CV-1553 (LEK/DEP) (currently stayed); (11) *Gill v. McGinnis,* 00-CV-1787 (LEK/RWS) *(habeas corpus* petition transferred to S.D.N.Y. on Dec. 19, 2000); (12) *Gill v. Smith,* 00-CV-1905 (FJS/GJD) (currently pending); (13) *Gill v. Butero,* 01-CV-82 (LEK/DRH) (closed on Apr. 30, 2003-Defs.' Mot. to Dismiss granted at trial); (14) *Gill v. Hoadley,* 01-CV-323 (FJS/DEP) (currently pending); (15) *Gill v. Steinberg,* 02-CV-82 (DNH/DEP) (closed on Feb. 19, 2004-Stip. of Discont.); (16) *Gill v. Pflueger,* 02-CV-130 (DNH/GJD) (closed on Jan. 30, 2003-Defs.' Mot. to Dismiss granted); (17) *Gill v. Coyne,* 02-CV-1380 (TJM/GHL) (closed on June 22, 2006-Defs.' Mot. for Summ. J. granted); (18) *Gill v. Erickson,* 02-CV-1573 (LEK/RFT) (transferred to S.D.N.Y. on Jan. 21, 2003); and (19) *Gill v. Riddick,* 03-CV-1456 (NAM/RFT) (currently pending).

When Gill commenced this action on November 20, 2002, he had already acquired at least three "strikes" for purposes of § 1915(g). A review of the cases cited in Defendants' Letter-Motion shows that Gill, while incarcerated or detained, brought actions on three or more occasions that were dismissed for "strike" reasons: *Gill v. Accettulli,* 92-CV-5039 (S.D.N.Y. July 8, 1992) (dismissed *sua sponte* as "lack[ing] an arguable basis either in law or in fact") (internal quotation marks and citations omitted); *Gill v. Anna M. Kross Center,* 92-CV-9326 (S.D.N.Y. Dec. 28, 1992) (dismissed *sua sponte* as "lack[ing] an arguable basis either in law or in fact") (internal quotation marks and citations omitted); *Gill v. LeFevre,* 85-CV-1534 (N.D.N.Y. Jan. 13, 1992) (dismissed for failure to prosecute pursuant to FED.R.CIV.P. 11); and *Gill v. Padilla,* 88-CV-147 (N.D.N.Y. Mar. 24, 1992) (dismissed for failure to prosecute pursuant to FED.R.CIV.P. 11).[FN4] Defs.' Lt.-Mot. at p. 2.

> FN4. In their Letter-Motion, Defendants' assert that "[i]n light of *Gill v. Eberhardt,* 04-CV-197Sc (W.D.N.Y. July 30, 2004), Gill is collaterally estopped from asserting that he has not accrued four 'strikes' by the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)
**(Cite as: 2006 WL 3751340 (N.D.N.Y.))**

end of 1992, and at least six 'strikes' in total." Defs.' Lt.-Mot. at p. 2, n. 4; *see* Defs.' Lt.-Reply at p. 2. Defendants' concede, however, that two of six actions cited as "strikes" by the Western District in the *Eberhardt* decision, *"Gill v. Anderson* and *Gill v. Pflueger* [,] ... were dismissed after this action was commenced, and therefore, do not count as 'strikes' for purposes of assessing whether Gill is entitled to IFP status[.]" Defs.' Lt.-Mot. at p. 2. Therefore, Defendants' rely on the remaining four cases to support their conclusion that Gill has acquired the requisite "three strikes" to revoke his IFP status. While the Court agrees with Defendants' conclusion, we do not rely on Defendants' estoppel reasoning as the *Eberhardt* case was not decided by the Western District until after Gill commenced this action. We, instead, engage in our own independent review of the cases cited in the *Eberhardt* decision.

### C. Application of *Snider v. Melindez* and *DeLeon v. Doe*

**\*3** Gill contends that § 1915(g) does not apply to him because the cases cited in Defendants' Letter-Motion as "strikes" do not meet the requirements set forth by the Second Circuit in *Snider v. Melindez,* 199 F.3d 108 (2d Cir.1999) and clarified in *DeLeon v. Doe,* 361 F.3d 93 (2d Cir.2004). Pl.'s Lt.-Resp. at pp. 2-3. According to Gill, the cited cases "fail to indicate w [h]ere dismissals [were] with prejudice or without prejudice as mandated in *Snider.*" Pl.'s Lt.-Resp. at p. 3.

In *Snider v. Melindez,* the Second Circuit held that the "three strikes rule" was intended to apply to those "nonmeritorious suits dismissed with prejudice, not suits dismissed without prejudice for failure to comply with a procedural prerequisite." *Snider v. Melindez,* 199 F.3d at 111.[FN5] The Court noted in that case that there are a variety of procedural reasons for which a case may be dismissed *sua sponte* and such a dismissal does not necessarily

render a determination on the merits as, for example, a dismissal for frivolousness would. *See id.* at 111-113. Indeed, the Supreme Court has directed that an action is frivolous when it is based on an indisputably meritless legal theory or presents factual contentions that are clearly baseless, thus such dismissal is one on the "merits" of the case. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989) (cited in *Welch v. Galie,* 207 F.3d 130, 132 (2d Cir.2000)).

> **FN5.** In *Snider,* the Second Circuit held that a pre-answer dismissal based upon a failure to exhaust administrative remedies is a dismissal for failure to comply with procedural prerequisites and such a non prejudicial dismissal does not count towards the "three strikes rule."

In *DeLeon v. Doe,* the Second Circuit, in upholding its ruling in *Snider,* reiterated that "district court judgments *should* clearly set forth the reasons for dismissal, including whether the dismissal is because the claim is frivolous, malicious, or fails to state a claim, whether it is because the prisoner has failed to exhaust an available administrative remedy, or for other reasons." 361 F.3d at 95 (emphasis in original) (internal quotation marks omitted). The Second Circuit further noted that "[t]hese judgment[s] should also state whether the dismissal is with prejudice or without," and that "[c]larifications of this sort 'will undoubtedly assist subsequent courts that must determine whether a plaintiff is barred from maintaining an action *in forma pauperis* by the three strikes rule of Section 1915(g).' " *Id.*

Gill's interpretation of *Snider* and *DeLeon* as they apply to the cases cited by the Defendants is flawed. First, although *Snider* is clear in its application to those cases dismissed on the merits, the Second Circuit does not mandate that district courts expressly use the language "with or without prejudice" in judgments of dismissal. The language used by the Second Circuit, specifically the term "should," indicates that the language is advisory or instructive rather than mandatory. If the Second

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Circuit had intended district courts to include this specific language, as Gill argues, it would have stated that the district courts "must" or "shall," which indicates a mandate or requirement.

**\*4** Second, Gill's arguments display a crafty articulation of both the *Snider* and *Doe* cases as they apply to § 1915(g) strikes. Both cases addressed the issue of "whether the entry of a strike [under § 1915(g) ] is properly considered *at the time an action is dismissed.*" *Id.* (citing *Snider v. Melindez,* 199 F.3d at 115) (emphasis added). While the Second Circuit expressed strong doubt about this issue in *Snider,* it decided the matter in *DeLeon* and held that "district courts should not issue these strikes one by one, in their orders of judgment, as they dispose of suits that may ultimately-upon determination at a proper time-qualify as strikes under the terms of § 1915(g)." [FN6] *Id* .

FN6. The Second Circuit in *DeLeon* based its holding on its rationale in *Snider,* which reads:

The designation of strikes has no practical consequences until a defendant in a prisoner's lawsuit raises the contention that the prisoner's suit or appeal may not be maintained *in forma pauperis* pursuant to 28 U.S.C. § 1915 because the prisoner has accumulated three strikes. At that time, because a practical consequence turns on the answer to the question, a court will need to determine whether the prisoner should be charged with three strikes. Litigation over the issue at an earlier juncture would involve the courts in disputes that might never have any practical consequence.

*DeLeon v. Doe,* 361 F.3d at 95 (quoting *Snider v. Melindez,* 199 F.3d at 115).

The Second Circuit also stated that "[c]ontemporaneous classification of dismissals as strikes or non-strikes at a time

when the ruling has no immediate consequences may also lead district courts to undertake such classifications carelessly, and with inadequate explanation of why a given dismissal falls into one category and not the other." *Id.* (quoting *Snider v. Melindez,* 199 F.3d at 115, n. 4).

Here, Gill challenges four cases cited by the Defendants as "strikes." Pl.'s Lt.-Resp. at p. 3. Addressing these cases specifically in light of Gill's arguments and as noted above, we find that all four actions were dismissed on the merits and therefore, qualify as "strikes" against Gill for purposes of the "three strikes rule."

Although the Southern District in deciding *Accettulli* and *Kross* did not expressly state that the cases were dismissed "with prejudice" in the orders of dismissal, the District Court dismissed Gill's claims in both cases because they "lack[ed] an arguable basis either in law or fact." *Gill v. Accettulli,* 92-CV-5039, Order of Dismissal, dated July 8, 1992, at p. 4 (S.D.N.Y .) (citing *Neitzke v. Williams,* 490 U.S. at 325); *Gill v. Anna M. Kross Center,* 92-CV-9326, Order of Dismissal, dated Dec. 28, 1992, at p 2 (S.D.N.Y.) (citing *Neitzke v. Williams,* 490 U.S. at 325). Additionally, in *Kross,* the district court went on to "certify pursuant to 28 U.S.C. § 1915(a) that any appeal from this order would not be taken in good faith." *Kross,* 92-CV-9326, at p. 2. Most importantly, Gill himself concedes that both the *Accettulli* and *Kross* cases "were dismissed due to they lacked an arguable basis in law or in fact." Pl.'s Lt.-Resp. at p. 3. In light of these statements and Gill's concession, the dismissals of the claims in these cases were clearly on the merits, even though the court did not specifically use the language "with or without prejudice." Each of these cases would, therefore, qualify as "strikes" against the Plaintiff.

A review of the docket shows that both the *LeFevre* and *Padilla* cases were dismissed by the Northern District for failure to prosecute pursuant

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

to Rule 11 of the Federal Rules of Civil Procedure. FN7 By his own admission, Gill concedes that these two cases were dismissed pursuant to FED.R.CIV.P. 11. Irrespective of specific language used in the District's Decisions and Orders dismissing these actions, we find that a Rule 11 dismissal is a dismissal on the merits. Therefore, these two cases would also each qualify as "strikes" against the Plaintiff.

> FN7. A history of failure to prosecute is akin to the filing of a frivolous claim.

From the discussion and analysis above, it is clear that these types of dismissals are precisely what Congress had in mind when it enacted the PLRA, hoping to discourage and limit the amount of *frivolous* lawsuits brought by prisoner litigants. Accordingly, the Court finds that Gill, while incarcerated or detained, had acquired at least three "strikes" at the time he commenced the present action.

### D. Exception to the "Three Strikes Rule"

**\*5** Notwithstanding prior dismissals, an inmate can overcome the "three strikes rule" and proceed with an action if the prisoner can show that he or she "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). This imminent danger exception, however, applies only to impending harms that existed at the time the complaint is filed, and not to those harms which already occurred. *Malik v. McGinnis,* 293 F.3d 559, 563 (2d Cir.2002) ( "[T]he language of § 1915(g) makes clear that the 'imminent danger' exception only applies to danger existing at the time the complaint is filed."). Based upon a review of Gill's Complaint, there is nothing to suggest that he was under imminent threat of serious physical injury at the time he filed his Complaint. While Gill raises this exception in his opposition to Defendants' Motion, his claim that he "was encountering impending harms at the time [he] filed this [C]omplaint due to [the fact that] he was still incarcerated at Auburn C[orrectional] F[acility]" is clearly insufficient to overcome the "three strikes rule." Pl.'s Lt.-Resp. at p. 2. Permitting a prisoner

to defeat the "three strikes" bar by simply citing incarceration as the impending harm runs afoul of Congress' intent in enacting § 1915 and would essentially render the PLRA meaningless.

### E. Revoking Gill's IFP Status

Gill argues that the Defendants are estopped from moving to revoke his *in forma pauperis* status because they failed to move for revocation during earlier proceedings, specifically in their Rule 12(b)(6) Motion to Dismiss, filed on December 23, 2002, *see* Dkt. No. 6, in their Letters to the Court in support of their Motion to Dismiss, filed on April 24, 2003 and May 7, 2003, *see* Dkt. Nos. 14 & 15, during Plaintiff's oral deposition taken in May 2005, or in Defendants' Answer, filed on June 20, 2006. FN8 Pl.'s Lt.-Resp. at p. 4.

> FN8. Gill also cites applications made by the Defendants to the Second Circuit during his Appeal of Judge Hood's Order and Judgment, *see* Dkt. Nos. 17-19, wherein he alleges Defendants failed to move for revocation of his IFP status, which was granted by the Circuit on August 1, 2003. Pl.'s Lt.-Resp. at pp. 4-5. IFP status granted by the Second Circuit is separate and distinct from IFP status granted by the Northern District. Defendants' objections to IFP status granted by the Second Circuit are not relevant to Defendants' application before this Court and would have no bearing on his IFP status in this District. Further, any objections put forth by the Defendants' in papers submitted to the Second Circuit cannot be accessed or considered by this Court.

Contrary to Gill's suggestion, dismissal is not precluded by the fact that a litigant has already been granted IFP status. "When a court becomes aware of three prior strikes only after granting IFP status, the court may appropriately revoke that status and bar the complaint under § 1915(g)." *Polanco v. Burge,* 05-CV-651, Rep.-Rec. & Order, dated May 12, 2006, at p. 3 (N.D.N.Y) (citing *Mc-*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)
**(Cite as: 2006 WL 3751340 (N.D.N.Y.))**

*Fadden v. Parpan,* 16 F.Supp.2d 246, 247 (E.D.N.Y.1998)).

In light of the foregoing, it is recommended that the Order granting IFP status to Gill be **vacated** and that Gill's Complaint be dismissed unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that the Order granting Gill's IFP status (Dkt. No. 4) be VACATED; and it is further

**RECOMMENDED** that Defendants' Letter-Motion seeking dismissal of Gill's Complaint pursuant to 28 U.S.C. § 1915(g) (Dkt. No. 35) be **GRANTED** unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court; and it is further

**\*6 ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72, 6(a) & 6(e).

N.D.N.Y.,2006.
Gill v. Pidlypchak
Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

2014 WL 1292235
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Earl HAYES, Plaintiff,
v.
HERB et al., Defendants.

No. 9:11–cv–1271 (GLS/DEP).
|
Signed March 31, 2014.

**Attorneys and Law Firms**

Earl Hayes, Ossining, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney
General, Laura A. Sprague Assistant Attorney General,
of Counsel, Albany, NY, for the Defendants.

### *MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, Chief Judge.

#### *I. Introduction*

 **\*1** Plaintiff *pro se* Earl Hayes, a New York State prison
inmate, commenced this action alleging deprivation of
his civil rights pursuant to 42 U.S.C. § 1983 against
defendants Brian Fischer, Kenneth Perlman, Correction
Officer Herb, Sergeant Soto, and an unidentified John
Doe defendant.[1] (Compl. at 1–2, 7, Dkt. No. 1.)
Pending before the court are Hayes' motion to amend his
complaint, (Dkt. No. 26), and Herb and Soto's motion
for summary judgment, (Dkt. No. 30). On December 27,
2013, Magistrate Judge David E. Peebles issued a Report
and Recommendation (R & R) recommending that the
motion for summary judgment be granted because of
Hayes' failure to exhaust his administrative remedies, that
Hayes' IFP status remain intact, and that his motion to
amend the complaint be denied as moot. (Dkt. No. 41
at 30.) Hayes filed objections to the R & R, which are
also pending before the court. (Dkt. Nos.43, 44.) For the
following reasons, the R & R is adopted in its entirety.

#### *II. Background*

Hayes is currently an inmate under the custody of the New
York State Department of Corrections and Community
Supervision (DOCCS). (Defs.' Statement of Material
Facts (SMF) ¶ 1, Dkt. No. 30, Attach. 27.) During the
time relevant to this action, Hayes was confined in the
Hale Creek Alcohol and Substance Abuse Treatment
Correctional Annex (ASATCA). (*Id.* ¶ 2.) In or about
October 2009, Hayes received notice that his merit time
allowance had been granted. (Compl. at 5.) In January
2010, Hayes was approved for merit parole by the Parole
Board with a release date of May 17, 2010. (*Id.*) In
February 2010, Hayes filed a grievance against Herb for
abuse of authority. (Defs.' SMF ¶ 12.)

On March 7, 2010, Hayes received a Tier II Misbehavior
Report. (*Id.* ¶ 3.) On March 9, Hayes was found guilty
after a Tier II Disciplinary Hearing, resulting in an order
to serve twenty days "keeplock," removal from the Hale
Creek ASATCA program, and transfer to the Marcy
Correctional Facility Special Housing Unit (SHU). (*Id.*
¶¶ 4, 8; Compl. at 5.) During this disciplinary hearing,
Hayes denied the allegations against him, but produced
no witnesses or evidence on his behalf and testified that he
did not intend to file a grievance against Herb for filing
the misbehavior report. (Defs.' SMF ¶¶ 6, 7, 9; Dkt. No.
30, Attach. 12 at 19–20.) On March 10, Hayes' Merit Time
Allowance was rescinded "because of [his] unsatisfactory
program participation and removal from the Hale Creek
ASATCA ... program." (Compl. at 5.)

#### *III. Standard of Review*

Before entering final judgment, this court reviews report
and recommendation orders in cases it has referred to
a magistrate judge. If a party properly objects to a
specific element of the magistrate judge's findings and
recommendations, this court reviews those findings and
recommendations de novo. See *Almonte v. N.Y. State Div.
of Parole,* No. Civ. 904CV484GLS, 2006 WL 149049,
at \*3, \*5 (N.D.N.Y. Jan. 18, 2006). In those cases
where no party has filed an objection, only vague or
general objections are made, or a party resubmits the
same papers and arguments already considered by the
magistrate judge, this court reviews the findings and

recommendations of the magistrate judge for clear error. *See id.* at *4–5.

## IV. *Discussion*

 **\*2** Hayes' complaint alleges that the Tier II Misbehavior report was issued in retaliation for the grievance he filed against Herb in February 2010. (Compl. at 10.) Hayes claims that Soto and Herb conspired against him and Soto directed Herb to file a fabricated misbehavior report in order to forfeit Hayes' merit time release and to discourage him from filing future grievances. (*Id.*) Hayes also alleges that defendants conspired to deprive him of his equal protection rights under the Fourteenth Amendment. (*Id.*)

In response, defendants assert that Hayes' claims should be dismissed because: (1) Hayes is precluded from litigating this case without payment of filing fees under the "three strikes" provision of 28 U.S.C. § 1915(g); and (2) Hayes failed to exhaust his administrative remedies. (Dkt. No. 30, Attach. 1 at 6–8, 8–11.)[2] In the R & R, Judge Peebles recommended that Hayes' IFP status remain intact because, out of the five strikes defendants allege against Hayes, (Dkt. No. 30, Attach. 1 at 7–8), only two constituted "strikes" under 28 U.S.C. § 1915(g). (Dkt. No. 41 at 21.) Additionally, Judge Peebles found that Hayes failed to exhaust his administrative remedies, declined to reach the merits of Hayes' claims, and recommended that defendants' motion for summary judgment be granted and Hayes' motion for leave to amend his complaint be denied as moot. (*Id.* at 21–30.)

Hayes subsequently filed timely objections. (Dkt.Nos.43, 44.) Hayes' objections are general in part and specific in part. First, Hayes, for the first time, argues that letters he wrote to Superintendent Nichols and Deputy Melecio should be treated as grievances. (Dkt. No. 43 at 7.) Also for the first time, Hayes has included copies of the letters. (*Id.* at 32–40.) This "objection," while specific, is insufficient to compel *de novo* review. As noted, these letters were not mentioned in Hayes' complaint, proposed amended complaint, or opposition to defendants' motion for summary judgment. (Compl.; Dkt. No. 26, Attach. 1; Dkt. No. 37.) "Generally, courts do not consider such 'new arguments' or 'new evidence' 'raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not,' " and this court declines to do so here. *Chalsani v. Daines,*

No. 10–CV–1978, 2011 WL 4465408, at \*1 (E.D.N.Y. Sept. 26, 2011) (quoting *Illis v. Artus,* No. 06–civ3077, 2009 WL 2730870, at \*1 (E.D.N.Y. Aug. 28, 2009)). Thus, Hayes' objection is without merit.[3] Accordingly, the R & R is adopted with respect to Hayes' failure to exhaust administrative remedies.

Second, Hayes generally objects to Judge Peebles' recommendation that Hayes' failure to exhaust his administrative remedies should not be excused due to his alleged lack of knowledge regarding the availability of the grievance process. (Dkt. No. 43 at 2–3.) This objection repeats arguments previously made by Hayes in response to defendants' motion. (Dkt. No. 37 at 2; Dkt. No. 17 at 2.) Having reviewed this recommendation for clear error, *see Almonte,* 2006 WL 149049, at \*3–4, and finding none, this recommendation is adopted.

 **\*3** Finally, Hayes generally objects to the portion of the R & R that recommended denying his motion to amend. (Dkt. No. 43 at 15–16.) Judge Peebles concluded that Hayes' motion to amend the complaint should be denied as moot because Hayes failed to exhaust his administrative remedies. (Dkt. No. 41 at 30.) Hayes' proposed amended complaint, however, contains no additional explanation of his failure to exhaust his administrative remedies. (Dkt. No. 26, Attach.1.) Thus, Hayes' motion to amend his complaint is properly denied.

As to the remainder of Hayes' objections, the court, having carefully reviewed the record, finds no clear error in the R & R and adopts it in its entirety.

## V. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge David E. Peebles' December 27, 2013 Report and Recommendation (Dkt. No. 41) is **ADOPTED** in its entirety; and it is further

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 30) is **GRANTED;** and it is further

**ORDERED** that Hayes' motion for leave to amend (Dkt. No. 26) is **DENIED** as moot; and it is further

**ORDERED** that Hayes' complaint (Dkt. No. 1) is **DISMISSED;** and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties.

**IT IS SO ORDERED.**

*REPORT AND RECOMMENDATION*

[DAVID E. PEEBLES](), United States Magistrate Judge.

*Pro se* plaintiff Earl Hayes, a New York State prison inmate, has commenced this action against five New York State Department of Corrections and Community Supervision ("DOCCS") employees, alleging the deprivation of his civil rights pursuant to [42 U.S.C. § 1983](). Generally, in his complaint, plaintiff alleges that defendants conspired to, and did, retaliate against him for filing a grievance against them at the facility in which he was confined at the relevant times.

Currently pending before the court is a motion brought by defendants requesting the entry of summary judgment based upon several grounds, and additionally seeking revocation of plaintiff's *in forma pauperis* ("IFP") status in light of his previous accumulation of three strikes pursuant to [28 U.S.C. § 1915(g)](). For the reasons set forth below, I recommend that plaintiff's IFP status remain intact, but that the defendants' motion for summary judgment be granted on the basis that the plaintiff failed to exhaust his administrative remedies prior to commencing this action.

I. *BACKGROUND* [1]

Plaintiff is a New York State prison inmate currently being held in the custody of the DOCCS. *See generally Dkt. No. 1.* Although he is now incarcerated at the Sing Sing Correctional Facility, at the times relevant to his claims in this action he was confined in the Hale Creek Correctional Facility ("Hale Creek"), located in Johnstown, New York. *Id.* According to publically available information, inmates located at Hale Creek and who otherwise qualify are enrolled in a Comprehensive Alcohol and Substance Abuse Treatment ("CASAT") program. Department

of Corrections and Community Supervision, Substance Abuse Treatment Services, http://www.doccs.ny.gov/ProgramServices/substanceabuse.html # casat (last visited Dec. 9, 2013).

**\*4** Plaintiff was transferred into Hale Creek in August 2009. *Dkt. No. 30–12 at 17.* On or about February 6, 2010, he filed a grievance complaining of the conduct of Gary Herb, a corrections officer stationed at the facility and a named defendant in this action. *Id.* at 11, 18–19. In his grievance, plaintiff complained that defendant Herb "started coming up with things that didn't make any ... sense," and that he "seemed ... like he was abusing his authority." *Id.* at 18. According to plaintiff, shortly after he filed the grievance, he met with Victor Soto, a corrections sergeant also stationed at Hale Creek and a defendant in this action, to discuss plaintiff's allegations. *Id.* at 11, 19. During that meeting, defendant Soto indicated to plaintiff that he would speak with defendant Herb concerning his behavior. *Id.* at 36–37. Believing that defendant Soto was sincere in his intent to resolve the situation, plaintiff voluntarily withdrew his grievance against defendant Herb. *Id.*

Approximately one month after meeting with defendant Soto, on March 8, 2010, plaintiff received a misbehavior report from defendant Herb. *Dkt. No. 1 at 4; Dkt. No. 30–12 at 19; Dkt. No. 30–20 at 7.* A disciplinary hearing was subsequently conducted on March 9, 2010, to address the charges set forth in the misbehavior report. *Dkt. No. 1 at 5; Dkt. No. 30–12 at 19–20.* At that hearing, plaintiff denied the allegations against him, but called no witnesses and presented no evidence. *Id.* At the conclusion of the hearing, Hayes was found guilty, and ordered to serve twenty days in keeplock confinement. [2] *Dkt. No. 1 at 5; Dkt. No. 30–12 at 20; Dkt. No. 30–14 at 9.*

Because Hale Creek does not have keeplock facilities, on the same day that he was sanctioned, plaintiff was transferred into the Marcy Correctional Facility ("Marcy"), located in Marcy, New York. Dkt. No. 1 at 5; Dkt. No. 30–12 at 20–21. At plaintiff's deposition, he testified that immediately after the disciplinary hearing, but before he was transferred, defendant Soto told plaintiff not to "ever cross his officers," intimating that defendant Herb had issued the misbehavior report against plaintiff in retaliation for plaintiff filing a grievance against defendant Herb. Dkt. No. 1 at 7; *Dkt. No. 30–12 at 48–49.*

In or about October 2009, plaintiff received notice that his merit time allowance had been granted because he had obtained an "Alcohol and Substance Abuse ... certificate and because [he] had successfully completed at least six (6) months of vocational training." *Id.* at 5 (quotation marks omitted). As a result, in January 2010, plaintiff appeared before the parole board for merit parole release consideration. *Id.* The parole board approved plaintiff for merit parole, and his release date was set for May 17, 2010. *Id.* On March 10, 2010, however, plaintiff received a "Merit Time Determination Notice," which indicated that his merit time allowance had been denied. Dkt. No. 1 at 5, 7. That notice, which plaintiff received immediately following his disciplinary hearing regarding the misbehavior report issued by defendant Soto and which is the subject of this litigation, effectively rescinded the parole board's merit parole approval of plaintiff's early release. *Id.*

**\*5** Plaintiff's complaint alleges that defendants Herb and Soto conspired, through the issuance of the misbehavior report, to have his parole rescinded as a result of the grievance plaintiff filed in February 2009 against defendant Herb. *See generally* Dkt. No. 1. In support of this contention, plaintiff further alleges that, before he was placed in the transport vehicle to Marcy to serve his keeplock sanction, defendant Soto

> looked at [plaintiff], smirked, and told him, 'Never file a grievance against an officer, especially here at Hale Creek. You will always lose. I will always back my officers over an inmate, no matter what. You need to learn a lesson. I made sure that you will not be going home any time soon.'

*Id.*

Unrelated to plaintiff's claims regarding retaliation and conspiracy to retaliate, plaintiff alleges that defendants Herb and Soto conspired to violate his equal protection rights under the Fourteenth Amendment. Dkt. *No. 1 at 10.* In support of that claim, plaintiff has identified four fellow inmates confined at Hale Creek who received misbehavior reports, yet were released on parole on their merit parole dates. Dkt. No. 30–12 at 51–54.

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on October 26, 2011, by the filing of a complaint and an accompanying application to proceed IFP. Dkt. Nos. 1, 2. Although only the claims asserted against defendants Herb and Soto remain in the case, plaintiff's complaint also named three other defendants, including Brian Fischer, the DOCCS Commissioner; Kenneth Perlman, a DOCCS Deputy Commissioner; and John Doe, an unidentified DOCCS employee. Dkt. No. 1 at 2. On January 23, 2012, Chief District Judge Gary L. Sharpe issued a decision and order granting plaintiff's motion to proceed IFP, but dismissing defendants Fischer and Perlman from the action without leave to replead. *See generally* Dkt. No. 7.

Liberally construed, plaintiff's complaint asserts First Amendment retaliation and conspiracy to retaliate claims arising from allegations that defendants Herb and Soto issued a misbehavior report to Hayes in retaliation for his filing of a grievance against defendant Herb. Dkt. No. 1 at 10. Plaintiff also asserts Fourteenth Amendment equal protection and conspiracy to violate his equal protection rights claims arising from allegations that other inmates who were found guilty of equal or more severe disciplinary infractions while at Hale Creek did not have their merit time parole approval rescinded. *Id.;* Dkt. No. 30–12 at 51–54.

On March 20, 2013, defendants Herb and Soto filed a motion for summary judgment seeking dismissal of plaintiff's complaint on various grounds, including plaintiff's alleged failure to exhaust available administrative remedies before filing suit. *See generally* Dkt. No. 30–1. In their motion, defendants additionally request that plaintiff's IFP status be revoked, arguing that he must first pay the requisite filing fee before proceeding further because he has accumulated three strikes under [28 U.S.C. § 1915(g)](#), and therefore cannot qualify for IFP status. Plaintiff has responded in opposition, addressing only defendants' exhaustion argument. *See generally* Dkt. No. 37.

**\*6** On March 6, 2013, plaintiff filed a motion for leave to amend his complaint. Dkt. No. 26. In that motion, he seeks to substitute Lieutenant Horton for defendant John Doe, and to purportedly "amplify[y] and clarif[y] the causes of action." *Id.* at ¶¶ 2, 4. Defendants have responded in opposition to this motion, generally arguing that any amendment is moot in light of the fact that plaintiff's complaint is subject to dismissal for the

reasons stated in their papers supporting their motion for summary judgment. *See generally* Dkt. No. 32.

Both defendants' motion for summary judgment, as well as plaintiff's motion for leave to amend, which are now fully briefed and ripe for determination, have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed.R.Civ.P. 72(b).

### III. *DISCUSSION*

#### A. *Plaintiff's IFP Status*

In their motion for summary judgment, defendants first contend that the court should revoke plaintiff's IFP status because, prior to commencing this action, plaintiff had accumulated three strikes within the meaning of 28 U.S.C. § 1915(g). Dkt. No. 30–1 at 7–9. As was noted above, plaintiff has not responded to this argument. *See generally* Dkt. No. 32.

#### 1. *Legal Standard Governing IFP*

When a civil action is commenced in a federal district court, the statutory filing fee, set at $350 at the time plaintiff filed this action, must ordinarily be paid.[3] 28 U.S.C. §§ 1915(a). Although a court is authorized to permit a litigant to proceed IFP if it is determined that he is unable to pay the required filing fee, 28 U.S.C. § 1915(a)(1), section 1915(g) provides that

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury

28 U.S.C. § 1915(g). The manifest intent of Congress in enacting this "three strikes" provision was to deter the filing of multiple, frivolous civil rights suits by prison inmates. *Tafari v. Hues,* 473 F.3d 440, 443–44 (2d Cir.2007) (citing *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997)); *accord, Gill v. Pidlychak,* No. 02–CV–1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19,

2006) (Scullin, S.J., *adopting report and recommendation by* Treece, M.J.).[4] The prophylactic effect envisioned under section 1915(g) is accomplished by requiring a prisoner who has accumulated three strikes to engage in the same cost-benefit analysis before filing suit as other civil litigants engage in-that is, the provision forces inmates to assess whether the result sought to be achieved justifies the payment of the filing fee in advance, rather than in installments as provided under 28 U.S.C. § 1915(b). *Tafari,* 473 F.3d at 443.

**\*7** The Second Circuit has defined a frivolous claim as one that "lacks an arguable basis either in law or in fact." *Tafari,* 473 F.3d at 442 (citing *Neitzke v. Williams,* 490 U.S. 319, 325 (1989)). *Id.* To determine whether a dismissal satisfies the failure-to-state-a-claim prong of section 1915, courts look to Rule 12(b)(6) of the Federal Rules of Civil Procedure for guidance. *Tafari,* 473 F.3d at 442. The question of whether the dismissal of a prior action constitutes a strike, for purposes of section 1915(g), is a matter of statutory interpretation, and as such presents a question for the court. *Id.*

#### 2. *Analysis*

In this case, defendants argue that plaintiff had accumulated three strikes prior to filing this action, and thus his IFP status should be revoked and the action dismissed unless he advances the required filing fee in full. Dkt. No. 30–1 at 7–9. Defendants have identified the following four cases filed by plaintiff in which, they maintain, Hayes accrued at least one strike for purposes of section 1915(g): (1) *Hayes v. Doe,* No. 99–CV–3961 (S.D.N.Y. filed June 1, 1999) ("*Hayes I* "); (2) *Hayes v. O'Connor,* No. 04–CV–7264 (S.D.N.Y. filed Sept. 13, 2004) ("*Hayes II* "); (3) *Hayes v. United States of America,* No. 08–CV–6525 (S.D.N.Y. filed July 23, 2008) ("*Hayes III*"); and (4) *Hayes v. Cannick,* No. 09–CV–7608 (S.D.N.Y. filed Sept. 1, 2009) ("*Hayes IV* ").

#### i. *Hayes I*

Defendants contend that plaintiff accumulated a strike in *Hayes I,* for purposes of section 1915(g), because the action was dismissed for failure to prosecute. Dkt. No. 30–1 at 7 (citing *Guarneri v. Wood,* No. 08–CV0792, 2011 WL 4592209 (N.D.N.Y. Sept. 2, 2011) (Homer, M.J.)). Assuming that this particular action was, in fact, filed by plaintiff,[5] I nonetheless reject defendants' argument that its dismissal constitutes a strike under section 1915(g), and

in that respect, I respectfully decline to follow *Guarneri* for substantially the same three reasons cited in my report issued in a previous case, which was adopted by Chief Judge Sharpe in November of this year. *See Herring v. Tabor,* No. 12–CV–1739, 2013 WL 6173775, at *6–7 (N.D.N.Y. Nov. 20, 2013) (Sharpe, J., *adopting report and recommendation by* Peebles, M.J.). First, the court in *Guarneri* found that the plaintiff's dismissed action at issue—the potential third strike—for failure to prosecute counted as a strike because, at the time the action was dismissed, the plaintiff had "filed a complaint, four notices rejecting proposed amended complaints, an amended complaint, and multiple letter requests over the course of four years before the case was ultimately dismissed for failure to prosecute." *Guarneri,* 2011 WL 4592209, at *10. The court in *Guarneri* commented that the dismissed action "was not a temporarily infected case with remediable procedural or jurisdictional flaws but one close to Congress' intended policy behind the three-strike provision to prevent the tide of egregiously meritless lawsuits." *Id.* (quotation marks and alterations omitted) (citing *Tafari,* 473 F.3d at 443). The circumstances surrounding the district court's dismissal of *Hayes I,* however, are materially different. Indeed, it appears from the docket sheet that the case was initially dismissed for failure to prosecute as a result of plaintiff's failure to appear at a court ordered conference. *Hayes I,* No. 99–CV–3961, Dkt. Nos. 10, 11. Although the case was reopened at a later date, District Judge John G. Koeltl dismissed the action for a second time, on the defendants' motion, due to plaintiff's failure to prosecute. *Hayes I,* No. 99–CV–3961, Dkt. Nos. 18–21. There is nothing in the sparse docket sheet of *Hayes I* indicating that it was dismissed for the reasons specifically outlined in section 1915(g). Simply stated, I do not find anything in the docket sheet from *Hayes I* to suggest that plaintiff's complaint in the action was frivolous, malicious, or failed to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g).

**\*8** I note, moreover, that although *Guarneri* relied, in part, on *Bermudez v. Rossi,* No. 07–CV–0367, 2008 WL 619170 (N.D.N.Y. Mar. 3, 2008) (Kahn, J.), in finding that a previous dismissal based on a failure to comply with a court order may constitute a strike, the *Bermudez* court explicitly determined that the previous action at issue in that case was "essentially" dismissed for failure to state a claim upon which relief could be granted. *Bermudez,* 2008 WL 619170, at *3. Accordingly, to the extent that *Guarneri*

relied on *Bermudez* for support of the proposition that a dismissal for failure to prosecute constitutes a strike, that reliance appears to have been misplaced.

Finally, the question of whether a dismissal for failure to prosecute or comply with a court order constitutes a strike under section 1915(g) has not been addressed by the Second Circuit. Several district courts within the circuit, however, have concluded that such a dismissal does not qualify as a strike. *See, e.g., Justice v. Merchant,* No. 12–CV–5103, 2012 WL 6061000, at *1 (E.D.N .Y. Dec. 5, 2012) ("Disimissals based on a plaintiff's failure to prosecute do not count as strikes." (citing cases)); *Johnson v. Truedo,* No. 11–CV–0627, 2012 WL 3054114, at *4 (N.D.N.Y. June 15, 2012) (Homer, M.J.), *report and recommendation adopted by* 2012 WL 3062293 (N.D.N.Y. July 26, 2012 (Hurd, J.) ("[D]efendants have failed to demonstrate that the dismissal ... was for failing to state a claim rather than for failing to prosecute or to comply with a court order, neither of which would constitute a 'strike' under [section] 1915(g.)."); *Toliver v. Perri,* No. 10–CV–3165, 2011 WL 43461, at *2 (S.D.N.Y. Jan. 6, 2011) ("While the Second Circuit has not addressed whether a dismissal for failure to prosecute counts as a strike, this and other courts in this Circuit have declined to find that such a dismissal constitutes a strike." (citing cases)). [6]

### ii. *Hayes II*

Turning to *Hayes II,* defendants urge that the district court's dismissal of that action due to plaintiff's failure to timely serve the defendants under Rule 4(m) of the Federal Rules of Civil Procedure constitutes a strike for purposes of section 1915(g). Dkt. No. 30–1 at 8. In support of that contention, defendants rely on *Mullins v. Pramsteller,* No. 08–CV–0038, 2008 WL 4822241 (W.D.Mich. Nov. 3, 2008) and *Wright v. Ozmint,* No. 07–CV–2515, 2008 WL 4542915 (D.S.C. Oct. 7, 2008). *Id.* Once again, I disagree with defendants. As an initial matter, it is far from clear that either *Mullins* or *Wright* stand for the proposition that a dismissal for failing to timely serve under Rule 4(m) constitutes a strike. In *Mullins,* the district court dismissed the plaintiff's action based on two separate grounds: (1) the plaintiff's failure to exhaust administrative remedies before filing suit against three of the four defendants, and (2) the plaintiff's failure to serve the fourth defendant pursuant to Rule 4(m). *Mullins,* 2008 WL 482241, at *2. The court then explicitly stated, "This dismissal shall count as a STRIKE for purposes of

28 U.S.C. § 1915(g)." *Id.* It is unclear, however, whether the district court considered the dismissal as constituting a strike because of the plaintiff's failure to exhaust, his failure to timely effect service, or some combination of both. *Id.* Similarly, although the district court in *Wright* held that the dismissal in that case should count as a strike against the plaintiff, it is not clear from either the magistrate judge's report or the district judge's order adopting that report whether the dismissal constitutes a strike because (1) the complaint failed to state a claim upon which relief could be granted, (2) defendants were entitled to qualified immunity, or (3) some defendants were not served—all of which were cited by the court as reasons for the dismissal. *Wright,* 2008 WL 4542915 at *1, 5–6.

**\*9** In any event, it should be noted that courts in this circuit have held that a dismissal for failing to effectuate service of process does not count as a strike under section 1915(g). *See, e.g., Chavis v. Curlee,* No. 06–CV0049, 2008 WL 508694, at *4 (N.D.N.Y. Feb. 21, 2008) (Kahn, J.) ("I note that I do not read 42 U.S.C. § 1915(g), or the cases applying it, as suggesting that a dismissal solely because of ... a failure to serve ... constitutes a dismissal for frivolousness, maliciousness or failure to state a claim. Failures ... to serve are failures based on something other than the four corners of a plaintiff's complaint—which is essentially the only thing looked at when determining frivolousness, maliciousness and failure to state a claim."). I agree with the rationale expressed in *Chavis,* and accordingly find that *Hayes II* does not constitute a strike against plaintiff for section 1915(g) purposes.

**iii. *Hayes III***

Defendants next argue that *Hayes III* represents a strike pursuant to section 1915(g) in light of the district court's order, issued on June 29, 2009, dismissing the case based on the plaintiff's filing of the complaint outside the applicable statute of limitations. Dkt. No. 30–1 at 7–8 (citing *Kelly v. City of Dallas,* 288 F. App'x 993 (5th Cir.2008)). Although I agree that a dismissal based on untimeliness may constitute a strike under section 1915(g), *see, e.g., Palmer v. N.Y.S. Dep't of Corr. Greehaven,* No. 06–V–2873, 2007 WL 4258230, at *6 (S.D.N.Y. Dec. 4, 2007), *aff'd* 342 F. App'x 654 (2d Cir.2009), *Hayes III* does not count as a strike in this case because the defendants' motion predicating the dismissal was one for summary judgment. *Hayes III,* No. 08–CV–6525, Dkt. Nos. 19,

20, 23. Courts in this circuit have routinely held that a dismissal at the summary judgment stage generally does not count as strike for purposes of section 1915(g). *See Martin v. Wallis,* No. 07–CV–0175, 2008 WL 3471864, at *4 (D.Vt. Aug. 12, 2008) ("[C]ourts have also held that a case decided at summary judgment generally does not qualify for a strike under [section] 1915."); *Lewis v. Healy,* No. 08–CV–0148, 2008 WL 5157194, at *5 n. 6 (N.D.N.Y. Dec. 8, 2008) (Kahn, J., *adopting report and recommendation by* Peebles, M.J.) (finding that one of the plaintiff's previous dismissals "likely does not qualify as a strike since [his] claims were dismissed on motion for summary judgment, rather than based upon a failure to state a claim upon which relief may be granted"); *Ramsey v. Goord,* No. 05–CV0047A, 2007 WL 1199573, at *2 (W.D.N.Y. Apr. 19, 2007) ("Moreover, a dismissal on summary judgment is generally not considered within the parameters of the three-strikes rule's requirement that the actions be dismissed as frivolous, malicious, or for failure to state a claim."). Indeed, in granting the defendant's motion for summary judgment, the court in *Hayes III* relied on evidence outside the pleadings, which eliminates any doubt that the dismissal could be construed as one for failing to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and expressly provided for in section 1915(g). *Hayes III,* No. 08–CV–6525, Dkt. Nos. 19, 20, 23. Accordingly, I conclude *Hayes III* does not constitute a strike under section 1915(g).

**iv. *Hayes IV***

**\*10** Finally, defendants argue that *Hayes IV* counts as two strikes against plaintiff in light of the district court's dismissal of plaintiff's complaint in the case based on its failure to state a claim upon which relief may be granted, and the Second Circuit's subsequent dismissal of plaintiff's appeal of that dismissal. Dkt. No. 30–1 at 8 (citing *Chavis v. Chappius,* 618 F.3d 162, 169 (2d Cir.2010)). In *Hayes IV,* now-Chief District Judge Loretta A. Preska issued an order on September 1, 2009, granting plaintiff's motion to proceed IFP, but dismissing the complaint because it "fail[ed] to state a claim on which relief may be granted and/or assert[ed] claims against defendants who are immune from suit." *Hayes IV,* No. 09–CV–7608, Dkt. No. 3. That dismissal clearly constitutes a strike for purposes of section 1915(g), and represents plaintiff's first strike. Despite Judge Preska's certification pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from her order dismissing the case "would not be taken in good faith," *id.,* plaintiff nevertheless appealed the decision to the

Second Circuit, *Hayes IV,* No. 09–CV–7608, Dkt. No. 5. The Second Circuit subsequently dismissed the appeal on September 5, 2010, "because it lacks an arguable basis in law or fact," thereby constituting plaintiff's second strike. *See Chavis,* 618 F.3d at 165 ("[A]n incarcerated plaintiff incurs two strikes when a complaint and a subsequent appeal are independently dismissed for grounds listed in [section] 1915(g)."); *accord, Mills v. Fischer,* 645 F.3d 176, 177 n. 1 (2d Cir.2011).

In summary, because I conclude that the plaintiff had accumulated only two strikes prior to filing this action, I recommend that defendant's request to revoke plaintiff's IFP status be denied.

## B. *Exhaustion of Available Administrative Remedies*
In support of their motion for summary judgment, defendants contend that plaintiff's complaint is ripe for dismissal at this juncture based upon his failure to exhaust the available administrative remedies prior to commencing suit. Dkt. No. 30–1 at 9–12. In response, plaintiff admits that he did not exhaust before filing this action, but argues that he should be excused from the requirement because he was informed by multiple persons, including DOCCS employees, that he could not file a grievance regarding his retaliation allegations against the defendants. Dkt. No. 37 at 1–2.

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo,* 548 U.S. 81, 84 (2006) ("Exhaustion is ... mandatory. Prisoners must now exhaust all 'available' remedies[.]"); *Hargrove v. Riley,* No. 04–CV–4587, 2007 WL 389003, at *5–6 (E.D.N.Y. Jan. 31, 2007) ("The exhaustion requirement is a mandatory condition precedent to any suit challenging prison conditions, including suits brought under Section 1983."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

**\*11** The failure of a prisoner to satisfy the PLRA's exhaustion requirement is an affirmative defense that must be raised by a defendant in response to an inmate suit. *Jones v. Bock,* 549 U.S. 199, 212 (2007). In the event the defendant establishes that the inmate plaintiff failed "to fully complete [ ] the administrative review process" prior to commencing the action, the plaintiff's complaint is subject to dismissal. *Pettus v. McCoy,* No. 04–CV–0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford,* 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." *Woodford,* 548 U.S. at 95; *see also Macias v. Zenk,* 495 F.3d 37, 43 (2d Cir.2007) (citing *Woodford* ). [7]

In accordance with the PLRA, the DOCCS has made a grievance procedure, called the Inmate Grievance Program ("IGP"), available to inmates. It is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. § 701.5; *Mingues v. Nelson,* No. 96–CV–5396, 2004 WL 234898, at *4 (S.D.N.Y. Feb. 20, 2004). Embodied in 7 N.Y.C.R.R. § 701, the IGP requires that an inmate first file a complaint with the facility's IGP clerk within twenty-one days of the alleged occurrence. 7 N.Y.C .R.R. § 701.5(a)(1). If a grievance complaint form is not readily available, a complaint may be submitted on plain paper. *Id.* A representative of the facility's inmate grievance resolution committee ("IGRC") has up to sixteen days after the grievance is filed to informally resolve the issue. *Id.* at § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. *Id.* at § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. *Id.* at § 701.5(c). The superintendent must issue a written decision within a certain number of days of receipt of the grievant's appeal. [8] *Id.* at § 701.5(c)(i), (ii).

The third and final step of the IGP involves an appeal to the CORC, which must be taken within seven days after receipt of the superintendent's written decision. *Id.* at § 701.5(d)(1)(i). The CORC is required to render a written

decision within thirty days of receipt of the appeal. *Id.* at § 701.5(d)(2)(i).

Accordingly, at each step of the IGP process, a decision must be entered within a specified time period. Significantly, "[a]ny failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can—and must—be appealed to the next level, including CORC, to complete the grievance process." *Murray v. Palmer,* No. 03–CV–1010, 2010 WL 1235591, at *2 (N.D.N.Y. Mar. 31, 2010) (Hurd, J., *adopting report and recommendation by* Lowe, M.J.) (citing, *inter alia,* 7 N.Y.C .R.R. § 701.6(g)(2)).

**\*12** Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies. *See Ruggerio v. Cnty. of Orange,* 467 F.3d 170, 176 (2d Cir.2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

In addition to the ordinary IGP, and relevant to the facts of this case, there is an expedited process within the DOCCS for the review of complaints of inmate harassment or other misconduct by corrections officers or prison employees. 7 N.Y.C.R.R. § 701.8. In the event the inmate seeks expedited review, he may report the misconduct to the employee's supervisor. *Id.* The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a number, and sent immediately to the superintendent for review. *Id.* at § 701 .8(b). Under the regulations, the superintendent or his designees shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint, either "in-house" (by the Office of the New York State Inspector General) or by the New York State Police. *Id.* at § 701.8(c), (d). An appeal of the adverse decision of the superintendent may be taken to the CORC as in the regular grievance procedure. *Id.* at § 701.8(h).

In this case, it is undisputed that plaintiff did not file a grievance related to the allegations that give rise to his claims in this action. There is no record evidence that plaintiff filed a grievance complaining that defendants

Herb and Soto issued the misbehavior report against him on March 8, 2010, in retaliation for plaintiff's filing a grievance against defendant Herb in February 2010. Similarly, there is no evidence that suggests plaintiff filed a grievance regarding the alleged equal protection violations. Rather, in his response to the defendants' motion for summary judgment, plaintiff admitted that he did not file a grievance before filing this action. *See* Dkt. No. 37 at 1 ("My failure to file the grievance should be excused for the following reasons."). Because there is no dispute as to whether plaintiff followed the procedures set forth in the IGP for complaining about the alleged retaliation by defendants Herb and Soto or the alleged equal protection violations prior to filing this action, I will proceed to the next step of the exhaustion inquiry, which asks whether there is any reason that a plaintiff's failure to exhaust may be excused.

In a series of decisions rendered since enactment of the PLRA, the Second Circuit has prescribed a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted for failure to satisfy the PLRA's exhaustion requirement. *See, e.g., Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004); *see also Macias,* 495 F.3d at 41. Those decisions instruct that, before dismissing an action as a result of a plaintiff's failure to exhaust, a court must first determine whether the administrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. In the event of a finding that a remedy existed and was available, the court must next examine whether the defendant has forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it, or whether, through his own actions preventing the exhaustion of plaintiff's remedies, he should be estopped from asserting failure to exhaust as a defense. *Id.* In the event the exhaustion defense survives these first two levels of scrutiny, the court must examine whether the plaintiff has plausibly alleged special circumstances to justify his failure to comply with the applicable administrative procedure requirements. *Id.*

**\*13** In this case, plaintiff asks the court to excuse his failure to exhaust the available administrative remedies prior to commencing this action because (1) "[t]he [Special Housing Unit ("SHU") ] Counselor told [him] that [he] could not file a grievance alleging that Officer Herb's misbehavior report was retaliatory"; (2) "Correction Counselor Fischer ... told [him] the same thing that the SHU Counselor told [him]"; and (3) someone in the

law library "told [him] that [he] could not griev[e] a misbehavior report even if [he] believed that it had been issued in retaliation for a prior grievance that [he] filed against Defendant Officer Herb ." Dkt. No. 37 at 1–2. In essence, plaintiff contends that, because three people told him that he could not file a grievance, he should be excused from the requirement that he do so before commencing this action. *Id.*

These allegations are insufficient to excuse plaintiff's failure under *Hemphill.* Even if it is true that plaintiff was informed by others that he could not grieve defendant Herb's alleged retaliation, that does not render the grievance procedures unavailable to him. *See Yeldon v. Ekpe,* 159 F. App'x 314, 316 (2d Cir.2005) (finding that the plaintiff's excuse for failing to exhaust the available administrative remedies (i.e., a sergeant corrections officer informed him that any appeal of the denial of his grievance would be futile) does not constitute special circumstances "because it does not render the grievance system 'unavailable' to [him]"); *Rodriguez v. Mt. Vernon Hosp.,* No. 09–CV–5691, 2010 WL 3825736, at *15 (S.D.N.Y. Sept. 7, 2010) (holding that a prison official's advice to the plaintiff that appealing the denial of his grievance would be futile does not give rise to special circumstances under the *Hemphill* three-part inquiry). Plaintiff has neither alleged nor set forth any evidence that would support a finding that the grievance procedure was unavailable to him with respect to his complaints that defendants Herb and Soto retaliated against him for filing a grievance against defendant Herb. Moreover, there is no evidence that plaintiff attempted to file a grievance but was prevented from doing so by anyone, including either of the defendants. Because there is no record evidence to suggest that the IGP was unavailable to plaintiff, that defendants' are estopped from asserting the affirmative defense, or special circumstances exist to excuse plaintiff's failure to exhaust the available administrative remedies, I recommend that his complaint in this action be dismissed .[9]

## IV. *SUMMARY AND RECOMMENDATION*

Although plaintiff has proceeded IFP in this case up until this point, defendants have requested that the court review whether he had accumulated three strikes under section 1915(g) prior to commencing this action. After a careful review of plaintiff's previous litigation history, I find that he had only accumulated two strikes at the time he filed his complaint, and therefore revocation of his IFP status is not appropriate. However, because there is nothing in the record now before the court, including any allegations by the plaintiff, to suggest that plaintiff is excused from failing to exhaust the available administrative remedies before filing this action under any of the exceptions listed in *Hemphill,* I recommend that the action be dismissed on the procedural basis of failure to exhaust, without reaching the merits of plaintiff's claims. Accordingly, it is hereby respectfully

**\*14** RECOMMENDED that defendants' motion for summary judgment, Dkt. No. 30, be GRANTED, and that the action be dismissed; and it is further

RECOMMENDED that plaintiff's motion for leave to file an amended complaint, Dkt. No. 26, be dismissed as moot.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Filed Dec. 27, 2013.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 1292235

---

Footnotes

1    Defendants Fischer and Perlman were dismissed from this action on January 23, 2012. (Dkt. No. 7.)
2    Defendants presented additional arguments in their motion that have not been reached by the court or Judge Peebles. (Dkt. No. 30, Attach. 1 at 12–16.)

3   Despite Hayes' failure to raise this argument in his proposed amended complaint or his response to defendants' summary judgment motion, the court has reviewed the letters and finds that, even construing them liberally, they are primarily concerned with the merits of Hayes' charged misbehavior and the subsequent disciplinary hearing, and do not establish that he is grieving potential retaliation by defendants. (Dkt. No. 43 at 32–40.) In fact, the letters indicate otherwise, as Hayes explicitly states in the letters that he "decided not to file a grievance" and told others that he "was not going to file a grievance." (*Id.* at 34.)

1   In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir.2003).

2   "Keeplock" is a form of confinement through which an "inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Gittens v. LeFevre,* 891 F.2d 38, 39 (2d Cir.1989); *accord, Warburton v. Goord,* 14 F.Supp.2d 289, 293 (W.D.N.Y.1998); *Tinsley v. Greene,* No. 95–CV–1765, 1997 WL 160124, at *2 n. 2 (N.D.N.Y. Mar. 31, 1997) (Pooler, J., *adopting report and recommendation by* Homer, M.J.) (citing *Green v. Bauvi,* 46 F.3d 189, 192 (2d Cir.1995)). "The most significant difference between keeplock and general population inmates is that the former do not leave their cells for out-of-cell programs unless they are a part of mandatory educational programs and general population inmates spend more time out of their cells on weekends." *Lee v. Coughlin,* 26 F.Supp.2d 615, 628 (S.D.N.Y.1998).

3   Effective May 1, 2013, the Judicial Conference increased the fee for commencing an action in a federal district court from $350 to $400 by adding a $50 administrative fee. Because plaintiff commenced this action prior to the effective date of this increase, the filing fee in this case remains $350.

4   All unreported decisions cited in this report have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

5   The plaintiff in *Hayes I* is identified as "Earl Hayes," residing at a private residence. *Hayes I,* No. 99–CV–3961, Docket Sheet. Although the docket sheet indicates that it is a prisoner civil rights action brought pursuant to 42 U.S.C. § 1983, no New York State DIN is noted for the plaintiff. *Id.* In addition, presumably due to the age of the case, the docket sheet is comprised only of docket entries from staff in the clerk's office, rather than the actual filings by the parties and court. *Id.* Accordingly, I am unable to verify that the plaintiff in *Hayes I* is the same person as the plaintiff in this case now before the court. In their memorandum, defendants state that "[t]here are 3 men named 'Earl Hayes' on the record in the DOCCS system. Of those, only the plaintiff was incarcerated at the time of filing and released shortly after filing, which coincides with the change of address to a private residence." Dkt. No. 30–1 at 7 n. 1. Although plaintiff has not disputed this assertion in his response opposing defendants' motion for summary judgment, I note that defendants have failed to submit any evidence to support their position, including, for example, an affidavit from an appropriate person within the DOCCS who could verify this information. *See generally* Dkt. No. 30.

6   At least two other circuits have also ruled that an action dismissed for failure to prosecute does not constitute a strike under section 1915(g). *Torns v. Miss. Dep't of Corrs.,* 317 F. App'x 403, 404 (5th Cir.2009); *Butler v. Dep't of Justice,* 492 F.3d 440, 443 (D.D.C.2007); *but see O'Neal v. Price,* 531 F.3d 1146, 115 (9th Cir.2008) (construing a district court's dismissal of an action "during the screening process for a reason enumerated in [28 U.S.C. § 1915A, 28 U.S.C. § 1915(e) (2)(B) or 42 U.S.C. § 1997e(c) ]" as a strike, "even if the district court styles such dismissal as denial of the prisoner's application to file the action without prepayment of the full filing fee").

7   While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion " 'in a substantive sense," ' an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias,* 495 F.3d at 43 (quoting *Johnson v. Testman,* 380 F.3d 691, 697–98 (2d Cir.2004) (emphasis omitted).

8   Depending on the type of matter complained of by the grievant, the superintendent has either seven or twenty days after receipt of the grievant's appeal to issue a decision. *Id.* at § 701.5(c) (i), (ii).

9   I also note that plaintiff has failed to address the issue of exhaustion in his proposed amended complaint. *See generally* Dkt. No. 26–1. He neither alleges that he exhausted administrative remedies with respect to his allegations against the defendants, nor argues that his failure should be excused for any reason. *Id.* Indeed, the proposed amended complaint is silent regarding exhaustion. *Id.*

---

**End of Document**                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2016 Thomson Reuters. No claim to original U.S. Government Works.   11

2013 WL 5411703
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Jose ORRACA, Plaintiff,

v.

AUGUSTINE, Correctional
Officer, et al., Defendants.

No. 10–CV–0840 (M).
|
Sept. 26, 2013.

**Attorneys and Law Firms**

Jose Orraca, Dannemora, NY, pro se.

David J. Sleight, Office of the Attorney General, Buffalo, NY, for Defendants.

## DECISION AND ORDER

JEREMIAH J. McCARTHY, United States Magistrate Judge.

**\*1** Upon initial review of plaintiff's *pro se* inmate Complaint and application to proceed *in forma pauperis,* he was granted permission to proceed in forma pauperis. Hon. Michael A. Telesca's February 17, 2011 Order [4]. Before me is defendants' motion [38] to revoke plaintiff's *in forma pauperis* status, pursuant to 28 U.S.C. § 1915(g), on the basis that prior to the granting of plaintiff's application to proceed *in forma pauperis* he had commenced three or more actions while incarcerated that were dismissed on the grounds that they were frivolous or failed to state a claim upon which relief may be granted. Plaintiff opposes the motion and cross-moves for the appointment of counsel [46].

The parties have consented to proceed before a Magistrate Judge pursuant to 28 U.S.C. § 636(c) [36]. [1] For the following reasons, defendants' motion to revoke plaintiff's *in forma pauperis* status is granted, and the Complaint will be dismissed unless plaintiff pays the $350.00 filing fee by October 31, 2013. Plaintiff's motion for appointment of counsel is denied as moot, without prejudice to renewal upon payment of the filing fee.

## ANALYSIS

28 U.S.C. § 1915(e)(2)(B) provides that the court must dismiss a complaint "if the court determines that ... the action ... (I) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." Similarly, § 1915A(a) requires the court to conduct an initial screening of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and to dismiss the complaint for the same grounds listed in § 1915(e)(2)(B), regardless of whether or not the inmate has sought *in forma pauperis* status under 28 U.S.C. § 1915.

In addition, § 1915(g) provides that:

> "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."

Thus, when an inmate has garnered three "strikes," the motion for *in forma pauperis* status must be denied unless plaintiff has asserted claims which indicate that he is in imminent danger of serious physical injury.

"The 'three-strikes' provision in the [Prison Litigation Reform Act ("PLRA") ] was designed to accomplish th[e] [PLRA's] goal [of deterring frivolous prisoner lawsuits and appeals] by 'forc[ing] prisoners] to go through the same thought process non-inmates go through before filing a suit, i.e., is filing this suit worth the costs?' " *Tafari v. Hues,* 473 F.3d 440, 443 (2d Cir.2007) (quoting *Rodriguez v. Cook,* 169 F.3d 1176, 1181 (9th Cir.1999)). A federal district court may invoke the "three strikes" rule throughout the pendency of the proceeding and has the

authority to revoke *in forma pauperis* status previously granted if it determines that granting *in forma pauperis* status was improvident. *See, e.g., Brown v. Kepiec,* 2009 WL 818959, \*2 (N.D.N.Y.2009); *Welch v. Charlan,* 2008 WL 5382353, \*1 (N.D.N.Y.2008).

### A. "Strikes" under § 1915(g)

**\*2** Defendants allege that prior to filing this action, 11 of plaintiff's prior cases or appeals had been dismissed as frivolous, malicious or for failing to state a claim. Defendants rely upon the docket sheets and decisions from these cases. Sleight Declaration [40], ¶ 10, Exs. A–K. *See Harris v. City of New York,* 607 F.3d 18, 20, 23–24 (2d Cir.2010) (in considering whether a case or appeal was dismissed for strike reasons, the reviewing court may refer to a written decision where available or a docket sheet). [2] Plaintiff's opposition to defendants' motion does not expressly deny that he has garnered three strikes. Instead, he argues that defendants, "in complete disregard" of court deadlines, have "filed a frivolous motion to dismiss the [*in forma pauperis* ] status". Plaintiff's Affidavit [46], ¶ 7. [3]

Having reviewed materials submitted by defendants I find that, while a number of the cases and appeals that defendants submit should be considered "strikes" under § 1915(g) are not strikes, at least three are cases or appeals should be counted as strikes inasmuch as they were dismissed as frivolous or for failure to state a claim. These cases, include:

(1) *Orraca v. Lee,* 07–1602–pr (Second Circuit, Docket Sheet, Order, filed Jan. 14, 2008): plaintiff-appellant's appeal dismissed "because it lacks an arguable basis in fact or law". Sleight Declaration [40], Ex. C;

(2) *Orraca v. Palmer,* No. 7:05–cv–01857 (S.D.N.Y., Docket Sheet, [21], Memorandum and Order, filed June 13, 2006, adopting Report and Recommendation): granting defendants' motion to dismiss federal claims, with prejudice, for failure to state a claim upon which relief can be granted and dismissing claims arising under state law, without prejudice. *Id.,* Ex. H; and

(3) *Orraca v. Reyes,* No. 1:05–cv–01393–MBM (S.D.N.Y., Docket Sheet [3], Order of Dismissal, filed February 2, 2005): complaint dismissed pursuant to 28 U.S.C. § 1915(e)(2). *Id.,* Ex. I. [4]

Therefore, I conclude that plaintiff had accumulated at least three strikes prior to the filing of this action.

### B. "Imminent Danger of Serious Physical Injury"

As discussed above, an inmate who has garnered three or more strikes cannot proceed *in forma pauperis* unless he "is under imminent danger of serious physical injury." Plaintiff alleges that he "was in serious harm and under imminent danger when he was physically and sexually violated by the Defendants". Plaintiff's Affidavit [46], ¶ 8.

In order for the "imminent danger of serious physical injury" exception to apply "the danger must exist at the time the complaint is filed." *Malik v. McGinnis,* 293 F.3d 559, 562–63 (2d Cir.2002). The "safety valve for the 'three strikes' rule [was designed] to prevent impending harms, not those harms that had already occurred." *Id.* at 563 (quoting *Abdul–Akbar McKelvie,* 239 F.3d 307, 313 (3d Cir.2001) (en banc)). A plaintiff must allege facts "plausibly suggesting that he was under imminent danger of serious physical injury" at the time he filed the complaint. *Chavis v. Curlee,* 2008 WL 508694, \*5 (N.D.N.Y.2008); *see also Polanco v. Hopkins,* 2007 WL 914023, \*3–5 (W.D.N.Y.) (Siragusa, J.), aff'd 510 F.3d 152 (2d Cir.2007) ("[T]he Court must determine whether plaintiff's complaint makes it clear that he was in imminent danger at the time he filed his lawsuit").

**\*3** The imminent danger exception to three strikes rule applies only when an adequate nexus exists between the imminent danger alleged and the legal claims asserted in the inmate's complaint. *See Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009). A court may discredit "factual claims of imminent danger that are 'clearly baseless,' *i.e.,* allegations that are fantastic or delusional and rise to the level of 'irrational or wholly incredible.' " *Gibbs v. Cross,* 160 F.3d 962, 967 (3d Cir.1998) (quoting *Denton v. Hernandez,* 504 U.S. 25, 33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992)). *See Webb v. Texas Department of Criminal Justice,* 2007 WL 4166124, \*1 (E.D.Texas 2007) ("[P]laintiff's objections that he is in imminent danger of serious physical injury because 300 inmates can see his thoughts and cause him pain telepathically are fanciful and delusional."); *Williams v. Birkett,* 2007 WL 2421329, at \*2 (E.D.Mich.2007) ("Courts are permitted to deny a prisoner leave to proceed *in forma pauperis* when his claims of imminent danger are 'conclusory or ridiculous' " (quoting *Gibbs,* 160 F.3d at 967)).

The Complaint [1], while not a model of clarity and somewhat disjointed, alleges that defendant Richard Ceccee, [5] a correctional officer, had befriended plaintiff upon his arrival at Southport Correctional Facility and that one day Ceccee told plaintiff that he had worked in the porn industry. *Id.,* ¶ 15. Plaintiff alleges that Ceccee also told him that several of the officers "g[i]ve the men's [*sic* ] that they want for themselves, or the men's [*sic* ] that they like the best 'job,' and at times they provided them with thing [*sic* ] that are not allowed in Southport" and "that he should go up to the third floor ... [where] it would be easier for thing[s] ... to happen and that plaintiff should be taken care of nicely." *Id.,* ¶ 17. Plaintiff rejected Ceccee's advances. *Id.*

Upon plaintiff's return from a court trip on January 29, 2010, Ceccee ordered him to move to the third floor and he was then sent directly there. *Id.,* ¶ 18. When plaintiff complained to a sergeant, he was removed from the third floor, and the sergeant asked Ceccee to "explain ... how [plaintiff] end[ed] up in the third floor". *Id.,* ¶ 19. When the sergeant left, Ceccee "looked crazy" and said to plaintiff, "you would not be in this gallery long asshole you made me look bad real ... bad and you [are] going to pay for it". *Id.* Ceccee then wrote a "concocted" misbehavior report, and assaulted plaintiff on his way to the shower on or about February 1, 2010. *Id.,* ¶¶ 19, 28.

On February 18, 2010, plaintiff alleges that he was sexually assaulted and propositioned by defendant Richard Augustine, a correctional officer, and when he told Augustine "I am not into men's more than once", Augustine maliciously "rushed" plaintiff against the wall, while he was handcuffed, causing him to sustain a laceration on his head. *Id.,* ¶ 10. Plaintiff also alleges that on February 24, 2010, Augustine, with the assistance of defendant Drew Onifer, a correctional officer, sexually assaulted plaintiff in the shower and that when plaintiff refused, he was assaulted by Augustine. *Id.,* ¶¶ 12, 26. Augustine then wrote a false misbehavior repot to "cover up his actions." *Id.,* ¶ 13.

**\*4** Plaintiff's allegations appear to be that the sexual assaults and assaults on February 1, 18 and 24, 2010 were in retaliation for plaintiff's refusal to engage in homosexual acts with Ceccee initially and then later with Augustine and Onifer. Plaintiff's complaint was filed on

October 21, 2010, almost seven full months after the last alleged sexual assault. [6]

Defendants do not address whether plaintiff's allegations assert a claim of imminent danger of serious physical injury. Nevertheless, there are no allegations in the Complaint that indicate that at the time plaintiff commenced this action in October 2010, he was in any imminent danger of serious physical injury. Nor are there any allegations that between February 2010, when the assaults allegedly occurred, and October 2010, when plaintiff filed the Complaint, that plaintiff was assaulted again.

"[A] three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint if filed." *Pettus,* 554 F.3d at 296 (*citing Malik,* 293 F.3d at 562–63. "Because § 1915(g) use the present tense in setting forth the imminent danger exception, it is clear from the face of the statute that the danger must exist at the time the complaint is filed. Further, [b]y using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the three strikes rule to prevent impending harms, not those harms that had already occurred." *Malik,* 293 F.3d at 562–63 (internal quotation marks and citation omitted). See *Polanco,* 510 F.3d at 155 (rejecting a challenge to the time-of-filing interpretation of the imminent danger exception; *Avent v. Fisher,* 2008 WL 5000041, \*5–6 (N.D.N.Y.2008) ("[U]nless the prospect of ... a future assault is so specific and/or likely as to be deemed real, such an allegation will not suffice to allege an 'imminent danger' on the date of the filing. This point of law is consistent with the rather well-established rule that the imminent danger claimed by the inmate must be real, and not merely speculative or hypothetical" (internal quotation marks and citations omitted)).

This District has found that three assaults, the most recent one occurring just three months prior to the commencement of the action, did not constitute imminent danger of serious physical injury. See *Perkins v. Napoli,* 2011 WL 6148988, \*2, 8 (W.D.N.Y.2011) (Siragusa, J.). Therefore, I conclude that plaintiff's allegations in the Complaint that he was assaulted on three occasions seven months prior to filing of the Complaint do not indicate that he was under imminent danger of serious physical injury, and thus his *in forma pauperis* status must be revoked. Plaintiff will be provided an opportunity to pay the full filing fee of $350.00 by October 31, 2013, and he

is advised that if he fails to pay the full filing fee by that date this action will be dismissed without further order or notice to him.

### CONCLUSION

**\*5** For these reasons, defendants' motion to revoke plaintiff's *in forma pauperis* status [38] is granted. **Plaintiff must pay the full filing fee of $350.00** [7] **on or before October 31, 2013, or this action will be dismissed,** without prejudice and without further order of the Court or notice to plaintiff. Plaintiff's cross-motion for appointment of counsel [46] is denied as moot, without prejudice to renewal upon payment of the filing fee.

I hereby certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *See Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

### SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 5411703

---

Footnotes

1    Bracketed references are to the CM/ECF docket entries.

2    In *Gibson v. City Municipality of New York,* 692 F.3d 198, 200, n. 2 (2d Cir.2012), the Second Circuit cited to *Harris* and noted in pertinent part that:

> "We do not believe ... that federal law requires a district court to specify, in an order dismissing a prisoner's complaint pursuant to 28 U.S.C. § 1915(g), the particular orders on which the court relies.... Nonetheless, ... when a district court dismisses a prisoner's complaint pursuant to Section 1915(g) without citing or otherwise identifying the three prior dismissals that provide the basis for the court's determination, and the prisoner argues on appeal that he had not in fact filed three prior actions that had been dismissed under circumstances described in Section 1915(g) and thus had not accumulated three strikes under the PLRA, it may in certain circumstances be necessary for a reviewing court to remand the case for further proceedings in order to determine whether the prisoner had indeed accumulated three strikes."

3    Pursuant to the Amended Case Management Order [24] dispositive motions were due by July 31, 2012. *Id.,* ¶ 2. Since no dispositive motions were filed, a conference was conducted on August 10, 2012[28]. At that time, the parties agreed to proceed before a Magistrate Judge and to conduct a settlement conference. *Id.* When no settlement was reached at the January 11, 2013 settlement conference, I ordered that dispositive motions, if any, be filed by February 28, 2013[35]. Defendants' motion was filed by this deadline [38].

4    As to the remaining eight cases defendants allege are "strikes," I note that a number of them are either not strikes or that it is still an open question in this Circuit whether they are considered strikes pursuant to 28 U.S.C. § 1915(g).

> First, three of the cases or appeals were partial dismissals of the complaint based on strike reasons. Sleight Declaration [40], ¶ 10 and Exs. A, B and F. Defendants' Memorandum of Law notes correctly that there is a split among some district courts in this Circuit as to whether partial dismissals of a complaint constitute a strike under § 1915(g). I agree with the reasoning of Judge Siragusa in *Read v. Bill,* 2011 WL 6148635, *2–3 (W.D.N.Y.2011) that a partial dismissal does not constitute a strike. It is also instructive to note that in *Chavis v. Chappius,* 618 F.3d 162, 171 (2d Cir.2000), the Second Circuit reversed a decision of this District which found that since plaintiff only alleged imminent danger of serious physical injury with respect to some of the claims pled in the complaint, those claims that did not have a nexus to the imminent danger alleged could be dismissed under the three strikes rule. The Second Circuit reversed noting that the plain language of § 1915(g) "refer to a prisoner bringing 'a civil action,' rather than individual claims[ ]" and "[n]othing in the text of § 1915 provides any justification for dividing an action into individual claims and requiring a filing fee for those that do not relate to imminent danger." This same reading of § 1915(g) would appear to support the finding that partial dismissals of some claims, but not all claims, pled in the complaint, for strike reasons would not constitute a strike inasmuch as the entire action was not dismissed for strike reasons.

Second, defendants rely on three cases where either summary judgment was granted dismissing the action (Sleight Declaration [40], ¶ 10, Exs. A, B) or both a motion to dismiss dismissing some claims for failure to state a claim was granted and a motion for summary judgment dismissing the remaining claims was granted (*id.,* Exh. K). The dismissal of an action upon the granting of summary judgment has been found not to count as a strike under § 1915(g). *See Ramsey v. Goord,* 2007 WL 1199573, *2 (W.D.N.Y.2007) (Arcara, J./Foschio, M.J.) (collecting cases finding that a dismissal on summary judgment does not count as a strike).

Third, defendants rely on the dismissal of a petition for a writ of habeas corpus and the dismissal of petitioner's appeal from that dismissal as strikes (Sleight Declaration [40], ¶ 10, Exs. G, J), but following the filing of defendants' motion herein the Second Circuit held that neither the dismissal of a petition for a writ of habeas corpus nor the dismissal of petitioner's appeals related to that dismissal constitute a strike under § 1915(g). *See Jones v. Smith,* 720 F.3d 142, 147–48 (2d Cir.2013).

5    Whereas the Complaint [1] identifies the defendant as "Ceccee", the Answer [6] identifies him as "Cecce".

6    *See Johnson v. Coombe,* 156 F.Supp.2d 273 (S.D.N.Y.2001) ( "Although it is not clear when the plaintiff gave his complaint to prison officials, '[a]bsent evidence to the contrary, the Court assumes that [the prisoner] gave his petition to prison officials for mailing on the date he signed it' " (citing cases)).

7    For civil cases filed on or after May 1, 2013, an additional administrative fee of $50.00 has been added to the total cost of filing a civil lawsuit in District Court, which brings the total cost to $400.00. This additional administrative fee does not apply to prisoners who are granted permission to proceed *in forma pauperis.* Because this action was filed before May 1, 2013, plaintiff, if he chooses to pay the filing fee, will not be required to pay the additional $50.00 administrative fee.

2011 WL 4478679
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Eugene SIDNEY, Plaintiff,

v.

Brian S. FISCHER, et al., Defendants.

No. 9:09–CV–1326 (GTS/ATB).
|
Aug. 8, 2011.

**Attorneys and Law Firms**

Eugene Sidney, pro se.

Christopher W. Hall, Assistant Attorney General, for
Defendants.

**REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

*1 This matter has been referred to me for Report and
Recommendation by the Honorable Glenn T. Suddaby,
United States District Judge, pursuant to 28 U.S.C. §
636(b) and Local Rules N.D.N.Y. 72.3(c).

Liberally construed, plaintiff's Amended Complaint
("AC," Dkt. No. 15) asserts the following claims
against six employees of the New York Department
of Correctional Services ("DOCS"):[1] (1) a retaliation
claim under the First Amendment; (2) an access-to-the-
courts claim under the First Amendment; (3) a free-
flow-of-mail claim under the First Amendment; (4) a
claim of inadequate prison conditions under the Eighth
Amendment; (5) a due process claim relating to the
filing of false misbehavior reports and the imposition
of sanctions against the plaintiff under the Fourteenth
Amendment; and (6) a conspiracy claim under 42 U.S.C.
§ 1983. (Dkt. No. 29 at 6).[2] Plaintiff seeks $150 million
in damages, plus costs and disbursements. (AC ¶ 9, Dkt.
No. 15 at 13).

Currently before the court is defendants' motion pursuant
to 28 U .S.C. § 1915(g), seeking to revoke plaintiff's *in
forma pauperis* status and conditionally dismiss the case.

(Dkt. No. 53). Plaintiff filed a response (Dkt. No. 57) and
a supplemental affidavit (Dkt. No. 78) in opposition to the
motion.

Defendants argue that plaintiff has previously filed three
federal actions or appeals that were dismissed under
circumstances justifying dismissal of this action under
the "three strikes" provision of Prison Litigation Reform
Act (PLRA). (Mem. of Law in Supp. of Deft.s' Mot.
to Dismiss the Compl. at 2, Dkt. No. 53–2). Having
concluded that only two of plaintiff's prior actions or
appeals qualify as "strikes" under section 1915(g), this
court recommends that defendants' motion be denied.

**DISCUSSION**

**A. Three Strikes–Legal Standards**

The "three strikes" section of the PLRA prohibits the
filing of an action *in forma pauperis* when the plaintiff
has had federal actions or appeals dismissed on at least
three prior occasions, either for failure to state a claim
or for frivolousness. 28 U.S.C. § 1915(g). The purpose
of § 1915(g) is to "stem the tide of egregiously meritless
lawsuits" by "forcing prisoners to go through the same
thought process non-inmates go through before filing a
suit, *i.e.* is filing this suit worth the costs?" *Tafari v. Hues,*
473 F.3d 440, 443 (2d Cir.2007) (citations omitted).

Section 1915(g) provides that:

> [i]n no event shall a prisoner bring
> a civil action or appeal a judgment
> in a civil action or proceeding *[in
> forma pauperis* ] if the prisoner has,
> on three or more prior occasions,
> while incarcerated or detained in any
> facility, brought an action or appeal
> in a court of the United States that
> was dismissed on the grounds that
> it is frivolous, malicious, or fails to
> state a claim upon which relief may
> be granted, unless the prisoner is
> under imminent danger of serious
> physical injury.

An action may be dismissed pursuant to section 1915(g),
even if the court originally granted plaintiff *in forma
pauperis* status. (Dkt. No. 29 at 10). *See, e.g., Gamble v.
Maynard,* 9:06–CV–1543 (DNH/DEP), 2008 WL 150364,

at *5 (N.D.N.Y. Jan. 14, 2008) (conditionally dismissing complaint under section 1915(g) and finding that *in forma pauperis* status was improvidently granted); *Luevano v. Clinton,* 5:10–CV–754 (GTS/ATB), 2010 WL 3338704, at *3 (N.D.N.Y. July 1, 2010). An action is "frivolous" for purposes of the statute if it " 'lacks an arguable basis either in law or in fact.' " *Id.* at 442 (citation omitted). In determining whether a dismissal satisfies the failure to state a claim prong of the statute, courts have drawn upon the provisions of FED. R. CIV. P. 12(b)(6) for guidance, in light of the similarity in phrasing utilized in the two provisions. *Id.* The three strikes provision applies to cases that were dismissed for failure to state a claim or for frivolousness even prior to the 1996 enactment of section 1915(g). *Welch v. Galie,* 207 F.3d 130, 132 (2d Cir.2000).

**\*2** A dismissal cannot count as a strike until after the opportunity to appeal has been exhausted or waived. *See, e.g., Partee v. Connolly,* 08 Civ. 4007, 2009 WL 1788375, at *2 (S.D.N.Y. June 23, 2009) (collecting cases). If a district court dismisses an action on a ground specified in section 1915(g), and an appellate court simply affirms, together the decisions constitute a single strike. *Id.; Thompson v. Drug Enforcement Admin.,* 492 F.3d 428, 436–37 (D.C.Cir.2007). However, when a district court dismisses an action for any of the reasons set forth under the three strikes statute, and if the subsequent appeal is dismissed as frivolous, then the two decisions count as separate strikes. *Chavis v. Chappius,* 618 F.3d 162, 169 (2d Cir.2010) ( "sequential dismissals on strike grounds can provide separate strikes under § 1915(g)").

If plaintiff has three strikes, section 1915(g) prevents plaintiff from filing a subsequent action *in forma pauperis* unless the plaintiff is under imminent danger of serious physical injury. 28 U.S.C. § 1915(g). This exception to section 1915(g) has been interpreted to apply only if the plaintiff faces imminent danger of serious physical injury "at the time the complaint is filed." *Malik v. McGinnis,* 293 F.3d 559, 562–63 (2d Cir.2002).

**B. Analysis**

As Judge Suddaby noted in his Decision and Order dated March 25, 2010, plaintiff had clearly acquired two strikes for purposes of the PLRA before he filed the current action (on November 27, 2009). (Dkt. No. 12 at 6–7 n. 2). Plaintiff incurred his first strike on May 20, 1996,[3] after filing a civil rights action in the Southern District of New York. *Sidney v. New York City Police Dep't,* 96–CV–3783 (S.D.N.Y. May 20, 1996) (Hall Attorney Affirmation, Exh. A, Dkt. No. 53–1 at 4–5). According to the docket entries in action 96–CV–3783,[4] the district court dismissed this action *sua sponte,* pursuant to 28 U.S.C. § 1915(d), and certified, under section 1915(a),[5] that "any appeal from this order would not be taken in good faith." (*Id.,* Dkt. No. 53–1 at 5). It is apparent that the court dismissed the action as "frivolous" pursuant to former section 1915(d),[6] which would bring the disposition within the three strikes provisions. In any event, the court's further certification that any appeal "would not be taken in good faith," has been held sufficient to clarify that a dismissal was on grounds specified in section 1915(g). See, e.g., *Martin v. Wallis,* 1:07–cv–175, 2008 WL 3471864, at *4 (D.Vt. Aug.12, 2008) (citing *Chavis v. Curlee,* 9:06–CV–49 (LEK/ GHL), 2008 WL 508694, at *2 (N.D.N.Y. Feb. 21, 2008) (certification by district judge that appeal would not be taken in good faith is a finding of frivolousness for purpose of § 1915(g)).

The second clear strike identified in Judge Suddaby's prior order related to an appeal filed by the plaintiff in the Second Circuit. *Sidney v. United States,* 06–2936–cv (2d Cir. Oct. 13, 2006) (Hall Attorney Affirmation, Exh. C, Dkt. No. 53–1 at 15). The appeal was dismissed for lacking "an arguable basis in fact or law," which brings it within the ambit of the three strikes provision. *See, e.g., Mills v. Fischer,* —— F.3d ——, 11–276–pr, 645 F.3d 176, 2011 WL 2726053, at *1 (2d Cir. July 14, 2011) (appeal dismissed as lacking an arguable basis in fact and law counts as a strike); *Larocco v. Jackson,* 10 CV 1651, 2010 WL 5067825, at *3 (E.D.N.Y. Oct.21, 2010).

**\*3** The defendants argued that plaintiff incurred another strike in connection with the disposition in the district court action which preceded the appeal just discussed. *Sidney v. United States of America,* 03–CV–791S, 2006 WL 462100 (W.D.N.Y. Feb.22, 2006) (Hall Attorney Affirmation, Exh. B, Dkt. No. 53–1 at 8–13). In this action, plaintiff attempted to recover taxes which he claimed that the Internal Revenue Service (IRS) erroneously assessed and collected from him. In February 2006, District Judge Skretny granted the IRS' motion for summary judgement and dismissed plaintiff's action for lack of subject matter jurisdiction. The court ruled that plaintiff failed to file a timely administrative claim

for a refund with the IRS, which was a jurisdictional prerequisite to initiating a suit in federal court. 2006 WL 462100, at *3; Dkt. No. 53–1 at 12–13).

Plaintiff survived a prior motion to dismiss his tax refund action on the same jurisdictional grounds on which Judge Skretny eventually granted summary judgment. 2005 WL 724142 (W.D.N.Y. Mar.30, 2005). "[C]ourts have ... held that a case decided at summary judgment generally does not qualify for a strike under § 1915." Martin v. Wallis, 2008 WL 3471864, at *4 (collecting cases); Burgess v. Conway, 631 F.Supp.2d 280, 282 n. 1 (W.D.N.Y. July 7, 2009 (citing, inter alia, Thompson v. DEA, 492 F.3d at 438 ("if the court dismisses the complaint on ... a motion for summary judgment, the dismissal will not count as a strike"); Lewis v. Healy, 9:08–CV–148 (LEK/DEP), 2008 WL 5157194, at *5 n. 6 (N.D.N.Y. Dec. 8, 2008).[7] Furthermore, some courts have held that a dismissal of an action for lack of subject matter jurisdiction does not qualify as a strike. Thompson v. DEA, 492 F.3d at 438; Harden v. Harden, 8:07CV68, 2007 WL 2257327, at *1 (D.Neb. Aug.3, 2007). The fact that section 1915(g) explicitly includes dismissals for failure to state a claim–an obvious reference to FED. R. CIV. P. 12(b)(6)-but does not mention dismissals for lack of subject matter jurisdiction, supports the holding of Thompson and other courts that dismissals under Rule 12(b)(1) or Rule 56 based on jurisdictional defects do not count as strikes.

In his prior decision and order, Judge Suddaby considered whether another civil rights action filed by plaintiff in federal court, which was dismissed without prejudice for failure to exhaust administrative remedies, should count as plaintiff's third strike. (Dkt. No. 6 at 6–7 n. 2). Sidney v. Wilson, 01–CV–10054, (S.D.N .Y. May 22, 2002). Following the dismissal of this action, under FED. R. CIV. P. 12(b)(1) & (b)(6), plaintiff successfully exhausted his administrative remedies, filed an new action based on the same incident, survived dispositive motions, won a judgment of nominal damages after trial, and unsuccessfully appealed the result of the trial.[8] As Judge Suddaby notes, the Second Circuit has suggested that a dismissal, without prejudice, for failure to exhaust administrative remedies should not count as a strike under section 1915(g). See Snider v. Melindez, 199 F.3d 108, 115 (2d Cir.1999) ("[W]e believe that 'fail[ure] to state a claim,' as used in Sections 1997e(c) and 1915(g) of the

PLRA, does not include failure to exhaust administrative remedies-at least absent a finding that the failure to exhaust permanently bars the suit. However, we need not decide this question."); accord, Tafari v. Hues, 473 F.3d 440, 442–43 (2d Cir.2007). Judge Suddaby invited the defendants to brief whether the Supreme Court's decision in Jones v. Block, 549 U.S. 199, 213–16, 127 S.Ct. 910, 920–21, 166 L.Ed.2d 798 (2007) undercut the Second Circuit's reasoning in Snider and Tafari, which the defendants chose not to do. In the absence of such briefing, and given that other courts in this Circuit still apply Tafari for the proposition that dismissal for failure to exhaust does not qualify as a strike, see, e.g., Burgess v. Conway, 631 F.Supp.2d at 282 n. 1, this court will not consider the initial dismissal in Sidney v. Wilson as plaintiff's third strike under the PLRA.

*4 Accordingly, the court concludes that the plaintiff has only two prior actions or appeals that count as "strikes" under Section 1915(g) and that his action is not subject to dismissal under that provision of the PLRA.

WHEREFORE, based on the findings above, it is

RECOMMENDED, that defendants' motion to dismiss pursuant to 28 U.S.C. § 1915(g) (Dkt. No. 53) be DENIED, and it is further

RECOMMENDED, that if the District Court adopts this recommendation, the defendants be ordered to answer or otherwise respond to plaintiff's Amended Complaint within thirty (30) days of the District Court's Order.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

## All Citations

Not Reported in F.Supp.2d, 2011 WL 4478679

## Footnotes

1     On April 1, 2011, DOCS and the New York State Division of Parole were merged into one agency, named the New York State Department of Corrections and Community Supervision. Because the events relevant to this suit occurred before the merger, I will refer to New York State's corrections agency as "DOCS."

2     Judge Suddaby's Memorandum–Decision and Order dated December 16, 2010 cogently summarizes the procedural history of this case and patiently attempts to interpret the allegations of the Second Amended Complaint, which the court characterizes, with great charity, as "far from a model of clarity." (Dkt. No. 29 at 2–3, 4–6)

3     DOCS on-line Inmate Information data indicates that plaintiff Eugene Sidney has been in DOCS custody from January 26, 1994 to the present.

4     The district court's order is not available in the electronic PACER system. This court may rely on the docket entries to determine whether PLRA's three-strikes limitation applies, so long as they indicate "with sufficient clarity" the grounds under which the prior suit was dismissed. *Harris v. City of New York,* 607 F.3d 18, 23 (2d Cir.2010).

5     The substance of former section 1915(a) now appears, in relevant part, at 28 U.S.C. § 1915(a)(3).

6     Before it was amended, less than a month before the district court's order, Section 1915(d) provided for dismissal of a case if the "allegation of poverty is untrue, or if ... the action is frivolous or malicious." On April 26, 1996, subsection (d) was renumbered as subsection (e) and amended to its current form. It is apparent that the district judge was referencing the subsection of 1915 in its form prior to the 1996 amendment.

7     In denying plaintiff's motion for reconsideration of the grant of summary judgment, Judge Skretny also discussed the lack of evidence marshaled by plaintiff to support his claim, and noted that he was "not entitled to judgment on the merits...." 2006 WL 1144549, at *2 (W.D.N.Y. Apr.28, 2006). The judge however never indicated that he was dismissing plaintiff's action for failure to state a claim or because it was frivolous. *See, e.g., Richardson v. Ray,* 402 F.App'x 775, 776 (4th Cir.2010) (dismissal on summary judgment is not dismissal as frivolous or malicious, nor for failure to state a claim, and thus does not count as a strike).

8     *See Sidney v. Wilson,* 03 Civ. 0830, 228 F.R.D. 517, 518 n. 3 (S.D.N.Y.2005) (discussing prior complaint involving the same incident, which was dismissed, without prejudice, for failure to exhaust); 2007 WL 4208626 (S.D.N.Y. June 24, 2005) (denying summary judgment motion, with respect to one defendant, on Eighth Amendment excessive force claim); 1/15/2010 Judgment (awarding plaintiff Sidney nominal damages) (S.D.N.Y. Case 1:03–cv–830, Dkt. No. 98). *See also Sidney v. Wilson,* 3/2/2011 Mandate (finding appellant Sidney's notice of appeal untimely and dismissing appeal for lack of jurisdiction) (2d Cir. Case 10–1814, Dkt. No. 50).

---

**End of Document**     © 2016 Thomson Reuters. No claim to original U.S. Government Works.


Not Reported in F.Supp.2d, 2008 WL 5157194 (N.D.N.Y.)
**(Cite as: 2008 WL 5157194 (N.D.N.Y.))**

**c**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Melvin C. LEWIS, Plaintiff,
v.
P. HEALY, et al., Defendants.

No. 9:08-CV-148 (LEK/DEP).
Dec. 8, 2008.

West KeySummary**Federal Civil Procedure 170A**
**☞2734**

170A Federal Civil Procedure
    170AXIX Fees and Costs
        170Ak2732 Deposit or Security
            170Ak2734 k. Forma Pauperis
Proceedings. Most Cited Cases

An inmate's *in forma pauperis* status, entitling him to a waiver of normal court costs, was vacated because he had brought three prior civil rights actions which were dismissed on their merits. Accordingly, the court recognized that the net result of its findings regarding the prior actions was not denial altogether of the inmate's access to the courts, but instead was only the imposition of the requirement that he conclude that the pursuit of his civil rights claims justifies his expenditure of the full applicable filing fee.

Melvin C. Lewis, Napanoch, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of New York, David L. Cochran, Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

***DECISION AND ORDER***
LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a Report-Recommendation filed on October 29, 2008, by the Honorable David E. Peebles, United States Magistrate Judge, pursuant to 28 U.S .C. § 636(b) and L.R. 72.3(c) of the Northern District of New York. Report-Rec. (Dkt. No. 32).

Within ten days, excluding weekends and holidays, after a party has been served with a copy of a Magistrate Judge's Report-Recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations," FED.R.CIV.P. 72(b), in compliance with L.R. 72.1. No objections have been raised in the allotted time with respect to Judge Peebles' Report-Recommendation. Furthermore, after examining the record, the Court has determined that the Report-Recommendation is not subject to attack for plain error or manifest injustice.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt. No. 32) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED,** that the Order granting Plaintiff in forma pauperis status (Dkt. No. 4) is **VACATED;** and it is further

**ORDERED,** that Defendants' Motion to dismiss Plaintiff's Complaint (Dkt. No. 21) is **GRANTED** as to all Defendants and all claims unless Lewis pays the full required filing fee of $350 **within thirty (30) days** from the date of this Order; and it is further

**ORDERED,** that the requirement that Defendants answer Plaintiff's Complaint is **STAYED** indefinitely pending final resolution of the IFP issue raised in their motion; and it is further

**ORDERED,** that Plaintiff's Motion to amend the Complaint (Dkt. No. 25) is **DENIED,** without prejudice to its renewal in the event that the required filing fee is paid; and it is further

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

Plaintiff Melvin C. Lewis, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis* ("IFP"), has commenced this action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, alleging deprivation of his civil rights. In their response to plaintiff's complaint, defendants assert that plaintiff's IFP status was improvidently granted, and seek conditional dismissal of plaintiff's complaint under 28 U.S.C. § 1915(g), absent his pre-payment in full of the applicable filing fee, in light of the prior dismissal of three or more such inmate civil rights actions brought by him, but found to be lacking in palpable merit. Because I agree that plaintiff is subject to the "three strikes" provision of section 1915(g), and has not established a basis to invoke the imminent danger exception to that rule, I recommend that defendants' motion be granted.

I. *BACKGROUND*

Plaintiff is, and was at the times relevant to the constitutional claims raised in this action, a prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS"), and confined within the Eastern Correctional Facility ("Eastern"), located in Napanoch, New York. *See generally* Complaint (Dkt. No. 1). In his complaint, plaintiff asserts that he was subject to adverse action, including confinement to his cell and reassignment from his work program, in retaliation for having filed grievances against certain defendants. *Id.* Plaintiff also alleges that the defendants conspired to effectuate the issuance of a false misbehavior report against him, and that during the course of an ensuing disciplinary proceeding he was denied procedural due process. *Id.*

**\*2** In reply to a specific inquiry on the form civil rights complaint utilized by the plaintiff to initiate this action, requesting information regarding previous lawsuits, Lewis identified only one other action filed by him in any state or federal court relating to the terms of his confinement.FN1 *See* Complaint (Dkt. No. 1) § 5. That limited response, however, is flatly contradicted by publicly available information which reveals that at the time of commencement of this suit, plaintiff had initiated at least ten other civil rights actions and one habeas corpus proceeding in this district, the Southern District of New York, and the Western District of New York, dating back to 1997, while a DOCS inmate. The following represents a listing of plaintiff's prior known civil right actions and habeas corpus petitions filed while confined as a prison inmate:

> FN1. When signing his complaint, plaintiff attested to the truth of its contents under penalty of perjury. *See* Complaint (Dkt. No. 1) at 11.

A. *Northern District of New York*

(1) *Lewis, et al. v. DeAngelo, et al.,* Civil Action No. 97-CV-1316 (Civil Rights Action consolidating Civil Action Nos. 97-CV-1457, 97-CV-1683, 97-CV-1657, 97-CV-1375, 97-CV-1416, and 97-CV-1427)

(2) *Lewis v. City of Binghamton, et al.,* Civil Action No. 97-CV-1823 (Civil Rights Action)

(3) *Lewis v. Dury, et al.,* Civil Action No. 00-CV-765 (Civil Rights Action)

(4) *Lewis v. Poole,* Civil Action No. 02-CV-987 (Habeas Corpus Proceeding)

(5) *Lewis v. Donahue et al.,* Civil Action No. 04-CV-1452 (Civil Rights Action)

(6) *Lewis v. Allen, et al.,* Civil Action No. 05-CV-1117 (Civil Rights Action)

(7) *Lewis v. Goord, et al.,* Civil Action No.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

06-CV-505 (Civil Rights Action)

B. *Western District of New York*
 (1) *Lewis v. Pataki, et al.,* Civil Action No.
03-CV-800 (Civil Rights Action)

 (2) *Lewis v. Blazejewski, et al.,* Civil Action No.
03-CV-943 (Civil Rights Action)

 (3) *Lewis v. Pataki, et al.,* Civil Action No.
04-CV-162 (Civil Rights Action)

C. *Southern District of New York*
 (1) *Lewis v. Corp. City of Binghamton, et al.,*
Civil Action No. 07-CV-4674 (Civil Rights
Action)

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on February 8,
2008, and was thereafter granted leave to proceed
IFP. Dkt. Nos. 1, 4. Following their execution of
acknowledgment of service forms, *see* Dkt. Nos.
11, 12, 13, 14, and 17, on May 23, 2008 defendants
filed a motion seeking dismissal of plaintiff's
complaint pursuant to 28 U.S.C. § 1915(g). Dkt.
No. 21. With the filing by Lewis of papers in
opposition to that motion, Dkt. No. 24, defendants'
motion is now ripe for determination, and has been
referred to me for the issuance of a report and
recommendation, pursuant to 28 U.S.C. § 636(b)(1)
(B) and Northern District of New York Local Rule
72.3(c).[FN2] *See also* Fed.R.Civ.P. 72(b).

> FN2. Also pending before the court is a
> motion by the plaintiff to amend his
> complaint in order to add new defendants
> and assert additional claims under section
> 1983. *See* Dkt. No. 25. In light of my
> finding that plaintiff does not qualify for
> IFP status, I recommend that the motion to
> amend be held in abeyance, and decided
> only in the event plaintiff pays the full fee
> for filing this action.

## III. *DISCUSSION*

### A. *Three Strikes Provision Generally*

In their motion, defendants invoke 28 U.S.C. §
1915(g), arguing that under that section plaintiff's
litigation history, which includes at least three
merit-based dismissals, warrants revocation of his
IFP status.

**\*3** Section 1915(g), which was enacted as part
of sweeping inmate litigation reform brought about
by adoption of the Prison Litigation Reform Act of
1996 ("PLRA"), Pub.L. No. 104-134, 110 Stat.
1321 (1996), though engendering far less litigation
than some of its PLRA counterparts including,
notably, the exhaustion of remedies requirement of
42 U.S.C. § 1997e(a), provides that

> [i]n no event shall a prisoner bring a civil action
> or appeal a judgment in a civil action or
> proceeding under this section if the prisoner has,
> on 3 or more prior occasions, while incarcerated
> or detained in any facility, brought an action or
> appeal in a court of the United States that was
> dismissed on the grounds that is frivolous,
> malicious, or fails to state a claim upon which
> relief may be granted, unless the prisoner is under
> imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The manifest intent of
Congress enacting this "three strikes" provision
was to curb prison inmate abuses and deter the
filing of multiple, frivolous civil rights suits by
prison inmates. *Tafari v. Hues,* 473 F.3d 440,
443-44 (2d Cir.2007); *Gill v. Pidlychak,* No.
9:02-CV-1460, 2006 WL 3751340, at \*2 (N.D.N.Y.
Dec.19, 2006) (Scullin, S.J. & Treece, M.J.). The
prophylactic effect envisioned under section
1915(g) is accomplished by requiring a prisoner
who has had three previous strikes to engage in the
same cost benefit analysis that other civil litigants
must make before deciding whether to commence
suit, accompanied by the filing of the full fee-that
is, to assess whether the result to be achieved
justifies the filing fee expenditure. *Tafari,* 473 F.3d
at 444; *Ibrahim v. District of Columbia,* 463 F.3d 3,
6 (D.C.Cir.2006). As the Second Circuit has noted,
in the context of PLRA amendments requiring
inmates to authorize prison officials to make

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

deductions from inmate accounts to be applied as partial payments of appellate filing fees for prisoners granted IFP status,

> [p]rior to the enactment of the *in forma pauperis* amendments, inmates suffered no economic disincentive to filing law suits. Indeed, the very nature of incarceration-prisoners have substantial free time on their hands, their basic living expenses are paid by the state and they are provided free of charge the essential resources needed to file actions and appeals, such as paper, pens, envelopes and legal materials-has fostered a " 'nothing to lose and everything to gain' " environment which allows inmates discriminately to file suit at taxpayers' expense.

*Nicholas v. Tucker,* 114 F.3d 17, 20 (2d Cir.1997), *cert. denied sub nom., Nicholas v. Miller,* 523 U.S. 1126, 118 S.Ct. 1812, 140 L.Ed.2d 950 (1998) (internal citations omitted); *see also Gill,* 2006 WL 3751340, at *2.

The question of whether the dismissal of a prior action qualifies as a strike, for purposes of section 1915(g), is a matter of statutory interpretation, and as such a question for the court. FN3 *Tafari,* 473 F.3d at 442-43. In determining whether a dismissal satisfies the failure to state a claim prong of the statute, implicated in this case, courts have drawn upon the provisions of Rule 12(b)(6) of the Federal Rules of Civil Procedure for guidance, particularly in light of the similarity in phrasing utilized in the two provisions. *Tafari,* 473 F.3d at 442 (citing *Andrews v. King,* 398 F.3d 1113, 1121 (9th Cir.2005)).

> FN3. The Second Circuit has expressed its view that the time for determination of "strikes" is only when the section 1915(g) issue is ripe for adjudication, and that because of the potentially significant consequences flowing from such a finding, a court should not, when dismissing an inmate complaint, contemporaneously signal whether the dismissal should count as a "strike" for the purposes of that

section. *DeLeon v. Doe,* 361 F.3d 93, 95 (2d Cir.2004); *see also Snider v. Melindez,* 199 F.3d 108, 115 (2d Cir.1999) ("We ... doubt whether the entry of a strike is properly considered at the time an action is dismissed.").

B. *Application of Section 1915(g)*

**\*4** Defendants' motion identifies four actions, all brought by the plaintiff in either this district or the Southern District of New York, as constituting strikes, for purposes of section 1915(g), including Civil Action Nos. 97-CV1823, 04-CV-1452, 07-CV-4674, and 05-CV-1117. In support of their motion, defendants offer only entries from the docket sheets maintained by the court in two of those four actions. *See* Cochran Affirmation (Dkt. No. 21) Exhs. C and D. Defendants interpret the docket entries associated with the dismissal of each of those actions as evidencing a judicial finding that plaintiff's complaint failed to state a claim upon which relief may be granted.

The determination of whether a prior dismissal does in fact constitute a strike is dependent upon the precise nature of the dismissal and the grounds supporting it. For that reason, rather than being guided by the text of relevant docket entries and the particular language employed, I have obtained copies of the actual orders directing dismissal of those actions, and will look to those orders, constituting matters of public record of which the court may properly take judicial notice, *Green v. Nottingham,* 90 F.3d 415, 418 (10th Cir.1996) (citing *St. Louis Baptist Temple, Inc. v. FDIC,* 605 F.2d 1169, 1172 (10 th Cir.1979)), to aid in determining whether they meet the requisite criteria to qualify as strikes under section 1915(g).

1. *Civil Action No. 97-CV-1823*

The first action offered by defendants in support of their motion is *Lewis v. City of Binghamton, et al.,* Civil Action No. 97-CV-1823 (N.D.N.Y., filed December 15, 1997).FN4 *See* Cochran Affirmation (Dkt.21) Exh. C. At the time the suit was commenced, plaintiff was confined

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

within the Broome County Correctional Facility. No. 6:97-CV-1823, Dkt. No. 1. Plaintiff's complaint in that action asserts claims under 42 U.S.C. § 1983 against the City of Binghamton; Gerald F. Mollen, the District Attorney of Broome County; Matthew Ryan, an attorney for the Broome County Public Defender's Office; and MaryAnn Lehmann, identified by Lewis as "City Court Judge for Broome County", seeking money damages for his allegedly illegal imprisonment in 1997 resulting from the negligence and malicious misconduct of the defendants. *Id.* at Dkt. Nos. 1, 5. Plaintiff's complaint was dismissed as a result of an order issued on February 5, 1998 by then-Chief Judge Thomas J. McAvoy on the basis that a plaintiff cannot recover monetary damages for an alleged unconstitutional conviction or imprisonment under section 1983 without first proving that the conviction has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. *Id.* at Dkt. No. 5 (citing, *inter alia, Heck v. Humphrey,* 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)). The order specifically recited that plaintiff's complaint was being dismissed for failure to state a claim upon which relief may be granted. That action therefore qualifies as a strike for purposes of section 1915(g). *Tafari,* 473 F.3d at 441; *see also Smith v. District of Columbia,* 182 F.3d 25, 27-29 (D.C.Cir.1999).

> FN4. Because plaintiff was confined within the Broome County Correctional Facility at the time that action was commenced, the docket sheet does not reflect his department identification number ("DIN"), which is often helpful in confirming that the plaintiff in that action and the plaintiff in the current action are one in the same. Based upon an examination of his criminal record, however, the plaintiff "Melvin C. Lewis" in the current action is determined to be the same "Melvin Cornell Lewis" who commenced No. 97-CV-1823.

*2. Civil Action No. 04-CV-1452*

**\*5** The second case cited by the defendants in support of their three strikes motion is *Lewis v. Donahue, et al.,* Civil Action No. 3:04-CV-1452 (N.D.N.Y., filed Dec. 15, 2004). The plaintiff's complaint associated with that action reflects that at the time the suit was commenced, he was confined within the Auburn Correctional Facility, and that the claims asserted in his complaint are alleged to have arisen under 42 U.S.C. § 1983. *See* No. 04-CV-1452, Dkt. No. 1. That action was brought by plaintiff against Binghamton Police Officers Scott Donahue and Barry Angels, Broome County Court Judge Martin E. Smith, and Chief Assistant District Attorney Joanne Rose Parry, alleging false arrest, false imprisonment, and malicious prosecution in connection with his 2000 conviction and subsequent imprisonment.[FN5] *Id.* As the result of an order issued on June 6, 2006 by District Judge Thomas J. McAvoy, plaintiff's complaint was dismissed on the basis that a plaintiff cannot recover damages for an unconstitutional conviction or imprisonment under section 1983 " ' unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.' " *Id.* at Dkt. No. 56 (quoting *Heck,* 512 U.S. at 489, 114 S.Ct. 2364, 129 L.Ed.2d 383). That order recited that plaintiff's complaint was being dismissed because it failed to state a claim upon which relief could be granted and was frivolous under 28 U.S.C. § 1915(e) (2). *Id.* Accordingly, that dismissal also qualifies as a strike for purposes of section 1915(g). *Tafari,* 473 F.3d at 441; *see also Smith,* 182 F.3d at 27-29.

> FN5. Plaintiff's complaint in that action was initially dismissed pursuant to an order issued on December 22, 2004 by District Judge Gary L. Sharpe, finding that plaintiff's claims were not cognizable under 42 U.S.C. § 1983 because it appeared that plaintiff was only seeking to alter the fact or duration of his custody, relief available solely by way of a habeas corpus petition. No. 04-CV-1452, Dkt. No

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

4. Plaintiff responded by filing a motion for reconsideration, *id.* at Dkt. No. 6, which was granted by Judge Sharpe on May 24, 2005, restoring the action and vacating the judgment in favor of the defendants on the ground that plaintiff was "not seeking immediate or speedier release from prison, but rather only monetary damages and a probable cause hearing[,]" relief which he could pursue under section 1983. *Id.* at Dkt. No. 10. Plaintiff's claims against Judge Martin E. Smith and Chief Assistant District Attorney Joanne Rose Parry, however, were dismissed by Judge Sharpe on the basis of judicial and prosecutorial immunity, respectively. *Id.*

*3. Civil Action No. 07-CV-4674*

The third strike alleged by the defendants relates to an action entitled *Lewis v. Corp. City of Binghamton, et al.,* Civil Action No. 1:07-CV-4674 (S.D.N.Y., filed June 4, 2007). *See* Corchran Affirmation (Dkt. No 21) Exh. D. In that suit, which like this action was commenced while plaintiff was confined within Eastern, Lewis asserted claims under 42 U.S.C. § 1983 against "the Corporation City of Binghamton"; Broome County Court Judge Martin E. Smith; Chief Assistant District Attorney Joanne Rose Parry; and James M. Barber, plaintiff's defense attorney, again alleging constitutional violations in connection with his 2000 conviction. No. 07-CV-4674, Dkt. No. 3. Citing *Heck,* Chief Judge Kimba M. Wood dismissed plaintiff's complaint on June 4, 2007 for failure to state a claim upon which relief may be granted, and also with the additional finding that any appeal from that order would not be taken in good faith. *Id.* at Dkt. No. 3. Consequently, that action similarly qualifies as a strike for purposes of defendants' motion. *Tafari,* 473 F.3d at 441; *see also Smith,* 182 F.3d at 27-29.

As the foregoing reflects, defendants have convincingly established that the plaintiff has filed at least three meritless civil rights complaints while confined as a New York prison inmate.[FN6] Accordingly, absent applicability of the imminent danger exception, plaintiff is subject to the provisions of 28 U.S.C. § 1915(g), and thus may properly be required to prepay in full the applicable filing fee in order to pursue his claims, notwithstanding that IFP status was previously conferred. *See McFadden v. Parpan,* 16 F.Supp.2d 246, 247-48 (E.D.N.Y.1998).

FN6. Defendants contend that another action, *Lewis v. Monette,* 9:05-CV-1117 (N.D.N.Y., filed September 6, 2005), may qualify as a strike for purposes of section 1915(g). While it is unnecessary to analyze the circumstances surrounding the dismissal of that action, it likely does not qualify as a strike since plaintiff's claims were dismissed on motion for summary judgment, rather than based upon a failure to state a claim upon which relief may be granted. *See Weber v. Gathers,* No. 2:04-1563-MBS, 2006 WL 2796374, at *3 (D.S.C. Sept.26, 2006) ("[A]n action proceeding to the summary judgment stage can rarely be characterized as 'frivolous, malicious, or fail[ing] to state a claim upon which relief may be granted' for purposes of 28 U.S.C. § 1915(g)."); *Harris v. Oatley,* No. 2:05-CV-265, 2006 WL 2714961, at *5 (W.D.Mich. Sept.22, 2006) ("[C]ases dismissed on summary judgment do not constitute a strike.").

On the other hand, it does appear that at least one other case not cited by the defendants may also qualify as a strike. *See Lewis v. Pataki, et al.,* Civil Action No. 04-CV-162 (W.D.N.Y., filed March 12, 2004) (dismissing the action pursuant to 28 U.S.C. § 1915(e)(2)(B) and certifying that any appeal from that order would not be taken in good faith). In light of the findings of this report and recommendation, however, it is

unnecessary to address the circumstances surrounding dismissal of that case.

C. *Imminent Danger Exception*

**\*6** As a safety valve, obviously intended to protect a prison inmate exposed to potential danger from the harsh consequences of his or her earlier folly, section 1915(g) provides that a prisoner who is in "imminent danger of serious physical injury" may avoid application of the three strikes rule of section 1915(g). *See* 28 U.S.C. § 1915(g); *see also Malik v. McGinnis,* 293 F.3d 559, 562-63 (2d Cir.2002). This exception requires a showing that the prisoner was under such imminent danger at the time of filing; the exception does not provide a basis to avoid application of the three strikes on the basis of past harm. *Id.* An inmate who claims the benefit of this exception must also show that the danger faced rises to the level of a "serious physical injury." 28 U.S.C. § 1915(g). The imminent danger an inmate faces, moreover, must be real, and not merely speculative or hypothetical. *Johnson v. Barney,* No. 04 Civ. 10204, 2005 WL 2173950, at \*1-\*2 (S.D.N.Y. Sept.6, 2005) (inmate's allegation of danger at facility he was not housed at, but may pass through at infrequent occasions in the future, does not establish imminent danger)

The term "serious physical injury", as utilized in section 1915(g), is nowhere concretely defined, although it has been construed by various courts as including a "disease that could result in serious harm or even death [.]" *Ibrahim,* 463 F.3d at 7. In deciding whether to invoke the exception, a court must examine the available pleadings, construed in a light most favorable to the plaintiff, to determine whether the plaintiff has alleged a serious physical injury. *McAlphin v. Toney,* 281 F.3d 709, 710 (8th Cir.2002). Conditions which have been held to rise to a sufficient threshold level include denial of treatment for infected gums, resulting in damages of infection, *McAlphin,* 281 F.3d at 710; denial of adequate treatment for Hepatitis C, a "chronic and potentially fatal disease," *Ibrahim,* 463 F.3d at 6-7;

and patterns of harassment from corrections officers, heart palpitations, chest pains and labored breathing, *Ciarpaglini v. Saini,* 352 F.3d 328, 330-31 (7th Cir.2003) (finding upon reaching the merits, however, that plaintiff's complaint did not state an Eighth Amendment claim).

In this action, plaintiff's claims include allegations of retaliation, conspiracy, and denial of due process, resulting in confinement to his cell; reassignment from his work program; the issuance of a falsified misbehavior report; nineteen days of keeplock confinement; and loss of packages, telephone privileges, commissary, and recreation. FN7 *See* Complaint (Dkt. No. 1). Having carefully reviewed both plaintiff's complaint and the materials submitted in response to defendants' motion to dismiss, I conclude that none of the matters set forth in those papers suggest the existence of imminent danger of serious physical injury of the sort contemplated by Congress when enacting section 1915(g). *See Polanco v. Hopkins,* 510 F.3d 152 (S.D.N.Y.2007) (finding prisoner was not in imminent danger of serious physical injury where he alleged he was unjustly disciplined by confinement for thirty days, deprived of keeplock shower, called names and received threats from guards, wrongly reported with misbehavior charge, and confined to special housing unit (SHU)). Plaintiff therefore does not qualify for relief under the imminent danger exception to the three strikes rule.

> FN7. Keeplock is a form of confinement restricting an inmate to his or her cell, separating the inmate from others, and depriving him or her of participation in normal prison activities. *Gittens v. LeFevre,* 891 F.2d 38, 39 (2d Cir.1989); *Warburton v. Goord,* 14 F.Supp.2d 289, 293 (W.D.N.Y.1998) (citing *Gittens* ); *Tinsley v. Greene,* No. 95-CV-1765, 1997 WL 160124, at \*2 n. 2 (N.D.N.Y. Mar. 31, 1997) (Pooler, D.J. & Homer, M.J.) (citing, *inter alia, Green v. Bauvi,* 46 F.3d

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

189, 192 (2d Cir.1995)). Inmate conditions while keeplocked are substantially the same as in the general population. *Lee v. Coughlin,* 26 F.Supp.2d 615, 628 (S.D.N.Y.1998). While on keeplock confinement an inmate is confined to his or her general population cell for twenty-three hours a day, with one hour for exercise. *Id.* Keeplocked inmates can leave their cells for showers, visits, medical exams and counseling, and can have cell study, books and periodicals, *Id.* The primary difference between keeplock and the general population confinement conditions is that keeplocked inmates do not leave their cells for out-of-cell programs, and are usually allowed less time out of their cells on the weekends. *Id.*

## IV. *SUMMARY AND RECOMMENDATION*

**\*7** The record now before the court firmly establishes that three prior civil rights actions, brought by the plaintiff while a prison inmate, have been dismissed on their merits for failure to state claims upon which relief may be granted. The record also fails to reveal any basis to conclude that plaintiff is in imminent danger of serious physical injury, and therefore entitled to exemption from the three strikes provision of 28 U.S.C. § 1915(g). Accordingly, recognizing that the net result of these findings is not denial altogether of plaintiff's access to the courts, but instead only the requirement that he conclude that the pursuit of his civil rights claims justifies his expenditure of the full applicable filing fee, it is hereby respectfully

RECOMMENDED that:

1) The order granting the plaintiff IFP status (Dkt. No. 4) be VACATED.

2) Defendants' motion to dismiss plaintiff's complaint (Dkt. No. 21) be GRANTED as to all defendants and all claims unless Lewis pays the full required filing fee of $350.00 within thirty days after the entry of a final order by the district court

addressing this recommendation; and

3) The requirement that defendants answer plaintiff's complaint be STAYED indefinitely pending final resolution of the IFP issue raised in their motion; and

4) Plaintiff's motion to amend the complaint (Dkt. No. 25) be DENIED, without prejudice to its renewal in the event that the required filing fee is paid or if the district court rejects this recommendation and denies defendants' motion to dismiss.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS OF SERVICE OF THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

N.D.N.Y.,2008.
Lewis v. Healy
Not Reported in F.Supp.2d, 2008 WL 5157194 (N.D.N.Y.)

END OF DOCUMENT



Not Reported in F.Supp.2d, 2008 WL 3471864 (D.Vt.)
**(Cite as: 2008 WL 3471864 (D.Vt.))**

C
Only the Westlaw citation is currently available.

United States District Court,
D. Vermont.
Byron MARTIN, Plaintiff
v.
R. Tasha WALLIS, John Doe # 1, John Doe # 2,
Steven Collier, Daniel Akers, Randy Stovall, Laura
Kash, Mr. Napier, Mike Bowling, Danny Lane,
Mitchell Brandenburg, Melissa Brunelle, Frank
Kincaid, Donna Stivers, Kathy Childers, John Does
1–5, Sean Selby, Larry Smith, Tom Roberts and
Kevin Charboneau, Defendants.

No. 1:07–cv–175.
Aug. 12, 2008.

Byron Martin, Barton, VT, pro se.

Toni H. Clithero, Esq., Vermont Office of the
Attorney General, Montpelier, VT, for Defendants.

### ORDER
J. GARVAN MURTHA, District Judge.

**\*1** The Magistrate Judge's Report and
Recommendation was filed July 17, 2008. (Paper
53.) After *de novo* review and absent objection, the
Report and Recommendation is AFFIRMED,
APPROVED and ADOPTED. *See* 28 U.S.C. §
636(b)(1).

The defendants' motions to dismiss (Papers 45
and 49) are hereby GRANTED to the extent that
they seek dismissal based upon 28 U.S.C. § 1915(g)
. The *in forma pauperis* order in this case (Paper 2)
is vacated and this case shall be DISMISSED
unless plaintiff pays the filing fee within 30 days of
this Order. Failure to pay the fee in a timely manner
will result in dismissal.

If the fee is paid in accordance with the Court's
instructions, the Court will consider the remaining
arguments for dismissal set forth by defendants
Selby, Smith, Roberts, Charboneau and Wallis.
(Paper 49.)

Plaintiff's motion for default judgment (Paper
8) is DENIED.

SO ORDERED.

### MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION (Papers 8, 45 and 49)
JEROME J. NIEDERMEIER, United States
Magistrate Judge.

This case, brought by *pro se* plaintiff Byron
Martin, pertains to injuries Martin allegedly
suffered while in prison. The complaint initially
named over 30 defendants. Some defendants have
been dismissed pursuant to a stipulation, but several
remain. Currently pending before the Court are
motions to dismiss filed by two separate groups of
defendants (Papers 45 and 49), and Martin's motion
for a default judgment (Paper 8).

In their motions to dismiss, both sets of
defendants contend that Martin has violated the
Prison Litigation Reform Act's ("PLRA") "three
strikes" rule by filing multiple frivolous actions.
This violation, they argue, bars Martin from
proceeding *in forma pauperis*. For reasons set forth
below, the Court agrees. Accordingly, I recommend
that the *in forma pauperis* order in this case be
vacated and the case be DISMISSED unless Martin
pays the filing fee in a timely manner.

Failure to pay the fee should result in
dismissal. If the fee is paid in accordance with the
Court's instructions, the Court will consider the
remaining arguments set forth by defendants Selby,
Smith, Roberts, Charboneau and Wallis (Paper 49).
Finally, I recommend that Martin's motion for
default judgment (Paper 8) be DENIED.

### Factual Background
Martin's 34–page complaint alleges a wide
range of misconduct occurring between 2002 and
2007, during which time he was in the custody of

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3471864 (D.Vt.)
**(Cite as: 2008 WL 3471864 (D.Vt.))**

the Vermont Department of Corrections. The complaint lists nine "issues," with over 30 individuals and several John Does named as defendants. On April 30, 2008, Martin and counsel for 17 defendants, all of whom were employed by the State of Vermont, filed a stipulation of dismissal. Some of the issued raised in the complaint pertained only to defendants who have now been dismissed. Allegations against the remaining defendants include complaints of cold temperatures in Martin's cell; retaliation for accessing the courts; "extortion of copies and postage"; and wrongful conviction due to the misconduct of various State Troopers.

**\*2** Specifically, Martin first alleges that between June 2002 and June 2003, temperatures in his cell ranged from over 100 degrees in the summer to below zero in the winter. From June 2002 to December 2002, his bedding consisted of a mattress on the floor of the cell. As a result of these conditions, Martin allegedly suffered heat flashes, migraines, colds, asthma and bug bites.

The only remaining defendant connected with these claims is R. Tasha Wallis. Martin asserts that Wallis was the Commissioner of the Vermont Department of Buildings and General Services at the time, and refers to her as the "owner" of the prison. The complaint alleges that Wallis "knew that the boiler was broken yet did nothing to insure that the building was heated, and knew there was no air conditioning in the building."

The next set of allegations pertain to Martin's time spent in a privately-operated prison in Beattyville, Kentucky. Vermont sends some of its prisoners out of state pursuant to its contract with Corrections Corporation of America ("CCA"), the owner of the Kentucky facility. The first such allegation is that Martin was placed in punitive segregation in retaliation for exercising his right to access the courts. The defendants in this claim are primarily employees of CCA.[FN1] Also named as a defendant is their attorney, Steven Collier, Esq. Collier is accused of conspiring with prison

employees to wrongfully accuse Martin of violating a prison rule. Martin's second claim is that prison employees charged him for copying and postage while he was indigent. He contends that such charges were in violation of prison rules, and that the defendants' conduct amounted to extortion.

> FN1. These defendants have not yet been served. Counsel for the defendants has informed the Court that, if the motion to dismiss on the "three strikes" issue is denied, he will return waivers accepting service on their behalf in their official capacities.

Martin's final claim is brought against defendants Selby, Smith, Roberts and Charboneau, each of whom are Vermont State Troopers. Martin claims that these defendants lied and withheld information in a concerted effort to see him convicted in state court. Although he argues that he will be able to prove his innocence on the criminal charge, he states that "[t]his is a civil action not a habeas corpus because I am alleging an injury to my reputation...."

Currently pending before the Court are two motions to dismiss. The first, filed by Attorney Collier *pro se,*[FN2] argues that Martin should not be allowed to proceed *in forma pauperis* under 28 U.S.C. § 1915 because at least three of his previous cases were dismissed as frivolous or for failure to state a claim. *See* 28 U.S.C. § 1915(g). The second is submitted by defendant Wallis and the four State Troopers. In addition to the "three strikes" argument, these defendants claim official capacity immunity under the Eleventh Amendment, lack of personal involvement on the part of defendant Wallis, and protection under *Heck v. Humphrey,* 512 U.S. 477 (1994) from any civil claim that would invalidate Martin's criminal conviction.

> FN2. The motion was also brought in the name of two other defendants, both of whom have since been dismissed.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Discussion*

I. *The PLRA's "Three Strikes" Rule*

**\*3** Under 28 U.S.C. § 1915, a court may allow an inmate to file suit without prepayment of fees so long as the inmate provides an affidavit demonstrating his inability to pay. 28 U.S.C. § 1915(a)(1). When Martin filed this action in March 2007, the Court granted his motion to proceed *in forma pauperis* and ordered the Marshals to effect service upon the defendants. The movants now argue that the Court should rescind its order because Martin has run afoul of the PLRA's "three strikes" rule, codified at 28 U.S.C. § 1915(g).

Section 1915(g) states:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

In enacting the PLRA, Congress's principal intent was to deter frivolous litigation by prisoners. *Tafari v. Hues,* 473 F.3d 440, 443 (2d Cir.2007). The PLRA's three-strikes provision furthers this goal by limiting courts' discretion to grant *in forma pauperis* status to prisoners with a record of frivolous litigation. *Id.; see Thompson v. D.E.A.,* 492 F.3d 428, 431 (D.C.Cir.2007).

Since Congress passed § 1915(g), courts have worked to define the terms therein. The Second Circuit has defined a "frivolous" claim as one that "lacks an arguable basis in law or fact." *Tafari,* 473 F.3d at 442 (quoting *Neitzke v. Williams,* 490 U.S. 319, 325 (1989)). With respect to a complaint that "fails to state a claim upon which relief may be granted," the Supreme Court has noted the similarity with the language in Fed.R.Civ.P. 12(b)(6), but has determined that dismissal under

Rule 12(b)(6) does not necessarily mean that the case "failed to state a claim" as the phrase was intended in § 1915(g). *Neitzke,* 490 U.S. at 326. "That frivolousness in the [ § 1915(g) ] context refers to a more limited set of claims than does Rule 12(b)(6) accords ... with the understanding articulated in other areas of law that not all unsuccessful claims are frivolous." *Id.* at 329 (citations omitted).

Martin has several cases that arguably qualify as strikes under § 1915(g). Proceeding in chronological order, the movants first offer the case of *Martin v. Gold,* File No. 1:03–CV–240. That case, much like this one, pertained to the conditions of Martin's confinement. The defendants moved for summary judgment, and Judge Murtha adopted my recommendation that the case be dismissed. Judge Murtha also certified that "any appeal taken *in forma pauperis* from this Order would not be taken in good faith because such an appeal would be frivolous." (Paper 78). Notwithstanding this certification, Martin appealed the judgment. The appeal was dismissed by the Second Circuit, which found that "the appeal lacks an arguable basis in fact or law." (Paper 83) (citing *Neitzke,* 490 U.S. at 325 and 28 U.S.C. § 1915(e)).

**\*4** When a district judge certifies that an appeal "would not be taken in good faith," courts have held that this constitutes a finding of frivolousness. *See, e.g., Chavis v. Curlee,* 2008 WL 508694, at \*2 (N.D.N.Y. Feb. 21, 2008) (certification by district judge that appeal would not be taken in good faith is a finding of frivolousness for purpose of § 1915(g)); *cf. S.E.C. v. Broadwell Securities, Inc.,* 1981 WL 1655, at \*1 (S.D.N.Y. July 8, 1981) ("An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith. 28 U.S.C. § 1915. Good faith, in this context, is an objective standard that measures whether the issues on appeal are frivolous."). However, courts have also held that a case decided at summary judgment generally does not qualify for a strike under § 1915. *See Angelle v. Gibson,* 253

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

F.3d 704, 704 (5th Cir.2001) ("Because the district court's dismissal for failure to state a claim acted as a grant of summary judgment, the district court's judgment does not count as a 'strike.' "); *Ramsey v. Goord,* 2007 WL 1199573, at *2 (W.D.N.Y. Apr. 19, 2007) ("a dismissal on summary judgment is generally not considered within the parameters of the three-strikes rule's requirement that the actions be dismissed as frivolous, malicious, or for failure to state a claim").

In *Martin v. Gold,* I issued a 27–page Report and Recommendation on the summary judgment motion, analyzing, among other things, the extent of personal involvement by certain defendants. In my view, that issue presented at least one close question of fact and law. *See, e.g., Martin v. Gold,* File No. 1:03–CV–240 (Paper 66 at 14) ("The question of notice to defendant Girrell presents a close issue."). Because the case appears to have required a developed record and close scrutiny of the legal issues, the Court should not find that it was frivolous as filed.

Martin's appeal, however, was deemed frivolous by the Second Circuit. I therefore recommend that, although the underlying case was not frivolous, the subsequent appeal be counted as a "strike" for purposes of § 1915(g). *See Chavis,* 2008 WL 508694, at *3 n. 5 (collecting cases for proposition that district court action and subsequent appeal can both qualify as strikes under § 1915(g)).

The defendants have offered several additional cases as potential frivolous filings. One such case is *Butts v. ConAgra Foods, Inc.,* File No. 2:06–CV–l, in which a group of inmates claim that they ate chicken containing intestines and excrement. Martin included himself as a *pro se* plaintiff in the complaint due to the fact that he witnessed his fellow inmates eating the chicken. The defendant moved to dismiss Martin as a party. The Court granted the motion, finding that Martin had failed to assert an injury and had no standing to bring a claim. *Butts,* File No. 2:06–CV–1 (Paper 51 at 3–5).

Martin's entry into the *Butts* case was clearly frivolous. In response to the defendant's motion to dismiss, Martin argued that he was helping Butts handle evidence and prepare legal filings. These arguments added nothing to the fact that he was merely a witness to the alleged events, and that he had no grounds upon which to join as a party in the lawsuit. *See, e.g., Rice v. Nat'l Security Council,* 244 F.Supp.2d 594, 597–987 (D.S.C.2001) (counting case as strike where inmates "failed to allege with particularity how the actions of the Defendants directly effected them"). The Court should therefore consider Martin's dismissal from the *Butts* case as a strike under § 1915(g).

**\*5** Martin engaged in similar frivolous conduct in a subsequent case, *Shaimas v. Catholic Diocese of Burlington,* File No. 1:07–CV–26. In *Shaimas,* plaintiff Christopher Shaimas alleged that he was sexually abused as a child. Martin included himself as a *pro se* plaintiff, claiming that since spending time with Shaimas in prison, he had lived through Shaimas's experience "vicariously." Martin also alleged that he had provided Shaimas with legal assistance, and had helped "Mr. Shaimas['] psychological and physical dilemma by listening."

The Court dismissed Martin from the case *sua sponte* under 28 U.S.C. § 1915(e)(2), which requires dismissal if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. As in *Butts,* the Court found that Martin had failed to allege an injury, had no standing to enter the case, and that his claims must therefore be dismissed. *Shaimas,* File No. 1:07–CV–26 (Paper 3 at 2–3). Given that the dismissal was conducted under § 1915(e)(2) based on frivolousness and/or failure to state a claim, and because Martin's entry into the case was plainly frivolous, the *Shaimas* case should count as a strike under § 1915(g) as well.

The final candidate is a case Martin filed in the Eastern District of Virginia entitled *Martin v. Elam,* File No. 1:03–CV–1223. (Paper 45–21). The court

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

dismissed the case at the outset for failure to exhaust administrative remedies. Martin moved for reconsideration. The court granted the motion for reconsideration, reopened the case, and dismissed it "as frivolous and malicious pursuant to 28 U.S.C.1915(b)." *Id.* at 2. The court further ordered that "this dismissal may affect plaintiff's ability to proceed in forma pauperis in future civil actions pursuant to 28 U.S.C.1915(g) ...." *Id.* Martin's second motion for reconsideration was denied. In light of the court's clear determination that Martin's repeated filings amounted to frivolous and malicious conduct, that case should count as a fourth strike under the PLRA.

The next question is whether Martin falls within the scope of the exception to the three-strikes rule. That exception permits an *in forma pauperis* filing, notwithstanding three previous strikes, if the plaintiff "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Martin's claims all arise out of his previous incarceration in Vermont and Kentucky. He has since been released from prison, and none of the allegations indicate that he is in any danger while outside prison walls. The "imminent danger" exception is, therefore, inapplicable.

The defendants argue that Martin's release from prison does not affect the PLRA three-strikes analysis. Specifically, they contend that because Martin was incarcerated when he filed his *in forma pauperis* application, his three strikes require rescission of the order waiving initial payment of the filing fee, regardless of his current status. The PLRA requires that a case counting as a strike must have been filed while the litigant was "incarcerated or detained in any facility." 28 U.S.C. § 1915(g). There can be no dispute that this case meets that definition. Consequently, the Court agrees that Martin's subsequent release from prison has no effect on the PLRA analysis.

**\*6** In sum, Martin's filings over the last several years have included multiple frivolous filings. Because he was incarcerated at the time the cases

were filed, the filings qualified as strikes under § 1915(g). The defendants' motions to dismiss for violation of the PLRA's three-strikes rule should, therefore, be GRANTED, and the Court should vacate its order allowing Martin to proceed *in forma pauperis.* I recommend that Martin be allowed 30 days in which to pay the filing fee, and if no such fee is paid, that this case be DISMISSED.

## II. *Motion for Default Judgment*

Also pending before the Court is Martin's motion for a default judgment, in which he argues that the defendants failed to file answers in a timely manner. (Paper 8). When Martin filed his motion, the Marshals Service had not yet sent waivers of service to the defendants. The docket shows that Martin filed his motion on January 8, 2008, and that waivers were sent on January 10, 2008. Accordingly, the motion for default judgment was premature and should be DENIED.

### Conclusion

For the reasons set forth above, I recommend that the defendants' motions to dismiss (Papers 45 and 49) be GRANTED to the extent that they seek dismissal based upon 28 U.S.C. § 1915(g). The *in forma pauperis* order in this case (Paper 2) should be vacated and the case should be DISMISSED unless Martin pays the filing fee within 30 days of the entry of a final order by the Court.

Failure to pay the fee in a timely manner should result in dismissal. If the fee is paid in accordance with the Court's instructions, the Court will consider the remaining arguments for dismissal set forth by defendants Selby, Smith, Roberts, Charboneau and Wallis (Paper 49). Finally, I recommend that Martin's motion for default judgment (Paper 8) be DENIED.

D.Vt.,2008.
Martin v. Wallis
Not Reported in F.Supp.2d, 2008 WL 3471864 (D.Vt.)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3471864 (D.Vt.)
**(Cite as: 2008 WL 3471864 (D.Vt.))**

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

W.D. New York.
Michael F. RAMSEY, Plaintiff,
v.
Glenn S. GOORD, Donald Selsky, Mr. Ryerson,
Thomas G. Eagen, John H. Nuttall, Michael McGinnis,
Paul Chapius, A. Bartlett, M. Sheahan, J. Irizarry, J.
Hale, J. Cieslak, Sgt. Litwilder, J. Ames, C.O. Clark,
C.O. Held, and P. Klatt, Defendants.
No. 05-CV-47A.

Aug. 13, 2005.
Michael F. Ramsey, Clinton Correctional Facility,
Dannemora, NY, pro se.

DECISION and ORDER

SKRETNY, J.

*INTRODUCTION*

**\*1** Plaintiff, an inmate formerly incarcerated at the
Elmira and Southport Correctional Facilities (hereinafter
"Elmira" and "Southport"), has brought this action
pursuant to 42 U.S.C. § 1983, and seeks permission to
proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.
Plaintiff's complaint sets forth five claims alleging
violations of his constitutional and statutory rights. The
first and second claims set forth in the complaint relate to
a July, 2002 administrative hearing that was conducted on
disciplinary charges brought against him during his
sojourn at Elmira, and principally allege a violation of
plaintiff's due process rights. Plaintiff's third and fourth
claims allege violations of his right to practice his
religious beliefs by correctional employees and
supervisory personnel at Southport between February,
2004 and January, 2005. Plaintiff's fifth claim asserts that
prison officials at Southport interfered with his First and
Fourteenth Amendment rights when they deprived him of
paper and other materials necessary to his prosecution of
legal actions that he had previously filed. Plaintiff seeks

declaratory and injunctive relief as well as compensatory
and punitive damages with respect to each claim.

Plaintiff's application to proceed *in forma pauperis* is
granted. For the reasons set forth below, several of
plaintiff's claims are now dismissed pursuant to 28 U.S.C.
§§ (e)(2)(B) and 1915(A), and service by the U.S. Marshal
is directed with respect to the remaining claims.

*DISCUSSION*

Section 1915(e)(2)(B) of 28 U.S.C. provides that the
Court shall dismiss a case in which *in forma pauperis*
status has been granted if the Court determines that the
action: (I) is frivolous or malicious; (ii) fails to state a
claim upon which relief may be granted; or (iii) seeks
monetary relief against a defendant who is immune from
such relief. In addition, 28 U.S.C. § 1915A(a) requires the
Court to conduct an initial screening of "a complaint in a
civil action in which a prisoner seeks redress from a
governmental entity or officer or employee of a
governmental entity," *id.,* regardless of whether or not the
inmate has sought *in forma pauperis* status under 28
U.S.C. § 1915.

In evaluating the complaint, the Court must accept as
true all factual allegations and must draw all inferences in
plaintiff's favor. *See King v. Simpson,* 189 F.3d 284, 287
(2d Cir.1999). Dismissal is not appropriate "unless it
appears beyond doubt that the plaintiff can prove no set of
facts in support of his claim which would entitle him to
relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99,
2 L.Ed.2d 80 (1957). "This rule applies with particular
force where the plaintiff alleges civil rights violations or
where the complaint is submitted *pro se." Chance v.
Armstrong,* 143 F.3d 698, 701 (2d Cir.1998). Based on its
evaluation of the amended complaint, the Court finds that
several of plaintiff's claims must be dismissed pursuant to
28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) because
they fail to state a claim upon which relief may be granted.

**\*2** Plaintiff brings this action pursuant to 42 U.S.C. §
1983. "To state a valid claim under 42 U.S.C. §§ 1983, the
plaintiff must allege that the challenged conduct (1) was
attributable to a person acting under color of state law, and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

(2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton,* 126 F.3d 400, 405 (2d. Cir.1997) (citing *Eagleston v. Guido,* 41 F.3d 865, 875-76 (2d Cir.1994)). In addition, a prerequisite for liability under § 1983 is "personal involvement" by the defendants in the alleged constitutional deprivation. *Spencer v. Doe,* 139 F.3d 107, 112 (2d Cir.1998).

*1. Claims Relating to July, 2002 Disciplinary Hearing (First and Second Claims)*

*(a) Due Process*

The first claim of plaintiff's complaint alleges that he was deprived of his procedural due process rights during a disciplinary hearing conducted before defendant Ryerson, a hearing officer at Elmira, which resulted on July 24, 2002 in the determination of guilt with respect to the charges brought against plaintiff, and the imposition of six moths punitive confinement with six months loss of good time and privileges. (Compl. pp. 4-5). Specifically, plaintiff claims that he was denied the following due process rights at the hearing: the right to call witnesses; the right to employee assistance; the right to hear and respond to the evidence against him; and the right to have the hearing electronically recorded. (Compl. p. 5). He asserts that defendants Selsky and Goord further violated his due process rights when they denied his appeal of Ryerson's determination.

Plaintiff's second claim also relates to the July, 2002 disciplinary hearing, and alleges that defendant Goord, Commissioner of the New York State Department of Correctional Services ("DOCS") ordered defendant Selsky, Director of the Special Housing Program for DOCS, to deny plaintiff's appeal of the July 24, 2002 disciplinary determination in retaliation for a complaint plaintiff had sent to Goord with respect to Goord's treatment of him. The complaint further alleges that following the denial of plaintiff's appeal of the July 24, 2002 determination by defendant Selsky, he sent a complaint to defendant Goord repeating the "blatant due process violations" that had allegedly been committed by defendant Ryerson during the disciplinary hearing, and alleging that Goord and Selsky's refusal to reverse

Ryerson's determination was done for the purpose of retaliating against him for the complaint he had filed against Goord. Following plaintiff's receipt of a letter from defendant Selsky informing him that no further action would be taken with respect to plaintiff's appeal of the disciplinary determination, plaintiff states that he filed an Article 78 petition in New York State Supreme Court challenging defendant Ryerson's determination. He alleges that after unnecessarily delaying the Article 78 proceeding for the purpose of prolonging plaintiff's stay in punitive confinement, defendant Ryerson administratively reversed defendant Ryerson's determination and then moved successfully to dismiss plaintiff's petition as moot. (Compl. pp. 3, 6-7).

**\*3** It is well settled that when a litigant makes a constitutional challenge to a determination which affects the overall length of his imprisonment, the "sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Moreover, an inmate cannot use § 1983 to recover damages where "establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction," *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and a § 1983 cannot lie "unless ... the conviction or sentence has already been invalidated" on direct appeal or by a habeas corpus petition. *Id.* at 487. The Supreme Court further held in *Edwards v. Balisok,* 520 U.S. 641, 646, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), that habeas was the sole mechanism for an inmate's constitutional challenge to a prison disciplinary hearing which led to a revocation of the inmate's accrued good-time credits because the "principal procedural defect complained of," namely deceit and bias on the part of the disciplinary hearing officer, "would, if established, necessarily imply the invalidity of the deprivation [the inmate's] good-time credits."

While the determination that forms the gravamen of plaintiff's complaint in the instant matter did affect the overall length of his imprisonment to the extent that it imposed a loss of six months good time, his complaint is not barred under *Preiser* and *Heck* because plaintiff demonstrates that it was administratively reversed following his commencement of an Article 78 proceeding

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

in New York State Supreme Court.[FN1] *See, e.g., Odom v. Pataki,* 00 Civ. 3727, 2001 U.S. Dist. LEXIS 2790, at *7-8 (S.D.N.Y.2001) ("[A]n inmate may not assert a damages claim under § 1983 that attacks the fact or length of the inmate's confinement without first showing that the conviction has been reversed or otherwise invalidated.").

> FN1. Plaintiff attaches to his complaint documentation from the New York State Department of Correctional Services and the New York State Attorney General's Office which supports his claim that the July 24, 2002 disciplinary hearing determination was reversed, with all references to that determination expunged from plaintiff's record.

In determining whether plaintiff's first and second claims can go forward, the Court must also examine whether plaintiff has alleged the deprivation of a liberty interest that is entitled to constitutional protection. The administrative reversal of the July 24, 2002 disciplinary determination, and the expungement of that information from plaintiff record, does not render plaintiff's due process claim non-justiciable, for plaintiff alleges that he served 121 days in "punitive confinement" prior to such reversal, during which he was handcuffed, chained and shackled whenever permitted to leave his cell.[FN2] (Compl. p. 5).

> FN2. The Court's determination that plaintiff served 121 days in punitive confinement is based upon the plaintiff's allegation that he was sentenced to six months of such confinement on July 24, 2002, and that his sentence was administratively reversed on November 22, 2002, pursuant to a Memorandum issued on the latter date by the Director of Special Housing/Inmate Discipline of the New York State DOCS, a copy of which is attached to the complaint.

In *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court ruled that the Constitution did not require that restrictive confinement within a prison be preceded by procedural due process protections unless the confinement subjected the prisoner to "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300.[FN3] "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence impose by a court of law," 515 U.S. at 485, 115 S.Ct. at 2301, and it is only where the prisoner's conditions of disciplinary confinement become an atypical and significant hardship based on a liberty interest created by state law that federal due process standards must be met. *See Miller v. Selsky,* 111 F.3d 7, 9 (2d Cir.1997) (holding that, while *Sandin* did not create a per se rule that disciplinary confinement may never implicate a liberty interest, where a prisoner fails to show the conditions to which he was subjected were "atypical and significant," summary judgment may nevertheless be granted).

> FN3. *Sandin* compared inmates in the SHU for disciplinary purposes to inmates in both the general inmate population and those in administrative segregation and protective custody. 515 U.S. at 485-86, 115 S.Ct. at 2301. Based on that comparison, the Court held that the plaintiff's 30-day SHU punishment did not "work a major disruption in his environment," *id.* at 486, 115 S.Ct. at 2301, and was "within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id.* at 487, 115 S.Ct. at 2302.

**\*4** Thus, in order to allege a cognizable due process claim, a § 1983 plaintiff must show that the "conditions of his [disciplinary] confinement ... were dramatically different from the basic conditions of [his] indeterminate sentence." *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996). In determining whether a prisoner has a liberty interest in remaining free from segregated confinement, district courts must make factual findings with respect to the alleged conditions of the confinement and the issue of its atypicality. *See, e.g., Welch v. Bartlett,* 196 F.3d 389, 393-95 (2d Cir.1997); *Wright v. Coughlin,* 132 F.3d 133, 137 (2d Cir.1998); *Brooks v. DiFasi,* 112 F.3d 46, 49 (2d Cir.1997); *Miller,* 111 F.3d at 8-9; *Sealey v. Giltner,* 116 F.3d 47, 52 (2d Cir.1997). Several factors should be considered when assessing whether the particular restrictions imposed on the prisoner are atypical and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

significant, including: (1) the effect of the segregation on the length of the plaintiff's prison confinement; (2) the extent to which the conditions at issue differ from other routine prison conditions; and (3) the duration of the prisoner's disciplinary confinement compared to the potential duration a prisoner may experience while in discretionary confinement. *Wright,* 132 F.3d at 136.

In terms of the period of the number of days of punitive or other special confinement that will be regarded as sufficient implicate a prisoner's liberty interest, our Court of Appeals has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004). Instead, the Court of Appeals have established guidelines to be used by district courts in determining whether a prisoner's liberty interest has been infringed. *Id.* Pursuant to these guidelines, the Court has ruled that where a prisoner has been confined for what it has termed an "intermediate duration," defined as between 101 and 305 days, the district court is required to develop a " 'detailed record' of the conditions of confinement relative to ordinary prison conditions." *Id.* at 65 (quoting *Colon v. Howard,* 215 F.3d 227, 232 (2d Cir.2000)). The Court in *Palmer* further instructed that in a case involving an intermediate term of confinement, the district court must examine the "actual circumstances" of SHU confinement "without relying on its familiarity with SHU conditions in previous cases." *Id.* (citing *Kalwasinski v. Morse,* 201 F.3d 103, 106 (2d Cir.1999)).

In the instant case, plaintiff alleges that he was maintained in keeplock for 121 days, during which time he further alleges that he was subject to restraint by handcuffs, chains and shackles whenever he was allowed to leave his cell. It is not possible, based upon the allegations set forth in the complaint, for the Court to determine whether the conditions under which plaintiff was maintained were atypical within the meaning of *Sandin.* In light of the Second Circuit's directive that the district court must develop a detailed record concerning the nature of confinement conditions "where special confinement exceeds 101 days or there is any other indication of atypicality," *Harris v. McGinnis,* No. 02 Civ. 6481, 2004 U.S. Dist. Lexis 19500, at *14 (S.D.N.Y.2004), the Court concludes that the complaint

sufficiently alleges that plaintiff was deprived of a liberty interest.

**\*5** To state a due process claim, plaintiff must also allege that the defendants "deprived him of [a liberty] interest as a result of insufficient process." *Ortiz v. McBride,* 380 F.3d 649, 654. Under the Fourteenth Amendment, the procedural protections required when the length or conditions of confinement implicate due process protections: "advance notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna v. Pico,* 356 F.3d 481, 487 (2d Cir.2004) (citing *Kalwasinski v. Morse,* 201 F.3d 103, 108 (2d Cir.1999)). In light of the plaintiff's allegations, noted above, concerning how his due process rights were infringed at the July 24, 2002 hearing, and given the Court's duty to construe liberally the pleadings of *pro se* plaintiffs, the Court determines that the plaintiff's first and second claims sufficiently allege that his liberty interest was deprived as a result of insufficient process.[FN4]

> FN4. The Court notes that while plaintiff does specify in his complaint the precise nature of the alleged deprivation of due process that occurred at the July 24, 2002 hearing, the complaint is pretty thin in terms of allegations of specific facts showing precisely how plaintiff's due process rights were interfered with. The Court's decision to allow plaintiff's due process claims to proceed despite the sparseness of his factual allegations stems from the fact that the administrative reversal of the hearing determination is stated to have been based upon error by the hearing officer. (DOCS Memorandum 11/22/02 attached to complaint).

There remains, however, the question of whether plaintiff has alleged sufficient involvement by defendants Ryerson, Goord and Selsky in the claimed deprivation of his due process rights. A prerequisite for liability under a § 1983 claim is "personal involvement" by the defendants in the alleged constitutional deprivation. *Spencer v. Doe,* 139 F.3d 107, 112 (2d Cir.1998). Under this requirement, there may be liability if:

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

(1) the defendant participated directly in the alleged constitutional violation; or (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which the unconstitutional practices occurred or allowed the continuance of such policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). A claim which fails to demonstrate a defendant's personal involvement in the alleged constitutional deprivation is subject to *sua sponte* dismissal. *Montero v. Travis,* 171 F.3d 757, 761-62 (2d. Cir.1999) (citing *Sealy v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997)); *see Neitzke v. Williams,* 490 U.S. 319, 323 n. 2, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff's due process claim against defendant Ryerson stems from Ryerson's role as the hearing officer at the hearing which concluded on July 22, 2002, and the Court finds that Ryerson's alleged role in presiding over the hearing is sufficient to allege personal involvement. Accordingly, plaintiff's first claim, alleging deprivation of due process, will be allowed to go forward against defendant Ryerson.

The Court's determination is different, however, with respect to plaintiff's due process claims against defendants Selsky and Goord. Plaintiff alleges in his first claim that he appealed Ryerson's disciplinary determination to Goord, and that defendant Selsky responded on Goord's behalf, advising him that his appeal was denied. In his second claim he further alleges that he sent two letters to defendant Goord complaining about the treatment to which he had been subjected at the disciplinary hearing. Once again responding on behalf of Commissioner Goord, defendant Selsky advised plaintiff that no further action would be taken by Selsky or Goord with respect to plaintiff's complaint about his treatment at the hearing. (Compl. pp. 6-7). Plaintiff's allegations are not sufficient to allege personal involvement by defendants Selsky and

Goord with respect to plaintiff's due process claims.[FN5]

> **FN5.** While plaintiff alleges that defendant Goord ordered defendant Selsky to deny plaintiff's appeal as a means of punishing and retaliating against plaintiff for having complained to Goord, plaintiff alleges no facts that would support this allegation and it is not self-evident how plaintiff would have been in a position to know that Goord "ordered" Selsky to punish and retaliate against plaintiff. Plaintiff similarly alleges no facts to support his claim that Goord requested "lengthy delays and unnecessary extensions" in responding to plaintiff's Article 78 complaint.

**\*6** It is well-established that "mere linkage in the prison chain of command" is not sufficient to support a claim of personal involvement. *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1995); *see also Colon v. Coughlin,* 58 F.3d 865, 874 (2d Cir.1995) ("The bare fact that [the defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [plaintiff's] claim."). Moreover, the fact that Commissioner Goord and SHU Director Selsky, as officials in the DOCS "chain of command," affirmed defendant Ryerson's determination on appeal is not enough to establish personal involvement of their part. *Page v. Breslin,* 02-CV-6030, 2004 U.S. Dist. LEXIS 25056, at \*21-22 (E.D.N.Y.2004); *Foreman v. Goord,* 02 Civ. 7089, 2004 U.S. Dist. LEXIS, at \*21-22 (S.D.N.Y.2004). In addition, the fact that defendant Goord apparently referred plaintiff's appeal and letter-complaints to defendant Selsky for resolution is not enough to establish personal involvement on the part of Goord. *See Lunney v. Brureton,* 04 Civ. 2438, 2005 U.S. Dist. LEXIS 770, at \*45-46 (S.D.N.Y.2005) (citing *Sealy v. Giltner,* 116 F.3d 47, 51 (2d cir.1997)") ("[S]ubmitting an appeal or complaint to a subordinate for disposition is not sufficient to find personal involvement."). The Court therefore determines that plaintiff's due process claims against defendants Selsky and Goord must be dismissed.

*(b) Malicious Prosecution, First Amendment, Equal Protection*

In addition to his due process arguments, plaintiff's

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

first and second claims set forth additional bases for his challenges to the disciplinary proceeding concluded on July 24, 2002. He alleges that he was the victim of malicious prosecution, and that defendants Selsky and Goord's initial refusal to reverse the disciplinary determination stemmed from their decision to retaliate against plaintiff for complaining about their treatment of him, thereby violating his First Amendment rights. Plaintiff also invokes the equal protection clause.

Plaintiff fails to specifically indicate which actions of the defendants are alleged to constitute "malicious prosecution." However, based upon the factual recitals set forth in his statement of his first and second claims, it would appear that plaintiff is contending that the refusal of defendants Selsky and Goord to reverse defendant Ryerson's determination on appeal until after plaintiff had commenced an Article 78 proceeding with respect to that determination constituted "malicious prosecution."

"To prevail on a malicious prosecution claim under either New York law or § 1983, a plaintiff must show that the defendant maliciously commenced or continued against the plaintiff a criminal proceeding that ended in the plaintiff's favor, and that there was no probable cause for the proceeding." *Marshall v. Sullivan,* 105 F.3d 47, 50 (2d Cir.1996) (citing *Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir.1991)). Further, only those claims of malicious prosecution that implicate Fourth Amendment rights can be appropriate bases for malicious prosecution claims brought under § 1983. *Washington v. County of Rockland,* 373 F.3d 310, 316 (2d Cir.2004) (citing *Albright v. Oliver,* 510 U.S. 266, 274-75, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). A claim for malicious prosecution under § 1983 may not be premised on an administrative disciplinary proceeding, at least in the absence of a claim of a violation of Fourth Amendment rights. *Id.* at 315.

**\*7** The disciplinary proceeding challenged by plaintiff in the instant matter was not a criminal prosecution, *see Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution ...."), and plaintiff alleges no violation of Fourth Amendment rights. Accordingly, to the extent the first and second claims in the complaint are based upon the defendants' alleged

malicious prosecution of him, they must be dismissed.

Plaintiff's invocation of his First Amendment rights to free speech and to petition the government as another basis for his second claim is understood to relate to his allegation that defendant Selsky denied plaintiff's appeal from the July 24, 2002 disciplinary determination in retaliation for his sending a letter to defendant Goord criticizing certain statements Goord had made in a DOCS newsletter. (Compl.P. 6).

It is well established that prison officials may not retaliate against inmates for exercising their constitutional rights. *See, e.g., Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995); *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988). To state a retaliation claim under § 1983, "a plaintiff must show that: (1) his actions were protected by the Constitution or federal law; and (2) the defendant's conduct complained of was in response to that protected activity." *Friedl v. City of New York,* 210 F.3d 79, 85 (2d Cir.2000) (internal quotation and citation omitted). As to the second prong, a prisoner alleging retaliation must show that the protected conduct was "a substantial or motivating factor" behind the alleged retaliatory conduct. *See Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). Evidence that can lead to an inference of improper motive includes: (1) the temporal proximity of the filing of a grievance and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining plaintiff. *See Colon,* 58 F.3d at 872-73.

Because claims of retaliation are easily fabricated, the courts must "examine prisoners' claims of retaliation with skepticism and particular care," *Colon,* 58 F.3d at 872, requiring " 'detailed fact pleading ... to withstand a motion to dismiss." ' *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) (quoting *Angola v. Civiletti,* 666 F.2d 1, 4 (2d Cir.1981)). To survive a motion to dismiss, such claims must be " 'supported by specific and detailed factual allegations," ' and should not be stated " 'in wholly conclusory terms." ' *Friedl,* 210 F.3d at 85-86 (quoting *Flaherty,* 713 F.2d at 13); *see also Graham,* 89 F.3d at 79 (wholly conclusory claims of retaliation "can be dismissed on the pleadings alone"); *Gill v. Mooney,* 824 F.2d 192,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

194 (2d Cir.1987) (same).

Moreover, only those retaliatory acts that are likely to "chill a person of ordinary firmness from continuing to engage" in activity protected by the First Amendment are actionable under § 1983; in other words, allegations of *de minimis* acts of retaliation do not state a claim under § 1983. *Thaddeus-X v. Blatter,* 175 F.3d 378, 397 (6th Cir.1999) (cited with approval in *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001)). See *Davidson v. Chestnut,* 193 F.3d 144, 150 (2d Cir.1999) (on remand, district court must consider the "serious question" of "whether the alleged acts of retaliation ... were more than *de minimis*" in deciding summary judgment motion). A *de minimis* retaliatory act is outside the ambit of constitutional protection. *Dawes,* 239 F.3d at 492.

**\*8** There is nothing in plaintiff's complaint to support his claim that his appeal from July 24, 2002 was denied in retaliation for his having sent a complaint to defendant Goord beyond: (1) the temporal proximity between his filing of his complaint and the denial of his appeal and (2) his recital of an accusation of retaliation that he leveled against Goord and Selsky in a second letter that he sent to Goord following the denial of his appeal. Plaintiff fails, however, to point to anything said or otherwise communicated to him by Goord or Selsky or by any other prison official or employee that supports his claim that defendants' denial of his appeal was intended to retaliate against him for exercising his First Amendment rights. The Court therefore finds that plaintiff's claim of retaliation is wholly conclusory and therefore that his First Amendment claims (free speech, right to petition) should be dismissed. Further, the Court finds nothing in plaintiff's statement of his first and second claims that would support his allegation that defendants Goord and Selsky violated his equal protection rights, and those claims must likewise be dismissed.

*2. Claims Alleging Deprivation of Religious Freedom (Third and Fourth Claims)*

Plaintiff's third and fourth claims principally allege that prison officials took actions that had the effect of depriving him of his right to freely exercise his religious beliefs.

Plaintiff's third claim alleges that Jewish inmates like himself were subjected at Southport to certain delays and restrictions on their right to be fed food prepared in accordance with the prescribed kosher rules. Specifically, he asserts that only Jewish inmates were forced to wait ten to twenty days after their arrival at Southport before being provided with a kosher diet, disciplined for giving away food they do not eat or want and denied meat alternatives for meat items on the kosher menu. (Compl. p. 8). Curiously, plaintiff's complaint does not identify the officials or employees at Southport who were responsible for such alleged discriminatory treatment of Jewish inmates. Instead, his third claim focuses on the alleged failure of supervisory personnel to take favorable action in response to the grievances and letters plaintiff submitted to them in which he complained about the facility's "discriminatory policies and practices." He alleges that in February, 2004 he filed a grievance complaining about religious discrimination, but that acting Superintendent Chappius and Superintendent McGinnis upheld the denial of the grievance, as did defendant Eagan, the director of the DOCS Inmate Grievance Program, to whom plaintiff subsequently appealed.FN6

> FN6. Plaintiff attaches to his complaint copies of the relevant decisions denying his grievances, which the Court has reviewed.

As previously noted in connection with the Court's assessment of plaintiff's disciplinary hearing claims, personal involvement of a defendant in an alleged Constitutional violation is a prerequisite for liability under § 1983. Here, plaintiff does not allege that defendants Goord, Eagan, McGinnis and Chappius were personally involved in the alleged deprivations of plaintiff's free exercise rights. Instead, plaintiff seeks to sue them because of their refusal to reverse the denial of his grievance. As previously noted, the fact that a prison official in the prison "chain of command" affirms the denial of an inmate's grievance is not enough to establish the requisite personal involvement of that official. *Page v. Breslin,* 02-CV-6030, 2004 U.S. Dist. LEXIS 25056, at \*21-22 (E.D.N.Y.2004); *Foreman v. Goord,* 02 Civ. 7089, 2004 U.S. Dist. LEXIS, at \*21-22 (S.D.N.Y.2004); *Joyner v. Greiner,* 195 F.Supp.2d 500, 506 (S.D.N.Y.2002); *Villante v. N.Y. State Dep't of Corr. Servs.,* 96-CV-1484,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

2001 U.S. Dist. LEXIS 25208, at *17 (N.D.N.Y.2001). This point was well-stated in *Joyner v. Greiner,* in which the Court dismissed a former inmate's Eighth Amendment claim against the Superintendent of the Sing Sing Correctional Facility which was premised upon the Superintendent's denial of a grievance the inmate had filed with respect to the medical treatment he had received:

**\*9** The fact that Superintendent Greiner affirmed the denial of plaintiff's grievance-which is all that is alleged against him-is insufficient to establish personal involvement or to shed any light on the critical issue of supervisory liability, and more particularly, knowledge on the part of the defendant.

195 F.Supp.2d at 506 (internal quotation marks and citation omitted).

This principle applies to superintendents, commissioners, and other prison officials who are in the chain of command with respect to the grievance review process. *See, e.g., Breslin,* 2004 U.S. Dist. LEXIS at *21-22 (dismissing claim against superintendent based upon "mere affirmation of grievance denial"); *Foreman,* 2004 U.S. Dist. LEXIS at *21-22 (dismissing claims against Commissioner and prison superintendent).

Accordingly, the Court determines that plaintiff's claims against defendants Goord, Eagen, McGinnis, and Chappius alleging violations of his freedom of religion, due process and equal protection rights, as set forth in the "third claim" of his complaint, must be dismissed in their entirety for failure to allege the requisite personal involvement by the defendants.

Plaintiff's fourth claim also relates to the alleged deprivation by prison officials of kosher food, but other things are added to a create convoluted assortment of allegations. Specifically, plaintiff asserts that his rights to free speech and to petition were interfered with, and that he was subjected to malicious prosecution and discrimination.

Plaintiff's fourth claim alleges that in retaliation for having provided a statement supporting a fellow Jewish inmate who had been involved in a dispute with defendant

C.O. Clark, Clark advised plaintiff that he was being removed from the kosher meal program. Plaintiff asserts that this retaliatory denial of kosher food, which began on July 29, 2004, continued for about a month thereafter, ending (on September 4, 2004) after plaintiff had filed grievances with respect to the defendants' actions in connection with plaintiff's exclusion from kosher meals, and related retaliatory actions allegedly undertaken by several of the defendants.[FN7] Plaintiff claims that defendant Held initially ordered him removed from the kosher meal program, and that defendant Irizarry subsequently sent plaintiff a letter advising him that he was being removed from the kosher meal "for allegedly violating a facility rule."

FN7. Several of the memoranda and grievance decisions by DOCS officials attached to the complaint indicate that plaintiff had been removed from the "Cold Alternative Meal Program" as a result of "program violations" by the plaintiff (specifically, that plaintiff was giving away or trading his food) and not in retaliation for something plaintiff had done.

Plaintiff then chronicles his attempts to appeal defendant Irizarry's determination, initially to defendant McGinnis. He alleges that McGinnis was advised by the facility Rabbi that Irizarry's actions violated plaintiff's religious dietary laws, and that he should immediately be returned to the kosher meal program, but McGinnis disregarded the Rabbi's advice and upheld Irizarry's determination. Thereafter plaintiff appealed McGinnis's affirmation of Irizarry's decision to defendant Goord. However, following the resumption of plaintiff's kosher meals on September 4, 2004, defendant DOCS deputy Commissioner Nuttal, responding on behalf of Goord, informed plaintiff that the issue was "closed," and that no actions would be taken in response to the issues raised in plaintiff's complaints and appeals. Two additional grievances subsequently filed by plaintiff were, he claims, likewise ignored.

**\*10** The Court finds that plaintiff's allegations are sufficient to allow his fourth claim asserting violations of his free exercise, right to petition, due process, and equal protection rights to proceed against defendants Klatt,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

Clark, Held, Irizarry, McGinnis, and Sheahan.[FN8]

> FN8. While the allegations in plaintiff's fourth claim against defendants McGinnis and Sheahan would appear to be essentially based upon their denial of plaintiff's appeal of defendant Irizarry's decision to remove plaintiff from the kosher food program, and might therefore be dismissed for failure to allege those defendant's personal involvement in the violation of plaintiff's constitutional rights (see discussion set forth in the Court's dismissal of plaintiff's third claim *supra* ), the Court finds that plaintiff's allegation that the facility Rabbi spoke to defendant McGinnis, but McGinnis disregarded his advice sufficiently alleges personal involvement against defendant McGinnis (and by extension, defendant Sheahan, who plaintiff alleges acted in concert with McGinnis) to allow plaintiff's fourth claim against McGinnis and Sheahan to go forward.

The Court further finds, however, that plaintiff's fourth claim must be dismissed with respect to defendants Goord, Nuttal, Cieslak and Eagan. Plaintiff's allegations against these defendants with respect to his fourth claim are based upon the fact that they refused to reverse the denial of several grievances filed by plaintiff with respect to his claims of religious discrimination and denial of due process. As explained by the Court in addressing plaintiff's third claim, *supra,* the mere fact that a prison official in the prison "chain of command" has occasion to pass upon a prisoner's grievance is not sufficient to establish personal involvement in an alleged denial of a plaintiff's constitutional rights. *See, e.g., Joyner v. Greiner,* 195 F.Supp. at 506. Similarly, the fact that plaintiff also sent letters to defendant Goord "pleading for him to take corrective actions," but that Commissioner Goord and Deputy Commissioner Nuttall took no corrective action in response to his missives is not sufficient to hold Goord or Nuttal liable under § 1983. *See Sealey,* 116 F.3d at 51.

Plaintiff also asserts in his fourth claim that he was the victim of malicious prosecution and failure to protect, but the complaint does not allege the predicate facts necessary to support these allegations, and they are accordingly dismissed against all defendants.

*3. Claim of Denial of Access to Court and Right to Petition (Fifth Claim)*

Plaintiff's fifth claim asserts that his rights to petition for redress of grievances and for access to the Courts were interfered with when defendants Ames and Litwilder, in February/March 2004, confiscated all of his writing paper and carbon paper, denied him law library materials, would not allow him to use a stapler, and refused to allow him to have his briefs and affidavits in a state court case to be bound in accordance with the rules of the New York State Supreme Court, Second Judicial Department, causing his papers to be rejected. Plaintiff filed grievances with respect to these alleged interferences with his rights, but his grievances were denied or ignored by defendants Bartlett, Hale, and Cieslak, as were his ensuing appeals to defendants McGinnis, Chapius and Eagan.

Plaintiff's allegations that the denial of his access to materials necessary to prepare or perfect his grievances and lawsuits materially prejudiced his ability to pursue such grievances and legal actions are sufficient to state a claim that his right of access to the courts was unconstitutionally hindered. *Ramsey v. Coughlin,* No. 94-CV-9S( F), 1 F.Supp.2d 198, 204-205 (W.D.N.Y.1998) (Magistrate's Report and Recommendation). Plaintiff's fifth claim will therefore be allowed to proceed against defendants Ames and Litwilder.

**\*11** However, plaintiff's fifth claim must be dismissed with respect to defendants Bartlett, Hale, Cieslak, McGinnis, Chapius and Eagan. With respect to these defendants, plaintiff's allegations fail to allege the requisite personal involvement. As previously noted, the fact that defendants failed to respond to plaintiff's letters or, as links in the prison system "chain of command," affirmed the denial or dismissal of plaintiff's grievances, is not sufficient to establish their liability under Section 1983. *See, e.g., Page v. Breslin,* 2004 U.S. Dist. LEXIS at *21-22; Foreman v. Goord,* 2004 U.S. Dist. LEXIS, at 19-22; *Joyner v. Greiner,* 195 F.Supp.2d at 15.

*CONCLUSION*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

In accordance with the foregoing, the Court determines that:

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to the filing fee. Accordingly, plaintiff's request to proceed *in forma pauperis* is granted.

All claims against defendants Goord, Selsky, Eagan, Chappius, Nuttal, Cieslak, Bartlett, and Hale are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A.

Plaintiff's malicious prosecution claim as set forth in the "first claim" of his complaint is dismissed as to all defendants enumerated therein.

Plaintiff's free exercise of religion, due process, equal protection/discrimination claims set forth in the "third claim" of his complaint are dismissed as to all defendants enumerated therein.

Plaintiff's malicious prosecution and failure to protect claims set forth in the "fourth claim" of his complaint are dismissed as to all defendants enumerated therein.

Plaintiff's due process claim set forth in the "first claim" of his complaint survives as to defendant Ryerson.

Plaintiff's free exercise of religion, right to petition, due process, and equal protection claims set forth in the "fourth claim" of his complaint survive as to defendants Klatt, Clark, Held, Irizarry, McGinnis and Sheahan.

Plaintiff's access to court, right to petition, and due process claims set forth in the "fifth claim" of his complaint survive as to defendants Ames and Litwilder.

The U.S. Marshal is directed to serve the summons, complaint and this Order on defendants Ryerson, Klatt, Clark, Held, Irizarry, McGinnis, Sheahan, Ames and Litwilder regarding the claims against those defendants which survive, as enumerated above.

## ORDER

IT HEREBY IS ORDERED that plaintiff's claims against defendants Selsky, Goord, Eagan, Chappius, Nuttal, Cieslak, Bartlett and Hale are dismissed with prejudice;

FURTHER, that the Clerk of the Court is directed to terminate as parties to this action defendants Selsky, Goord, Eagan, Chappius, Nuttal, Cieslak, Bartlett and Hale;

FURTHER, that the Clerk of the Court is directed to file plaintiff's papers, and to cause the United States Marshal to serve copies of the summons, complaint and this Order upon defendants Ryerson, Klatt, Clark, Held, Irizarry, McGinnis, Sheahan, Ames and Litwilder without plaintiff's payment therefore, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor;

**\*12** FURTHER, that pursuant to 42 U.S.C. § 1997e(g)(2), the defendants are directed to answer the complaint.

SO ORDERED.

W.D.N.Y.,2005.

Ramsey v. Goord
Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.