IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

ARRELLO BARNES,

        Plaintiff,

    v.

ANTHONY ANNUCCI, *et al.*,

        Defendants.

Civil Action No.
9:15-CV-0777 (GLS/DEP)

_____

APPEARANCES:

FOR PLAINTIFF:

ARRELLO BARNES, *Pro Se*
00-A-0597
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, NY 12589

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN
New York State Attorney General
The Capitol
Albany, NY 12224


DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

OF COUNSEL:


COLLEEN D. GALLIGAN, ESQ.
Assistant Attorney General

## REPORT AND RECOMMENDATION

This is an action brought by *pro se* plaintiff Arrello Barnes, a New York State prison inmate, against several individuals pursuant to 42 U.S.C. § 1983 alleging that they have deprived him of his civil rights. Although the scope of plaintiff's claims has since been narrowed by the court, generally, as originally pleaded, plaintiff's complaint alleged that twenty employees of the New York State Department of Corrections and Community Supervision ("DOCCS") violated his rights under the First, Eighth, and Fourteenth Amendments through a series of actions related to disciplinary proceedings brought against Barnes while he was incarcerated at four separate correctional facilities operated by the DOCCS. As a result of an earlier court decision and plaintiff's filing of an amended complaint, remaining for consideration are plaintiff's claims arising under the First and Fourteenth Amendments against fourteen defendants.

Currently pending before the court is a motion brought by the defendants seeking dismissal of plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, I recommend that defendants' motion be granted in part but otherwise denied.

I.    <u>BACKGROUND</u>[1]

Plaintiff is a New York State prison inmate currently being held in the custody of the DOCCS. *See generally* Dkt. No. 18. Although he is now incarcerated in the Shawangunk Correctional Facility, the events giving rise to this action occurred between 2011 and 2015 in the Sullivan Correctional Facility ("Sullivan"), Attica Correctional Facility ("Attica"), Clinton Correctional Facility ("Clinton"), and Great Meadow Correctional Facility ("Great Meadow"). *Id.*

In or about August 2011, defendant Maxwell, a corrections officer stationed at Sullivan, interviewed plaintiff in connection with an investigation regarding the assault of another inmate, George Mims. Dkt. No. 18 at 4. Defendant Maxwell asked plaintiff to "tell [him] it [was] a gang hit and who paid [plaintiff to conduct the assault]." *Id.* Plaintiff alleges that, when he told defendant Maxwell he had no knowledge of the assault, defendant Maxwell issued him a false misbehavior report, accusing him of

---

[1]    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's amended complaint, the currently operative pleading, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964).

violating prison rule 105.13 prohibiting gang activity.[2] *Id.*

A disciplinary hearing was subsequently conducted at Attica in or about September 2012, by defendant Coveny, a corrections captain, to address the charge set forth in the misbehavior report issued to plaintiff by defendant Maxwell. Dkt. No. 18 at 4-5. During the hearing, defendant Coveny denied plaintiff's request to call three specific witnesses. *Id.* On September 6, 2012, based on the testimony received from two corrections officers during the hearing, defendant Coveny found plaintiff guilty as charged and sentenced plaintiff to two years of disciplinary special housing unit ("SHU") confinement, coupled with the loss of certain privileges. *Id.* at 5.

In or about January 2013, while plaintiff was still confined in Attica, a letter he had written to a female friend was returned to him at the correctional facility. Dkt. No. 18 at 5. Based on the contents of the letter,

---

[2]       Rule 105.13 provides as follows:

> An inmate shall not engage in or encourage others to engage in gang activities or meetings, or display, wear, possess, distribute or use gang insignia or materials, including, but not limited to, printed or handwritten gang or gang related material.

New York DOCCS, Unauthorized Organizational Activities, Gang Activities & Media Review, http://www.doccs.ny.gov/RulesRegs/20080528_Unauthorized.html (last visited June 29, 2017).

defendant Ollies, a corrections sergeant, issued plaintiff a misbehavior report accusing him of violating rule 105.13. *Id.* According to plaintiff, the letter did not include any information regarding criminal activity or information that could have been deemed "detrimental to the facility." *Id.*

Defendant J. Whitford, who is identified in plaintiff's amended complaint as a "senior corr. counselor [sic]," presided over the disciplinary hearing held to address the misbehavior report authored by defendant Ollies in January 2013. Dkt. No. 18 at 2, 5. Plaintiff alleges that defendant Whitford was biased against Barnes during the hearing and, on January 31, 2013, found him guilty of violating rule 105.13. *Id.* at 5. Based upon that finding, plaintiff was sentenced to an additional year of SHU confinement and a loss of privileges. *Id.*

On January 29, 2014, a corrections officer at Attica confiscated three of plaintiff's letters from his cell and gave them to defendant Ollies. Dkt. No. 18 at 6. Upon reviewing the letters, defendant Ollies concluded that they were gang material and issued plaintiff another misbehavior report accusing him of again violating rule 105.13. *Id.* Defendant Borowski, a corrections lieutenant, presided over the disciplinary hearing held in connection with that misbehavior report. *Id.* Defendant Ollies testified during the hearing that the letters contained statements that he construed

to be gang activity. *Id.* Although plaintiff denies that the letters evinced his involvement in any gang activity, on February 10, 2014, defendant Borowski found plaintiff guilty of again violating rule 105.13 and was immediately escorted to the SHU. *Id.*

On January 29, 2015, while plaintiff was incarcerated at Clinton, defendant Mahuta, a corrections officer, searched plaintiff's cell and confiscated letters, address book, and a Bible from his cell. Dkt. No. 18 at 7. Although plaintiff contends that those items did not "impose[]" on the security of the prison, defendant Mahuta nevertheless issued plaintiff a misbehavior report accusing him of again violating rule 105.13.[3] *Id.* Defendant Mahuta also allegedly discarded three of plaintiff's "religious headwear" during the search.[4] *Id.* at 9.

Defendant Hanson, a corrections officer, issued plaintiff a second misbehavior report, also on January 29, 2015, accusing him of participating in gang activity based on a letter he found in plaintiff's cell during a search, Dkt. No. 18 at 7. According to defendant Hanson, the letter, authored by plaintiff, instructed other inmates to assault corrections

---

[3]    Plaintiff's amended complaint does not provide information regarding the disposition of the misbehavior report defendant Mahuta issued to plaintiff.

[4]    Plaintiff identifies as a "member of the Nation of Islam," and alleges that he "is required to keep his head covered all waking hours." *Id.* at 10.

staff. *Id.* In February 2015, defendant McKeighan conducted a disciplinary hearing involving the misbehavior report issued by defendant Hanson. *Id.* at 8. Plaintiff alleges that defendant McKeighan was not fair and impartial during the hearing and knowingly permitted defendant Hanson to provide false testimony. *Id.* Plaintiff further alleges that at the hearing, defendant Frazier, a corrections sergeant, provided fabricated testimony regarding the contents of plaintiff's letters. *Id.* at 8. Plaintiff alleges that none of the letters at issue implicated prison security. *Id.* On February 27, 2015, defendant McKeighan found plaintiff guilty of violating rule 105.13 and sentenced plaintiff to two years of SHU confinement and a loss of privileges. *Id.*

With respect to plaintiff's claims asserted against defendants Bell, Narkiewicz, and West, all of whom are identified in plaintiff's amended complaint as "correspondence employe[es]" at Great Meadow," plaintiff alleges that those individuals were somehow involved in withholding plaintiff's legal mail from him between February 10, 2015 and March 27, 2015. Dkt. No. 18 at 3, 9. He alleges that the interception of his incoming legal mail resulted in the dismissal of lawsuits and his failure to appeal an adverse decision. *Id.* at 9.

Plaintiff alleges that he filed appeals in connection with the

disciplinary hearing determinations to defendants Annucci, the DOCCS

Acting Commissioner, and Venetozzi, the DOCCS Director of Special

Housing. Dkt. No. 18 at 10. Plaintiff also allegedly sent defendant Annucci

other letters and complaints regarding the various constitutional violations

described above. *Id.* Neither defendant Annucci nor Venetozzi took any

action to remedy the violations. *Id.*

II.   PROCEDURAL HISTORY

Plaintiff commenced this action on or about June 25, 2015, by the

filing of a complaint accompanied by an application for leave to proceed *in

forma pauperis* ("IFP") and a motion for a preliminary injunction. Dkt. Nos.

1, 2, 4. Although plaintiff's original IFP application was denied by the court

as incomplete, his subsequent motion for leave to proceed without

prepayment of fees was granted. Dkt. Nos. 5, 6, 10.

On September 17, 2015, Senior District Judge Gary L. Sharpe

issued a decision and order, pursuant to 28 U.S.C. §§ 1915(e), 1915A,

*sua sponte* dismissing (1) all of plaintiff's claims for money damages

asserted against the defendants sued in their official capacities; (2) all of

plaintiff's claims asserted against defendants Miller, Eastman, Boyea,

Janora, Stickney, and Waters; and (3) all of plaintiff's Eighth Amendment

claims. *See generally* Dkt. No. 10. Judge Sharpe also determined,

however, that plaintiff's First and Fourteenth Amendment claims asserted against defendants Annucci, Bell, Borowski, Coveny, Frazier, Hanson, Mahuta, Maxwell, McKeighan, Narkiewicz, Ollies, West, Whitford, and Venetozzi should survive *sua sponte* review of the complaint and required a response from those defendants. *Id.* Plaintiff thereafter filed an amended complaint, Dkt. No. 18, reflecting the court's rulings contained in the initial order. The amended complaint, which is now the operative pleading in the case, was accepted by Judge Sharpe for filing.[5] Dkt. No. 17.

On September 21, 2016, defendants filed the currently pending motion to dismiss plaintiff's amended complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 61. Plaintiff has since responded in

---

[5]     In his amended complaint, plaintiff reasserted some of his original causes of action that were dismissed by Judge Sharpe. As an example, in his amended complaint, plaintiff reasserted his claim against Corrections Officer Janora. Dkt. No. 18 at 6. That claim, however, was dismissed by Judge Sharpe following his review of plaintiff's original complaint. Dkt. No. 10 at 12-13. Plaintiff also included all of his original Eighth Amendment causes of action in his amended complaint, despite the fact that they were specifically dismissed by Judge Sharpe, as well. *Id.* at 17 & n.13. Although defendants seek dismissal of plaintiff's Eighth Amendment claims in their pending motion to dismiss, they do not seek dismissal of any of the other causes of action plaintiff reasserted but were previously dismissed by Judge Sharpe. *See generally* Dkt. No. 61-1. Plaintiff's amended complaint was accepted by Judge Sharpe because it was deemed "a pleading which reflects the Court's rulings in the [initial] order." Dkt. No. 17. For that reason, in this report I have not considered any of plaintiff's claims, including his Eighth Amendment claims, that were dismissed in Judge Sharpe's earlier ruling to be revived by the filing of his amended complaint, and I recommend that the court consider those causes of action as remaining dismissed.

opposition to the motion, Dkt. No. 64, which is now fully briefed, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Legal Standard Governing Motions to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard which, though unexacting, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept

the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The tenet that a court must accept as true all of the allegations contained in a complaint does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining

11

whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

    B.    <u>Plaintiff's First Amendment Claims</u>

        1.    <u>Free Speech</u>

Plaintiff's First Amendment free speech claims remain pending against defendants McKeighan, Frazier, Ollies, Whitford, Mahuta, Maxwell, and Borowski following Judge Sharpe's initial order. I have separately addressed each defendant below.

        a.    <u>Legal Standard</u>

While inmates confined in prison facilities are by no means entitled to the full gamut of rights guaranteed under the United States Constitution, including the First Amendment, they do retain at least some measure of constitutional protection. *Beard v. Banks*, 548 U.S. 521, 528 (2006). A

12

prison inmate's right to freedom of speech, however, is not without limits, and the task of defining the contours of that right in a prison setting requires striking a delicate balance between the rights of prison inmates and the legitimate interests of prison officials charged with maintaining prison security. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348-49 (1987); *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003); *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990).

Among the constitutional protections enjoyed by prison inmates is the "right to the free flow of incoming and outgoing mail[.]" *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). That right, however, gives way to the legitimate penological interests of prison officials when mail is monitored for the purpose of ensuring order in the prison by preventing illegal activities, in which case no constitutional violation has occurred. *United States v. Workman*, 80 F.3d 688, 698 (2d Cir. 1996); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) (concluding that when a prison regulation or practice "impinges on inmates' constitutional rights, the regulation [or decision] is valid if it is reasonably related to legitimate penological interests"); *accord, Beard*, 548 U.S. at 528.

"[C]ourts have consistently afforded greater protection . . . to outgoing mail than to incoming mail." *Davis*, 320 F.3d at 351. Nonetheless,

the Second Circuit has held that, "where good cause is shown, outgoing

mail can be read without violating inmates' First Amendment rights."

*Workman*, 80 F.3d at 698 (quotation marks omitted).

        b.   <u>Analysis</u>

        i.   <u>Defendant McKeighan</u>

On January 29, 2015, defendant Hanson issued plaintiff a

misbehavior report accusing Barnes of violating rule 105.13 after

discovering a letter in plaintiff's cell that allegedly instructed other inmates

to assault prison staff. Dkt. No. 18 at 7-8. Plaintiff contends that this letter

was "fabricated." *Id.* at 7. In connection with that misbehavior report,

defendant McKeighan conducted a disciplinary hearing. *Id.* at 8. According

to plaintiff, defendant McKeighan permitted defendant Hanson to falsely

testify regarding the contents of the letter found in plaintiff's cell and was a

biased hearing officer. *Id.* at 8. At the conclusion of the hearing, plaintiff

was found guilty of violating rule 105.13. *Id.*

Although plaintiff claims that defendant McKeighan violated plaintiff's

First Amendment free speech rights during the disciplinary hearing, there

are no allegations in the amended complaint that plausibly suggest

defendant McKeighan infringed on any of plaintiff's First Amendment

rights. Defendant McKeighan did not confiscate any of plaintiff's letters or

charge him with any prison violations based on his speech. Instead, as alleged in the amended complaint, defendant McKeighan merely presided over a disciplinary hearing, heard evidence from the author of the misbehavior report that suggested plaintiff instructed other inmates to assault prison staff, and, based on the evidence adduced at the hearing, determined that plaintiff violated rule 105.13. Because plaintiff's amended complaint suggests that defendant McKeighan's conduct – finding plaintiff guilty at the disciplinary hearing – was reasonably related to maintaining the safety and security of the prison, plaintiff's free speech claim asserted against defendant McKeighan cannot survive review under Rule 12(b)(6). Accordingly, I recommend that defendants' motion with respect to plaintiff's free speech claim asserted against defendant McKeighan be granted.

### ii.   Defendant Frazier

During the disciplinary hearing over which defendant McKeighan presided, defendant Frazier testified that plaintiff's letters constituted gang material. Dkt. No. 18 at 8. Plaintiff contends that the letters about which defendant Frazier testified did not "mention anything detrimental to the prison nor prison security" and defendant Fraizer's opinion "was not neutral and his testimony were [sic] the reason plaintiff were [sic] found guilty on rule 105.13." *Id.*

15

Even assuming the allegations as described above are true, they do not state a plausible free speech claim. There are no allegations in the amended complaint that defendant Frazier interfered with, or even confiscated, plaintiff's mail. It is only alleged that defendant Frazier testified at a disciplinary hearing regarding the contents of some of plaintiff's mail. This is not sufficient to state a cognizable free speech cause of action under the First Amendment. Accordingly, I recommend that defendants' motion be granted with respect to plaintiff's free speech claim asserted against defendant Frazier.

### iii.   Defendant Ollies

In his amended complaint, plaintiff alleges that in or about January 2013, Barnes wrote a letter to a female friend who resided outside of Attica. Dkt. No. 18 at 5. The letter was apparently returned to Attica, and defendant Ollies confiscated the letter upon its return to the facility. *Id.* Based on the contents of the letter, defendant Ollies issued plaintiff a misbehavior report accusing him of engaging in gang activity in violation of rule 105.13. *Id.* According to plaintiff, the letter did not include any information regarding criminal activity or information that could have been deemed "detrimental to the facility." *Id.* Nevertheless, defendant Ollie testified at the disciplinary hearing held in connection with the misbehavior

report that the confiscated letter constituted gang material. *Id.*

Similarly, defendant Ollies is alleged to have confiscated three of plaintiff's letters on or about January 29, 2014. Dkt. No. 18 at 6. Defendant Ollies again issued plaintiff a misbehavior report based on the contents of the letters accusing plaintiff of violating rule 105.13. *Id.* Although plaintiff contends that the letters did not "threaten the security of the prison," defendant Ollies testified at the subsequent disciplinary hearing that certain statements in the letters constituted gang material. *Id.*

Liberally construed, plaintiff's amended complaint asserts First Amendment free speech claims against defendant Ollies based on the his allegedly unjustified confiscation of plaintiff's mail. According to plaintiff, none of the letters confiscated by defendant Ollies threatened the safety or security of the prison facility, nor did they contain any information that could have been deemed criminal.

Defendants seek dismissal of plaintiff's free speech claims against defendant Ollies in light of the guilty determinations rendered in connection with the misbehavior reports issued by defendant Ollies. Dkt. No. 61-1 at 11-12. According to defendants, "[s]ince DOCCS has a legitimate interest in controlling gang activity in prison, the seizure of the letters at [sic] cannot give rise to a constitutional violation." *Id.* at 12.

17

Defendants' argument, however, does not account for the fact that plaintiff accuses defendant Ollies of confiscating the letters in the first place without legal justification. Plaintiff alleges that the letters did not threaten the safety or security of the prison, and there are no allegations in the amended complaint that suggest that plaintiff's mail was being monitored for the purpose of ensuring the safety and security of the prison, or for any other legitimate penological interest.

Accordingly, taking the allegations in the amended complaint as true, and construing the allegations liberally, I find that the amended complaint states a plausible free speech claim against defendant Ollies. For that reason, I recommend defendants' motion to dismiss be denied with respect to defendant Ollies.

### iv.    Defendant Whitford

Defendant Whitford presided over the disciplinary hearing held in connection with the misbehavior report issued to plaintiff by defendant Ollies in or about January 2013, regarding the that letter plaintiff wrote to his female acquaintance. Dkt. No. 18 at 5. According to plaintiff, defendant Whitford found plaintiff guilty of violating rule 105.13 after hearing testimony from defendant Ollies that the letter contained statements constituting gang material. *Id.*

Even assuming the allegations in the amended complaint are true with respect to defendant Whitford, there are none to plausibly suggest that he interfered with any of plaintiff's mail or free expression. Instead, as alleged in the amended complaint, defendant Whitford found plaintiff guilty of violating a prison rule after hearing testimony that one of plaintiff's letters constituted gang material. Such allegation is insufficient to give rise to a plausible free speech claim. Accordingly, I recommend that defendants' motion be granted with respect to plaintiff's free speech claim asserted against defendant Whitford.

### v.   Defendant Mahuta

On January 29, 2015, while plaintiff was confined at Clinton, defendant Mahuta conducted a search of plaintiff's cell and confiscated "numerous" letters authored by plaintiff, plaintiff's address book, and his Bible. Dkt. No. 18 at 7. According to plaintiff, defendant Mahuta "only deemed three pages to be gang material then issued a misbehavior report to plaintiff" accusing him of violating rule 105.13. *Id.* The letters, however, did not impose any threat on the safety or security of the prison facility. *Id.*

Defendants contend that plaintiff's free speech claim asserted against defendant Mahuta is subject to dismissal because plaintiff was ultimately found guilty at the disciplinary hearing that was conducted in

connection with the misbehavior report authored by defendant Mahuta regarding the confiscation of his property. Dkt. No. 61-1 at 12. Assuming the allegations in the amended complaint are true, however, it appears there was no justification in the first place for monitoring or confiscating plaintiff's property, including his mail. Although defendants may be able to prove at a later juncture that defendant Mahuta possessed a legitimate penological interest for interfering with plaintiff's mail, the allegations in the amended complaint plausibly suggest a free speech claim against that individual. For this reason, I recommend defendants' motion be denied with respect to plaintiff's free speech claim asserted against defendant Mahuta.

vi.   <u>Defendant Maxwell</u>

Plaintiff's amended complaint alleges that, during the course of an investigation by defendant Maxwell into the assault on a fellow prisoner, inmate Mims, defendant Maxwell asked plaintiff to "tell [him] it was a gang hit and who paid [plaintiff to conduct the assault]." Dkt. No. 18 at 4. Plaintiff alleges that he told defendant Maxwell that he did not know what happened to inmate Mims and defendant Maxwell thereafter issued plaintiff a misbehavior report accusing plaintiff of violating rule 105.13. *Id.* To the extent that plaintiff's free speech claim is grounded upon plaintiff's

20

allegation that the misbehavior report issued to him by defendant Maxwell was false, it is not cognizable. *See, e.g., Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997) ("[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."). Because there are no other allegations in the amended complaint that plausibly suggest defendant Maxwell violated plaintiff's free speech rights by issuing him a misbehavior report accusing him of violating a prison rule, I recommend defendants' motion be granted with respect to plaintiff's First Amendment cause of action asserted against defendant Maxwell.

### vii.   Defendant Borowski

As was discussed above, in or about January 2014, defendant Ollies issued plaintiff a misbehavior report accusing him of violating rule 105.13 based on the contents of plaintiff's confiscated letters. Dkt. No. 18 at 6. Defendant Borowski presided over the disciplinary hearing that was conducted in connection with that misbehavior report. *Id.* Although the amended complaint alleges that defendant Borowski was biased during the hearing – an argument that will be discussed more completely below in part III.C.2.d. of this report – there are no allegations plausibly suggesting that defendant Borowski violated plaintiff's right to free speech. Accordingly, I recommend that defendants' motion be granted with respect

to plaintiff's free speech claim asserted against defendant Borowski.

    2.   <u>Religious Free Exercise</u>

As was noted above, prison inmates are afforded some degree of protection under the First Amendment, including the right to the free exercise of their chosen religion. As is relevant to this case, inmates retain their right to possess and wear religious head coverings subject to legitimate penological interests. *See Benjamin v. Coughlin*, 905 F.2d 571 (2d Cir. 1990) (weighing a prisoner's right to wear a religious crown against the legitimate security concerns cited by the defendants). As a threshold matter, "[t]he prisoner must show . . . that the disputed conduct substantially burdens his sincerely held religious beliefs."[6] *Salahuddin v. Goord*, 467 263, 274-75 (2d Cir. 2006). Once a plaintiff satisfies this burden, defendants must then "bear the relatively limited burden of identifying the legitimate penological interests that justifying impinging

---

[6]    The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.'" *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim); *Williams v. Does*, 639 F. App'x 55, 56 (2d Cir. 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."). In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

conduct." *Salahuddin*, 467 F.3d at 275. "[T]he burden[, however,] remains with the prisoner to 'show that these penological concerns were irrational.'" *Ford v. McGinnis*, 352 F.3d 582, 595 (2d Cir. 2003) (quoting *Fromer v. Scully*, 874 F.2d 69, 74 (2d Cir. 1989)) (alteration omitted). The court then asks whether a defendant's conduct, which allegedly deprives the plaintiff of his free exercise rights, is reasonably related to some legitimate penological interest. *Ford*, 352 F.3d at 594; *see also Washington v. Gonyea*, 538 F. App'x 23, 26 (2d Cir. 2013).

In this case, in light of the procedural juncture and the grounds upon which defendants seek dismissal of this claim, I have only considered whether, assuming the allegations in plaintiff's amended complaint are true, the pleading plausibly suggests that plaintiff's free exercise rights were substantially burdened. *See* Dkt. No. 61-1 at 13 (defendants' memorandum of law, arguing that plaintiff's amended complaint contains no allegations plausibly suggesting that "Plaintiff was not able to cover his head in a manner consistent with his religious beliefs").

Plaintiff alleges that during the search of his cell conducted on or about January 29, 2015, defendant Mahuta confiscated and discarded three of his kufis. Dkt. No. 18 at 9. According to plaintiff, he "is a member of the Nation of Islam (N.O.I.) and is required to keep his head covered all

waking hours." *Id.* Defendants contend that these allegations are insufficient to give rise to a free exercise claim because they "presume[] that Plaintiff has more than three such head coverings," and, therefore, plaintiff was still able to exercise his religion despite the other three kufis having been discarded by defendant Mahuta. Dkt. No. 61-1 at 13. This is precisely the type of narrow reading of *pro se* litigants' pleadings that the Second Circuit has repeatedly cautioned against. *See, e.g., Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). In light of the admonishment from the circuit that district courts are to construe *pro se* pleadings to raise the strongest claims possible, *Triestman*, 470 F.3d at 474, I cannot agree with defendants' interpretation of plaintiff's allegations. Instead, liberally construed, plaintiff's amended complaint plausibly suggests that plaintiff's right to exercise his religion – in this case, to keep his head covered during all waking hours – was substantially burdened when defendant Mahuta discarded plaintiff's kufis. Accordingly, I recommend the court deny defendants' motion to dismiss plaintiff's free exercise claim asserted against defendant Mahuta.

### 3.   Access to Courts

Undoubtedly, prisoners have a constitutional right to meaningfully access the courts. *Bounds v. Smith*, 430 U.S. 817, 824 (1977); *accord*, *Lewis v. Casey*, 518 U.S. 343, 350 (1996) ("The right that *Bounds* acknowledged was the (already well-established) right of *access to the courts*." (emphasis in original)). This right is implicated when prison officials "actively interfer[e] with inmates' attempts to prepare legal documents, or file them[.]" *Lewis*, 518 U.S. at 350 (citations omitted). A plaintiff asserting a denial of access to courts claim must allege that the defendant was "responsible for actions that hindered his efforts to pursue a legal claim." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (quotation marks omitted). To establish a denial of access to courts claim, a plaintiff must satisfy two prongs. First, a plaintiff must show that the defendant acted deliberately and maliciously. *Davis*, 320 F.3d at 351. Second, the plaintiff must demonstrate that he suffered an actual injury. *Id.*

In this case, the amended complaint alleges that, while he was confined at Great Meadow, plaintiff's legal mail was withheld from him between February 10, 2015 and March 27, 2015. Dkt. No. 18 at 9. As a result, plaintiff alleges that his "cases" were dismissed and he was unable "to appeal his case decision." *Id.* Plaintiff contends that defendants Bell,

Narkiewicz, and West "violated [his] First Amendment, Access to court."
*Id.*

     This claim is subject to dismissal for two reasons. First, there are no

allegations in the amended complaint that plausibly suggest how

defendants Bell, Narkiewicz, and West were personally involved in

withholding plaintiff's legal mail during the relevant time period. "Personal

involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under [section] 1983." *Wright v.*

*Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*,

950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930,

934 (2d Cir. 1977)). In order to prevail on a section 1983 cause of action

against an individual, a plaintiff must show "a tangible connection between

the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790

F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint

must state precisely who did what and how such behavior is actionable

under law." *Hendrickson v. U.S. Attorney Gen.*, No. 91-CV-8135, 1994 WL

23069, at *3 (S.D.N.Y. Jan. 24, 1994).[7] Here, plaintiff's amended

complaint fails to allege any facts describing the roles played by

---

[7]     Copies of all unreported decisions cited to in this report have been appended for
the convenience of the *pro se* plaintiff.

defendants Bell, Narkiewicz, and West in denying plaintiff access to his legal mail.

In addition, as was noted above, to prevail on a denial of access to courts cause of action, a pleading must plausibly allege that the defendants acted deliberately and maliciously. Fatal to plaintiff's claim against defendants Bell, Narkiewicz, and Bell is the absence of any allegations that, whatever the specific conduct those individuals took, they acted deliberately and maliciously.

For these reasons, I recommend that defendants' motion seeking dismissal of plaintiff's access to courts claim asserted against defendants Bell, Narkiewicz, and West be granted.

C.    Plaintiff's Fourteenth Amendment Procedural Due Process Claims

Following Judge Sharpe's initial review of plaintiff's original complaint and plaintiff's subsequent filing of his amended complaint, plaintiff's procedural due process claims that remain pending in this action are asserted against defendants McKeighan, Frazier, Coveny, Ollies, Whitford, Mahuta, Hanson, Maxwell, and Borowski. I will address each defendant separately below.

### 1.   Legal Standard

To establish a procedural due process claim under section 1983, a plaintiff must show that he (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996). Because defendants do not seek dismissal of any of plaintiff's due process claims on the basis that plaintiff was not denied a constitutionally significant liberty interest, Dkt. No. 61-1 at 16-19, for purposes of this report and recommendation only, I have assumed that plaintiff's amended complaint satisfies this first pleading requirement.

The procedural safeguards to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest are well established under *Wolff v. McDonnell*, 418 U.S. 539 (1974). In its decision in *Wolff*, the Court held that the constitutionally mandated due process requirements include (1) written notice of the charges to the inmate; (2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence in support of his defense, subject to a prison facility's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his

decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense. *Wolff*, 418 U.S. at 564-69; *see also Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004). To pass muster under the Fourteenth Amendment, a hearing officer's disciplinary determination must also garner the support of at least "some evidence." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985); *Luna*, 356 F.3d at 487-88.

The due process clause of the Fourteenth Amendment also guarantees that "[a]n inmate subject to a disciplinary hearing is entitled to. . . an impartial hearing officer." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) (citing *Wolff*, 418 U.S. at 570-71). The Second Circuit has explained that its "conception of an impartial decisionmaker is one who, *inter alia*, does not prejudge the evidence and who cannot say . . . how he would assess evidence he has not yet seen." *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990). "The degree of impartiality required of prison officials[, however,] does not rise to the level of that required of judges." *Allen*, 100 F.3d at 259. Indeed, "[i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Russell v. Selsky*, 35 F.3d 55, 60 (2d Cir. 1996). "A hearing officer may satisfy the standard of impartiality if

there is 'some evidence in the record' to support the findings of the

hearing." *Allred v. Knowles*, No. 06-CV-0456, 2010 WL 3911414, at *5

(W.D.N.Y. Oct. 5, 2010) (quoting *Hill*, 472 U.S. at 455).

   2. <u>Analysis</u>

     a. <u>Defendants Frazier, Ollies, Mahuta, Hanson, and</u>
       <u>Maxwell</u>

  Plaintiff's due process claims asserted against defendants Frazier,

Ollies, Mahuta, Hanson, and Maxwell stem from allegations that each of

those individuals either issued plaintiff a false misbehavior report or

provided false testimony regarding a misbehavior report during a

subsequent disciplinary hearing. Dkt. No. 18 at 4-8. Because these

allegations do not rise to a cognizable constitutional cause of action, I

recommend that defendants' motion be granted with respect to plaintiff's

Fourteenth Amendment claims asserted against defendants Frazier,

Ollies, Mahuta, Hanson, and Maxwell. *See Boddie*, 105 F.3d at 862 ("[A]

prison inmate has no general constitutional right to be free from being

falsely accused in a misbehavior report."); *Freeman v. Rideout*, 808 F.2d

949, 951 (2d Cir. 1986) ("The prison inmate has no constitutionally

guaranteed immunity from being falsely or wrongly accused of conduct

which may result in the deprivation of a protected liberty interest."); *accord,*

*Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2d Cir. 2005).

b.   Defendant Coveny

In his amended complaint, plaintiff alleges that defendant Coveny presided over the disciplinary hearing that was held in connection with the misbehavior report issued by defendant Ollies to plaintiff accusing him of assaulting another inmate. Dkt. No. 18 at 4-5. Plaintiff alleges that during the disciplinary hearing, defendant Coveny denied his requests to call three witnesses. *Id.* at 4. Specifically, plaintiff asked to call two corrections officers to testify on his behalf but defendant Coveny denied that request, telling plaintiff that he "'will not call officers to testify so they can contradict other officers.'" *Id.* Plaintiff also requested permission to call the inmate-victim, "so he could . . . testify that plaintiff did not cut him as he previous[ly] testified." *Id.* Plaintiff does not include any allegation in his amended complaint that explains why defendant Coveny denied that request. *Id.* 4-5.

Defendants contend that plaintiff's due process claim asserted against defendant Coveny is ripe for dismissal because, based on the allegations in the amended complaint, defendant Coveny denied plaintiff's requests to call the three witnesses because "the testimony of the two officers would have been merely cumulative and [the inmate-victim] had already given statements denying that he was stabbed by Plaintiff." Dkt.

No. 61-1 at 18. Although it is true that hearing officers need not permit the testimony of witnesses whose proffered testimony is irrelevant or unnecessary, *Scott v. Kelly*, 962 F.2d 145, 147 (2d Cir. 1992), liberally construed, plaintiff's allegations plausibly suggest that defendant Coveny denied plaintiff the opportunity to provide evidence that would have proven that plaintiff did not assault a fellow inmate. Indeed, according to the amended complaint, defendant Coveny denied plaintiff's requests to call the two officers for the precise reason that he did not want to hear testimony that would contradict the evidence proving plaintiff's guilt. Because the allegations of the amended complaint plausibly suggest that defendant Coveny refused to permit plaintiff's witnesses from testifying because those witnesses might support plaintiff's claim of innocence, I recommend that defendants' motion be denied to the extent it seeks dismissal of plaintiff's due process claim asserted against defendant Coveny. *See Whitlock v. Johnson*, 153 F.3d 380, 388 (7th Cir. 1998) ("We have long recognized the importance of the right to present testimony of witnesses for an accused inmate who obviously faces a severe credibility problem when trying to disprove the charges of a prison guard."); *accord, Hoskins v. McBride*, 13 F. App'x 365, 368 (7th Cir. 2001) (finding that proffered witness testimony during a disciplinary hearing that corroborates

the plaintiff-inmate's version of events is "important").

c.   <u>Defendant Whitford</u>

Defendant Whitford presided over the disciplinary hearing held in connection with the misbehavior report authored by defendant Ollies regarding the letter that plaintiff wrote to his female friend. Dkt. No. 18 at 5. According to plaintiff, defendant Whitford told plaintiff, off the record, that if defendant Ollies "testified [at the hearing] that the letter[] is gang material, [he was] going to find [plaintiff] guilty." *Id.* at 5. Following defendant Ollies' testimony that the letter constituted gang material, defendant Whitford found plaintiff guilty on January 31, 2013, of violating rule 105.13. *Id.*

Liberally construed, plaintiff's amended complaint asserts a due process claim against defendant Whitford based on the contention that he was biased. As noted above, inmates are entitled to an impartial hearing officer. *Allen*, 100 F.3d at 259. In this case, however, even assuming the allegations in the amended complaint are true, they do not plausibly suggest that defendant Whitford was biased. Crediting plaintiff's version, as the court must at this juncture, defendant Whitford's statement did nothing more than advise plaintiff that, if evidence was presented on the record that plaintiff violated rule 105.13, he would be found guilty. Because all that is required to satisfy due process in the context of a disciplinary

33

hearing is "some evidence" of the inmate's guilt, *see, e.g., Superintendent, Mass. Corr. Inst., Walpole*, 472 U.S. at 455, I do not find that defendant Whitford's statement reflected a bias towards plaintiff or the ultimate outcome of the hearing. Accordingly, I recommend that defendants' motion be granted with respect to plaintiff's due process cause of action asserted against defendant Whitford.

d.   Defendant Borowski

As was noted above, on or about January 29, 2013, three of plaintiffs' letters were confiscated by a corrections officer who turned them over to defendant Ollies. Dkt. No. 18 at 6. Defendant Ollies then issued plaintiff a misbehavior report based on the contents of those letters, accusing plaintiff again of participating in gang activity. *Id.* Defendant Borowski presided over the disciplinary hearing held in connection with that misbehavior report. *Id.* Liberally construed, the amended complaint alleges that defendant Borowski was biased during the hearing because he adjourned the proceeding and arranged to have a SHU cell prepared for plaintiff. *Id.* At the conclusion of the hearing, on February 10, 2014, defendant Borowski found plaintiff guilty.

Without more, plaintiff's amended complaint fails to state a cognizable due process claim against defendant Borowski. Plaintiff does

not allege how he was prejudiced by the adjournment. In addition, there are no allegations specifically identifying when defendant Borowski allegedly arranged to have a SHU cell prepared for plaintiff. Finally, although plaintiff alleges that the confiscated letters did not threaten the safety and security of the prison facility, he appears to acknowledge that defendant Borowski was presented with some evidence of his guilt by way of defendant Ollies' testimony. Dkt. No. 18 at 6. Because none of the allegations in the amended complaint plausibly suggest that defendant Borowski was biased against plaintiff during the disciplinary hearing, I recommend that defendants' motion be granted with respect to plaintiff's due process cause of action asserted against that defendant.

e.    Defendant McKeighan

In connection with the misbehavior report authored by defendant Hanson accusing plaintiff of writing a letter to other inmates instructing them to assault prison staff, a disciplinary hearing was held over which defendant McKeighan presided. Dkt. No. 18 at 8. Plaintiff alleges that defendant McKeighan was a biased hearing officer based on the following:

> 1) McKeighan knowingly allowed C.O. Hanson to fabricate his testimony by testimony by 'there's a note written by Barnes telling other inmates to assult [sic] staff's. [sic]' 2) McKeighan went off the record to investigate and submit fabricated document of Clinton Corr. fac., yard go around after C.O. Hanson testified the

35

> yard go around were destroyed, and 3) McKeighan told plaintiff off the record 'I'm gonna note your objections, but there's no way I'm letting you walk free from these charges. You put hits out on officers, I works [sic] with officers so this is close to home.'

*Id.* (emphasis in original). On February 27, 2015, at the conclusion of the disciplinary hearing, defendant McKeighan found plaintiff guilty "on all charges[.]" *Id.*

The above-described allegations, assuming they are true, satisfy the pleading requirements under Rule (12)(b)(6) and its progeny to state a cognizable due process claim. In particular, plaintiff alleges that defendant McKeighan knowingly permitted false testimony and other evidence to be proffered at the disciplinary hearing, and that defendant McKeighan relied on that false evidence to find plaintiff guilty. Moreover, plaintiff alleges that defendant McKeighan expressed his intention to find plaintiff guilty, regardless of what evidence was presented at the hearing. Because the amended complaint plausibly suggests defendant McKeighan was biased towards plaintiff during the disciplinary hearing, I recommend that defendants' motion be denied with respect to plaintiff's due process claim asserted against defendant McKeighan.

D.    Plaintiff's Supervisory Liability Claims Asserted Against Defendants Annucci and Venetozzi

Plaintiff's allegations concerning defendants Annucci and Venetozzi are vague. Liberally construed, it seems that plaintiff contends that those individuals are responsible for the constitutional violations by all of the other named defendants, as described elsewhere in this report, because they occupy supervisory positions within the DOCCS. Dkt. No. 18 at 10. Plaintiff alleges that he notified defendants Annucci and Venetozzi of the constitutional violations "by his appeals." *Id.*

As was discussed earlier in part III.B.3. of this report, personal involvement is a prerequisite to section 1983 claims. *Wright*, 21 F.3d at 501. It is well established that a supervisor cannot be liable under section 1983 solely by virtue of being a supervisor, "and [liability] cannot rest on *respondeat superior*." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in

managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Richardson*, 347 F.3d at 435; *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501.[8]

Plaintiff alleges that defendants Annucci and Venetozzi are liable in their capacities as the Acting Commissioner of the DOCCS and the DOCCS Director of the SHU, respectively, for the violations committed by other DOCCS employees because plaintiff notified them of the alleged constitutional violations through letters, complaints, and appeals, but neither of them took any action to correct the violations. Dkt. No. 18 at 10. Plaintiff also alleges that defendant Annucci was aware of a Second Circuit decision "deem[ing] unconstitutional" DOCCS rule 105.12, which,

---

[8]    Subsequent to issuance of the Second Circuit's decision in *Colon*, the Supreme Court addressed the question of supervisory liability in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Although the issue has been discussed in several relatively recent decisions, the Second Circuit has yet to squarely address the impact of *Iqbal* upon the categories of supervisory liability addressed in *Colon*. *See, e.g., Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) ("We express no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citation omitted)); *see also Reynolds v. Barrett*, 685 F.3d 193, 206 n.14 (2d Cir. 2012) ("*Iqbal* has, of course, engendered conflict within our Circuit without the continuing vitality of the supervisory liability test set forth in [*Colon*,] . . . but the fate of *Colon* is not properly before us[.]").

plaintiff alleges, "is very similar to" rule 105.13. *Id.*

The allegations set forth in plaintiff's amended complaint are insufficient to state a cognizable cause of action against defendants Annucci and Venetozzi. Even assuming that plaintiff did, in fact, write "letters, complaint[s], and appeals" to defendants Annucci and Venetozzi, there are no allegations in the amended complaint that explain which incidents involving other defendants plaintiff complained of in those communications. In light of the several other named defendants in the action, as well as the number of incidents implicated in plaintiff's amended complaint, without additional factual allegations, it is impossible to know which incidents defendants Annucci and Venetozzi learned about through plaintiff's alleged letters, complaints, and appeals. Equally important, of course, is whether defendants Annucci and Venetozzi had an opportunity to correct the underlying constitutional violations. Although plaintiff conclusorily alleges that defendants Annucci and Venetozzi "fail[ed] to stop the unconstitutional violations [sic]" and "chose not to correct the violations," there is no indication in the amended complaint that defendants were notified of the violations at a time when they could have prevented future, or cured past, constitutional violations. *See, e.g., Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) ("Receiving

post hoc notice does not constitute personal involvement in the unconstitutional activity and cannot be said to have proximately caused the damage suffered by the inmate. Therefore, a supervisor may be liable for her failure to remedy a violation only in those circumstances where the violation is ongoing and the defendant has an opportunity to stop the violation after being informed of it."). Accordingly, I recommend that defendants' motion be granted to the extent it seeks dismissal of plaintiff's supervisory liability claims against defendants Annucci and Venetozzi.

D.    Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). Here, given the procedural history of this action, the court must determine whether plaintiff is entitled to the benefit of this general rule.

In the event that the above recommendations are adopted by the assigned district judge, the following causes of action would be dismissed: (1) plaintiff's First Amendment free speech claim asserted against defendants McKeighan, Frazier, Whitford, Maxwell, and Borowski; (2) plaintiff's First Amendment access to courts claim asserted against defendants Bell, Narkiewicz, and West; (3) plaintiff's Fourteenth Amendment due process claims asserted against defendants Frazier, Ollies, Mahuta, Hanson, Maxwell, Whitford, and Borowski; and (4) plaintiff's supervisory liability claims asserted against defendants Annucci and Venetozzi. Because the deficiencies identified in plaintiff's amended complaint with respect to those causes of action could possibly be cured through the inclusion of greater factual detail in his pleading, I recommend that plaintiff be permitted to file a second amended complaint, if desired.

In the event plaintiff chooses to file a second amended complaint, he is advised that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *Pourzandvakil v. Humphry*,

No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in his second amended complaint, plaintiff must clearly set forth the facts that give rise to the claim, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of each of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, plaintiff is informed that any such second amended complaint will replace the existing amended complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. City trust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ('It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted)).

IV.   SUMMARY AND RECOMMENDATION

Defendants seek dismissal of all of plaintiff's causes of action that survived Judge Sharpe's initial review. Although many of those claims are not sufficiently pleaded to withstand Rule 12(b)(6) scrutiny, some are

plausibly stated in the amended complaint as is. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 61) be GRANTED with respect to the following causes of action and that they be DISMISSED without prejudice to plaintiff's right to file a second amended complaint that the cures the deficiencies identified in this report: (1) plaintiff's First Amendment free speech claims asserted against defendants McKeighan, Frazier, Whitford, Maxwell, and Borowski; (2) plaintiff's First Amendment access to courts claim asserted against defendants Bell, Narkiewicz, and West; (3) plaintiff's Fourteenth Amendment due process claims asserted against defendants Frazier, Ollies, Mahuta, Hanson, Maxwell, Whitford, and Borowksi; and (4) plaintiff's supervisory liability claims asserted against defendants Annucci and Venetozzi; and it is further

RECOMMENDED that, if the above recommendation is accepted, defendants Frazier, Whitford, Maxwell, Borowski, Bell, Narkiewicz, West, Annucci, and Venetozzi be DISMISSED from the action; and it is further

RECOMMENDED that, if the above recommendations are accepted and plaintiff does not avail himself of the opportunity to file a second amended complaint, the following causes of action survive defendants'

motion and proceed to discovery: (1) plaintiff's First Amendment free speech claims asserted against defendants Ollies and Mahuta; (2) plaintiff's First Amendment free exercise claim asserted against defendant Mahuta; (3) plaintiff's Fourteenth Amendment due process claims asserted against defendants Coveny and McKeighan.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[9] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 86 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:    July 14, 2016
          Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

---

[9]    If you are proceeding pro se and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**

H

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Dale HENDRICKSON, Plaintiff,
v.
UNITED STATES ATTORNEY GENERAL, G.L.
Hershberger, United States Bureau of Prisons, Gary
Morgan, Pamela Ashline, Kenneth Walicki, Hulet
Keith, Otisville Medical Department, Defendants.

No. 91 CIV. 8135.
Jan. 24, 1994.

MEMORANDUM AND ORDER

McKENNA, District Judge.

**\*1** On December 4, 1991, pro se plaintiff Dale
Hendrickson ("Plaintiff" or "Hendrickson"), an in-
mate then in confinement at the Federal Correction-
al Institution in Otisville, New York ("Otisville"),
filed this action for injunctive relief and damages
based upon alleged violations of his rights under
the United States Constitution, Amendments I, IV,
V, VI, IX, and XIII, and upon violations of various
laws and/or regulations governing prison adminis-
tration.[FN1] The Complaint named as defendants
G.L. Hershberger ("Hershberger"), the United
States Attorney General ("Attorney General"), Gary
Morgan ("Morgan"), Pamela Ashline ("Ashline"),
Kenneth Walicki ("Walicki"), Hulett Keith
("Keith"), the Bureau of Prisons ("BOP"), and the
Otisville Medical Department ("OTV Medical De-
partment") (collectively "Defendants"). Defendants
moved for judgment on the pleadings pursuant to
Rule 12(c) of the Federal Rules of Civil Procedure,
or, in the alternative, for summary judgment pursu-
ant to Rule 56 of the Federal Rules of Civil Proced-
ure. For the reasons set out below, Defendants' Rule
12(c) motion is granted.

I.

Defendants move to dismiss Plaintiff's Com-
plaint, pursuant to Rule 12(c) of the Federal Rules
of Civil Procedure, for failure to state a claim upon

which relief can be granted. Rule 12(c) provides:

After the pleadings are closed but within such
time as not to delay the trial, any party may move
for judgment on the pleadings. If, on a motion for
judgment on the pleadings, matters outside the
pleadings are presented to and not excluded by
the court, the motion shall be treated as one for
summary judgment and disposed of as provided
in Rule 56, and all parties shall be given reason-
able opportunity to present all material made per-
tinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(c). "[T]he same standards that
are employed for dismissing a complaint for failure
to state a claim under Fed.R.Civ.P. 12(b)(6) are ap-
plicable" to a Rule 12(c) motion to dismiss for fail-
ure to state a claim upon which relief can be gran-
ted. *See Ad–Hoc Comm. of the Baruch Black &
Hispanic Alumni Ass'n v. Bernard M. Baruch Col-
lege,* 835 F.2d 980, 982 (2d Cir.1987); *see also Vi-
acom Int'l. Inc. v. Time, Inc.,* 785 F.Supp. 371, 375
n. 11 (S.D.N.Y.1992); 5A Charles Wright and Ar-
thur R. Miller, *Federal Practice and Procedure* ¶
1367, at 515–16 (1990). Thus, the Court must read
the Complaint generously, drawing all reasonable
inferences from the complainant's allegations. *See
California Motor Transp. v. Trucking Unlimited,*
404 U.S. 508, 515 (1972). Moreover,
"consideration is limited to the factual allegations
in [the] amended complaint, which are accepted as
true, to documents attached to the complaint as an
exhibit or incorporated in it by reference, to matters
of which judicial notice may be taken, or to docu-
ments either in plaintiff['s] possession or of which
plaintiff[ ] had knowledge and relied on in bringing
suit." *Brass v. American Film Technologies, Inc.,*
987 F.2d 142 (2d Cir.1993); *accord Allen v. West-
point–Pepperell, Inc.,* 945 F.2d 40, 44 (2d
Cir.1991); *Cortec Indus., Inc. v. Sum Holding L.P.,*
949 F.2d 42, 47–48 (2d Cir.1991), *cert. denied,* 112
S.Ct. 1561 (1992); *Frazier v. General Elec. Co.,*
930 F.2d 1004, 1007 (2d Cir.1991). Defendants,
therefore, are entitled to dismissal for failure to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**

state a claim only if the Court finds beyond a doubt that "plaintiff can prove no set of facts" to support the claim that plaintiff is entitled to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46 (1957).

**\*2** Because the 3(g) statement and declarations submitted to this Court by Defendants have not been considered and are hereby excluded from the record, the Court renders its judgment on the pleadings pursuant to Rule 12(c).

II.

Drawing all inferences in favor of the Plaintiff, *Miller v. Polar Molecular Corp.,* 12 F.3d 1170, 1993 WL 527434 (2d Cir.), the facts are as follows.

During Hendrickson's confinement at Otisville, certain video tapes which had been supplied to him by the government were "systematically and maliciously confiscated"; audio tapes and legal materials also were removed from Plaintiff's possession while he was a pre-trial detainee at Otisville. In retaliation for his bringing legal materials into the Otisville compound area, Plaintiff claims, he was placed in administrative detention. Compl. at 1 (presumably ¶ A.)

Hendrickson also claims at various times to have been wrongly isolated from the general prison population based on alleged and allegedly erroneous OTV Medical Department claims that he had tuberculosis. *Id.* ¶ B. During these periods of medical confinement, Hendrickson claims that the "4A unit team" denied him personal visits, his right to send mail, and telephone communications and consultations necessary to his legal representation. *Id.* ¶ C.

Hendrickson claims that as part of his medical confinement he was "subjected to ruthless and inhumane [d]isciplinary action from the D[isciplinary] H [earing] O[fficer]," and was for 15 days placed in administrative detention and for 30 days deprived of commissary, visitation, and phone privileges. *Id.* ¶ D.

Hendrickson further alleges that commissary items that he had in his possession before entering medical confinement were wrongly confiscated from him, and while in such confinement he was assaulted and searched by the "OTV Riot Squad." *Id.* ¶ E. In addition, he claims, commissary receipts, as well as legal documents and other legal materials were confiscated from him. *Id.* ¶ F.

III.

Defendants argue that Plaintiff fails to state a claim for which relief may be granted. Of course, in considering a pro se pleading, the Court takes into consideration the special circumstances of pro se litigants. As the Second Circuit has often noted, "special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988); *accord, e.g., Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988); *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 767 (2d Cir.1983). We apply the same solicitous standard to the instant motion to dismiss.

Plaintiff, however, has failed to present to this Court either a colorable theory of violation of legal duties or facts to support a claim that might be inferred from the pleadings. Even assuming the truth of Plaintiff's allegations, the Court is left without a cognizable claim before it.

**\*3** At the outset, the Court notes that to the extent that the Complaint seeks injunctive relief from conditions of Plaintiff's treatment while at Otisville as a pre-trial detainee, the claim is now moot as Plaintiff has since been transferred to the United States Penitentiary in Lompoc, California following his conviction at trial. Hendrickson's Complaint also fails to the extent that it seeks damages from the United States government or government officials in their official capacity. Because the United States government enjoys sovereign immunity, it can be sued only to the extent it so consents. *United States v. Mitchell,* 445 U.S. 535, 538 (1980) (quoting *U.S. v. Sherwood,* 312 U.S. 584, 586 (1941)). No such immunity has been waived in

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**

suits for damages arising from constitutional violations. *Keene Corp. v. United States,* 700 F.2d 836, 845 n. 13 (2d Cir.), *cert. denied,* 464 U.S. 864 (1983). Thus, the only possible redress remaining available to Plaintiff for the harms alleged is a *Bivens* action [FN2] against government officials in their personal capacities for actions taken under the color of governmental authority.

As Defendants point out, however, Plaintiff has nowhere, other than in the caption of the Complaint, mentioned by name any of the individual named Defendants. Defs.' Mem.Supp.Mot.Dismiss or Summ.Jt. at 2. It is true that Plaintiff did in the body of the Complaint name the "4A Unit Team," the "DHO," and the "OTV Riot Squad," but these designations of group actions undifferentiated as to individuals and of official titles unconnected to any individual names do not allege the actionable *individual* behavior necessary to sustain a *Bivens* claim.

In a *Bivens* action, where Defendants are sued in their personal capacities, actionable behavior must be alleged as to individuals. *See, e.g., Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977); *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987), *cert. denied,* 489 U.S. 1065 (1989). A complaint that fails to make any specific factual allegations of "direct and personal responsibility on the part of any of the named defendants in regard to the loss of any of [plaintiff's] property" must be dismissed. *Lee v. Carlson,* 645 F.Supp. 1430, 1436 (S.D.N.Y.1986).

More importantly, the light in which a pro se complaint may be considered does not burn so brightly as to blind the court as to the rights of defendants who are entitled to have claims against them alleged with sufficient clarity to make possible a defense. Even in a pro se complaint, claims must "specify in detail the factual basis necessary to enable [defendants] intelligently to prepare their defense ..." *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977). Otherwise, blameless parties would be subject to damages claims for free-floating innuendo. To be sufficient before the law, a complaint

must state precisely who did what and how such behavior is actionable under law. Although the Court may make special efforts to understand the underlying claim of a vague, confusing, or poorly crafted pro se complaint that it would not undertake in connection with a claim prepared by legal counsel, it cannot do so to the extent that this would work an injustice to defendants, whose rights also must be protected. A defendant who is alleged to be liable for his actions has a right to have the claims against him spelled out with a basic degree of clarity and particularity. *See supra* at 7. Although some of the harms alleged by Plaintiff might conceivably be of some substance, the Court cannot understand from the documents before it which defendants are alleged to have participated in which allegedly actionable behavior. The Court cannot on such a basis subject a party to potential liability. *See* Defs' Mot. at 9, 10.

*Summary and Order*

**\*4** For the reasons stated, Plaintiff has failed to plead a colorable case. Defendants' motion to dismiss is granted.

> FN1. The Complaint states only that "Bureau of Prison institutional Law" was violated; subsequent documents filed by Plaintiff imply the violation of specific prison policies. *See, e.g.,* Letter from Hendrickson to Judge McKenna of 10/13/93 at 2 (citing BOP Policy Statement 1315.3 purportedly concerning prisoner access to legal materials while in administrative detention).

> FN2. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

S.D.N.Y.,1994.
Hendrickson v. U.S. Atty. Gen.
Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3911414 (W.D.N.Y.)
**(Cite as: 2010 WL 3911414 (W.D.N.Y.))**

**c**

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
W.D. New York.
Jeffrey ALLRED, Plaintiff,
v.
Captain KNOWLES, Hearing Officer Sgt. Noto,
Defendants.

No. 06–CV–0456Sr.
Oct. 5, 2010.

Jeffrey Allred, Queensvillage, NY, pro se.

Kim S. Murphy, NYS Attorney General's Office, Buffalo, NY, for Defendants.

### DECISION AND ORDER

H. KENNETH SCHROEDER, JR., United States Magistrate Judge.

**\*1** Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including entry of final judgment. Dkt. # 14.

Plaintiff, Jeffrey Allred, filed this *pro se* action seeking relief pursuant to 42 U.S.C. § 1983. Dkt. # 1. Plaintiff alleges that while an inmate at the Gowanda Correctional Facility ("Gowanda") his rights pursuant to the First, Eighth, and Fourteenth Amendments to the United States Constitution were violated. *Id.* Currently before the Court is defendants' motion for summary judgment. Dkt. # 18. For the following reasons, defendants' motion for summary judgment is granted and the plaintiff's complaint is dismissed in all respects.

### BACKGROUND

Plaintiff filed this action on July 11, 2006, against defendants, Michael Knowles and Louis Noto, pursuant to 42 U.S.C. § 1983, seeking monetary damages. *Id.* The action arises from a misbehavior report issued on or about July 27, 2003 by defendant Noto against plaintiff and the resulting Tier III disciplinary hearing conducted by defendant Knowles. *Id.* Specifically, the complaint alleges the issuance of a false misbehavior report, retaliation and violation of plaintiff's due process rights. *Id.*

At the time of the events alleged in the complaint, plaintiff was an inmate in the care and custody of the New State Department of Correctional Services ("DOCS") housed at Gowanda. Dkt. # 1, p. 2; Dkt. # 20, p. 1. Defendant Knowles was a Captain at Gowanda and his duties included, from time to time, conducting inmate disciplinary hearings. Dkt. # 1, pp. 3–4; Dkt. # 21, pp. 1–2. Sergeant Noto was a DOCS Sergeant on plaintiff's housing unit at Gowanda. Dkt. # 1, p. 4; Dkt. # 22, pp. 1–2.

On July 22, 2003, at approximately 8:30 p.m., Correctional Officer Millich discovered several marijuana cigarettes during a search of inmate Meja's cell. Dkt. # 22, p. 3. Consequently, defendant Noto initiated an investigation into the matter. Dkt. # 1, p. 8; Dkt. # 22, p. 3. Defendant Noto maintained that Meja told him that he had purchased the marijuana cigarettes from plaintiff. Dkt. # 22, p. 3. Based on Meja's identification of plaintiff and information allegedly received from confidential informant(s)—who identified plaintiff as a drug dealer and indicated that the sale in question occurred between 7:00 and 8:00 p.m. on July 22, 2003 in the prison yard—defendant Noto issued a misbehavior report charging plaintiff with violating Inmate Rule 113.25. Dkt. # 1, pp. 22 and 25; Dkt. # 22, p. 3. Inmate Rule 113.25 provides that "an inmate shall not make, possess, sell or exchange any narcotic, narcotic paraphernalia, controlled substance or marijuana. An inmate shall not conspire with any person to introduce such items into the facility." Dkt. # 22, p. 2; *see also* 7 NYCRR § 270.2(14)(xv).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3911414 (W.D.N.Y.)
**(Cite as: 2010 WL 3911414 (W.D.N.Y.))**

On July 28, 2003, a Tier III disciplinary hearing was conducted before defendant Knowles. Dkt. # 1, p. 23; Dkt. # 21, p. 2. At the hearing, plaintiff testified in his own defense that he was at a Nation of Islam ("NOI")/Black studies program during the period of the alleged drug sale in the prison yard. Dkt. # 1, p. 24; Dkt. # 21, p .6. Plaintiff called two other inmates, Ford and Williams, as alibi witnesses. Dkt. # 1, p. 29; Dkt. # 21, p. 7. Ford and Williams attended the NOI/Black studies program with plaintiff, but could not verify the time plaintiff left. Dkt. # 21, pp. 7 and 16. The sign-out sheet for the NOI/Black studies class did not indicate the time plaintiff left, although it indicated that both Ford and Williams left at 7:00 p.m. Plaintiff did not sign back into his housing unit until 8:10 p.m. and no one was able to verify his whereabouts after 7:00 p.m. Dkt. # 21, p. 17. Defendant Knowles interviewed the confidential informant(s) outside the presence of plaintiff and found them to be credible witnesses. Dkt. # 21, pp. 7–8. The confidential informant(s) identified plaintiff as a drug dealer and indicated that the sale of the drugs to Meja occurred between 7:00–8:00 p.m. in the prison yard. *Id.* Meja also testified at the hearing, and recanted his initial identification of plaintiff as the person who sold him drugs. Dkt. # 1, p. 26; Dkt. # 21, p. 11. When asked by defendant Knowles why he initially told defendant Noto that plaintiff was the individual who sold him drugs, Meja answered that he did so because he wanted defendant Noto to "leave [him] alone." Dkt. # 24, Ex. D, p 5. In response, defendant Knowles asked Meja to confirm, by answering in either the affirmative or the negative, if he initially identified plaintiff as the individual who sold him drugs, to which Meja answered in the affirmative. *Id.*

**\*2** On August 3, 2003, at the close of the disciplinary hearing, defendant Knowles entered a guilty finding against plaintiff. Dkt. # 24, Ex. C. Based on the Hearing Disposition Report completed by defendant Knowles, he based his guilt determination on the following evidence: defendant Noto's misbehavior report and his testimony that Meja initially identified plaintiff as the individual who sold Meja drugs in the yard; and the testimony of the confidential informant(s). *Id.* Defendant Knowles imposed a penalty of 12 months of confinement in special housing unit ("SHU") and a loss of privileges between the period August 22, 2003 and August 22, 2004.

## DISCUSSION AND ANALYSIS
### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a pro se plaintiff." *Thomas v. Irvin,* 981 F.Supp. 794, 799 (W.D.N.Y.1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Catanzaro v. Weiden,* 140 F.3d 91, 93 (2d Cir.1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248; *see Bryant v. Maffucci,* 923 F.2d 979 (2d Cir.1991), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant,* 923 F.2d at 982. A party seeking to defeat a motion for summary judgment must do more than make broad factual allegations and invoke the ap-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3911414 (W.D.N.Y.)
**(Cite as: 2010 WL 3911414 (W.D.N.Y.))**

propriate statute. The non-moving party must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial. *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995).

Pursuant to Fed.R.Civ.P. 56(e), affidavits in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Thus, affidavits "must be admissible themselves or must contain evidence that will be presented in an admissible form at trial." *Santos v. Murdock,* 243 F.3d 681, 683 (2d Cir.2001), *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also H. Sand & Co. v. Airtemp Corp.,* 934 F.2d 450, 454–55 (2d Cir.1991) (hearsay testimony that would not be admissible if testified to at trial may not properly be set forth in an affidavit).

**Due Process Claim**

**\*3** Plaintiff alleges that defendants deprived him of his constitutional right to procedural due process. Dkt. # 1, p. 42. This allegation appears to be based on the following: (1) that he was not afforded all of the procedural safeguards set forth in *Wolff v. McDonnell*[FN1] during the Tier III disciplinary hearing; and (2) that defendant Knowles was not an impartial hearing officer.

FN1. 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1975).

To prevail on a procedural due process claim under § 1983, a plaintiff must show that he possessed a protected property or liberty interest and that he was deprived of that interest without being afforded sufficient procedural safeguards. *See Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir.2000) (liberty interest); *Hynes v. Squillace,* 143 F.3d 653, 658 (2d Cir.1998).

"A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004) (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In assessing whether the discipline imposed rises to this level, the Court of Appeals for the Second Circuit has directed the district courts to consider both the conditions of confinement and their duration, "since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Id.,* quoting *Sealey v. Giltner,* 197 F.3d 578, 586 (2d Cir.1999). In light of this standard, the Court of Appeals has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights" and has "explicitly noted that SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions ... or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer,* 364 F.3d at 64–65.

Notwithstanding the foregoing, courts in this Circuit "generally require that the duration of confinement be at least 100 days" to be categorized as constituting an "atypical and significant hardship." *Palmer v. Goss,* No. 02 Civ 5804(HB), 2003 U.S. Dist. LEXIS 18103, 2003 WL 22327110 (S.D.N.Y. Oct. 10, 2003), *aff'd, Palmer,* 364 F.3d 60; *Sims v. Artuz,* 230 F.3d 14, 24 (2d Cir.2003) (vacating dismissal of, *inter alia,* procedural due process claims, stating, during little more than a 4 1/2 month period, Sims was sentenced to SHU for a total of nearly 3 1/2 years); *Durran v. Selsky,* 251 F.Supp.2d 1208, 1214 (W.D.N.Y.2003) (quoting *Tookes v. Artuz,* No. 00CIV4969, 2002 U.S. Dist. LEXIS 12540, 2002 WL 1484391 (S.D.N.Y. July 11, 2002)) ("[c]ourts in this Circuit routinely hold that an inmate's confinement in special housing for 101 days

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3911414 (W.D.N.Y.)
**(Cite as: 2010 WL 3911414 (W.D.N.Y.))**

or less, absent additional egregious circumstances, does not implicate a liberty interest."); *Colon v. Howard,* 215 F.3d 227, 232 (2d Cir.2000) (instructing district courts to develop detailed factual records "in cases challenging SHU confinements of durations within the range bracketed by 101 days and 305 days"). Here, following the Tier III disciplinary hearing, defendant Knowles imposed a penalty of 12 months of confinement in SHU and a loss of privileges between the period August 22, 2003 and August 22, 2004. Thus, there can be no dispute that plaintiff has demonstrated a protected liberty interest. The issue that remains and that which will be addressed below, is whether plaintiff was deprived of that protected liberty interest without due process. Defendants maintain that plaintiff was not. Dkt. # 21, p. 2; Dkt. # 22, p. 7.

**\*4** In *Wolff,* the Supreme Court enumerated certain procedural safeguards that must be afforded to an inmate during the course of a prison disciplinary proceeding in order to ensure that the minimum requirements of procedural due process are satisfied. *Wolff,* 418 U.S. at 563–66. Specifically, the Supreme Court identified the following procedures: advance written notice of the claimed violation or charges; the opportunity for an inmate to call witnesses and present documentary evidence in his/her defense, provided that such a process would not jeopardize institutional safety; and a written statement by the fact finder of the evidence relied upon and the reasons for the disciplinary action taken. *Id* . Additionally, the findings must be supported by some evidence in the record. *Walpole v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

Here, contrary to plaintiff's contention, he was afforded all of the procedural safeguards set forth in *Wolff.* Dkt. # 24, p 4–5. Plaintiff was provided with a copy of defendant Noto's misbehavior report before the hearing, giving him advance notice of the charge against him.[FN2] Dkt. # 1, p. 22; Dkt. # 21, p. 5. Plaintiff had the opportunity to call witnesses and present evidence. Dkt. # 1, pp. 26, 29; Dkt. #

21, pp. 6, 8. Plaintiff was also provided with a written statement of the guilty finding and the evidence relied on for the disposition. Dkt. # 21, p. 12. The guilty disposition was supported by evidence in the form of defendant Noto's notes; defendant Noto's misbehavior report and testimony; and the testimony of the confidential informant(s), particularly because plaintiff's alibi was uncorroborated. *Id.* at pp. 10–11. Thus, plaintiff's claim that he was deprived of procedural due process fails as a matter of law.

> FN2. Plaintiff concedes this fact. However, he suggests that he was deprived of his due process rights under the standard set forth in *Wolff* because defendant Knowles found him guilty of drug possession, rather than sale of a narcotic substance, which he was charged with in the misbehavior report. Dkt. # 24, p 5. However, inmate Rule 113.25, which plaintiff was charged with in the misbehavior report and found guilty of at the close of the Tier III hearing, encompasses possession **and** sale of a narcotic. Dkt. # 21, pp. 5 and 19.

**Impartial Hearing Officer**

Plaintiff contends, in particular, that his due process rights were violated because defendant Knowles was not an impartial hearing officer. *See* Dkt. # 1, p. 6–8. Plaintiff points to the following to support his allegation: (1) that defendant Knowles was involved in both the Tier III hearing and in the investigation into plaintiff's drug sale; (2) that defendant Knowles instructed Meja to respond affirmatively at the hearing that plaintiff had sold Meja drugs although Meja testified at the hearing that he did not know plaintiff; and (3) that defendant Knowles rejected his alibi and confused the time of the drug sale at issue. Dkt. # 1, pp. 28, 39; Dkt. # 24, p. 6.

Indeed, as plaintiff correctly contends, "[a]n inmate subject to a disciplinary hearing is entitled to an impartial hearing officer." *Allen v. Cuomo,* 100 F.3d 253, 259 (2d Cir.1996); *see Wolff,* 418 U.S. at

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3911414 (W.D.N.Y.)
**(Cite as: 2010 WL 3911414 (W.D.N.Y.))**

570–71; *Russell v. Selsky,* 35 F.3d 55, 59 (2d Cir.1994). An impartial hearing officer "is one who, inter alia, does not prejudge the evidence and who cannot say ... how he would assess evidence he has not yet seen." *Patterson v. Coughlin,* 905 F.2d 564, 569–70 (2d Cir.1990); *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989) ("it would be improper for prison officials to decide the disposition of a case before it was heard").

**\*5** It is well recognized, however, "that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Allen,* 100 F.3d at 259; *see Francis,* 891 F.2d at 46 ("Because of the special characteristics of the prison environment, it is permissible for the impartiality of such officials to be encumbered by various conflicts of interest that, in other contexts, would be adjudged of sufficient magnitude to violate due process."). For example, "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges generally." *Allen,* 100 F.3d at 259; *see Francis,* 891 F.2d at 46. A hearing officer may satisfy the standard of impartiality if there is *"some evidence* in the record" to support the findings of the hearing. *Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (emphasis added).

In this case, there is ample evidence to support defendant Knowles' guilty finding: defendant Noto's misbehavior report and his testimony that Meja originally identified plaintiff as the individual who sold him drugs; and the testimony of the confidential informant(s), which was considered outside the presence of plaintiff. Dkt. # 21, pp. 8–9.

Notably, plaintiff's only defense at the Tier III hearing was that he had been at an NOI/Black studies program at the time of the drug sale, which took place allegedly between 7:00–8:00 p.m. Dkt. # 21, p. 7. However, inmates Ford and Williams could not verify plaintiff's alibi defense. *Id.* Because plaintiff did not sign back into his cell area until 8:10 p.m., defendant Knowles determined that there was ample time for plaintiff to sell the drugs in the

yard during the period of his unexplained absence. Dkt. # 21, pp. 7, 16–18.

Plaintiff further contends that defendant Knowles violated his constitutional right to due process by failing to adhere to the state guidelines for conducting prison disciplinary hearings (set forth in Title 7 of the NYCRR §§ 253.1(b), 254.1 FN3) because, he alleges, that defendant Knowles conducted the Tier III hearing and was also involved in the investigation of plaintiff's drug sale. Dkt. # 24, p 6.

> FN3. 7 NYCRR § 253.1 gives superintendents the discretion to designate DOCS employees to conduct disciplinary hearings. Pursuant to § 253.1(b), "[n]o person who has participated in any investigation of the acts shall be a hearing officer at a hearing relating to those acts, nor shall any person who has prepared or caused to be prepared the misbehavior report on which a hearing is held, act as the hearing officer on that charge." Section § 254.1 of 7 NYCRR precludes a person who was a witness to or who investigated an incident that is the subject of a disciplinary proceeding from acting as a hearing officer relating to that incident.

This argument fails because violations of state law that do not deprive the plaintiff of a right "secured by the Constitution and laws" are insufficient to support a claim under § 1983. *See Baker v. McCollan,* 443 U.S. 137, 139–40, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Shakur v. Selsky,* 391 F.3d 106, 119 (2d Cir.2004); *Blouin v. Spitzer,* 356 F.3d 348, 362 (2d Cir.2004). State procedural protections do not give rise to substantive federal rights. *See Olim v. Wakinekona,* 461 U.S. 238, 249–50, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Holcomb v. Lykens,* 337 F.3d 217, 224 (2d Cir.2003) ("[S]tate statutes do not create federally protected due process entitlements to specific state-mandated procedures."). Moreover, "[s]tate procedures designed to protect substantive liberty interests entitled to pro-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3911414 (W.D.N.Y.)
**(Cite as: 2010 WL 3911414 (W.D.N.Y.))**

tection under the federal constitution do not themselves give rise to additional substantive liberty interests." *Blouin,* 356 F.3d at 363. It is "federal law, not state regulations, [that] determines the procedures necessary to protect that liberty interest ." *Id.* (citing *Watson v. City of New York,* 92 F.3d 31, 38 (2d Cir.1996)). Therefore, "the only relevant inquiry was whether the constitutional [procedures] were met, not whether state procedures were followed." *Shakur,* 391 F.3d at 119 (citing *Holcomb,* 337 F.3d at 224). As set forth above, plaintiff's constitutional rights were not violated during the Tier III hearing. Plaintiff's exclusive reliance on defendants' alleged violations of 7 NYCRR §§ 253.1(b) and 254.1 is insufficient to support his claim under § 1983. *See Shakur,* 391 F.3d at 119; *Holcomb,* 337 F.3d at 224; *Ramsey v. Goord,* 661 F.Supp.2d 370, 391–92 (W.D.N.Y.2009).

**\*6** Accordingly, since plaintiff received all of the process he was due in the course of the Tier III disciplinary hearing, defendants' motion for summary judgment on plaintiff's due process claim is granted.

**Retaliation Claim**

Plaintiff alleges that, in retaliation for attending a Nation of Islam ("NOI")/Black Studies course and/or for his affiliation therewith, defendant Noto filed a false misbehavior report and gave false testimony and that defendant Knowles found him guilty. Dkt. # 1, p. 43.

"In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for 'adverse action' taken against him by defendants." *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citing *Gayle v. Gonyea,* 313 F.3d 677 (2d Cir.2002); *see also Hendricks v. Coughlin,* 114 F.3d 390 (2d Cir.1997)). Third, the plaintiff must establish a causal connection between the protected speech and the adverse action. *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (citing *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), overruled on other grounds, *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).

The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.' " *Gill v. Pidlypchak,* 389 F.3d at 381 (quoting *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003), superseded by 2003 U.S.App. LEXIS 13030, 2003 WL 360053 (2d Cir. Feb. 10, 2003)) (omission in the original). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.*

The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Bennett,* 343 F.3d at 137 (citing *Dawes,* 239 F.3d at 491). Accordingly, plaintiff must set forth nonconclusory allegations. *Id.* Finally, even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Id.*

A prison inmate has no constitutionally-guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest, as long as the prisoner is provided with procedural due process. *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986). However, if a defendant initiated disciplinary proceedings against plaintiff in retaliation for his exercise of a constitutionally protected right, substantive due process rights are implicated even if the plaintiff did receive full procedural due process. *Franco v. Kelly,* 854 F.2d 584, 588–89 (2d Cir.1988). Any adverse action taken by defendant in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself, states a viable constitutional claim. *Id.*

**\*7** Here, even assuming plaintiff's affiliation

Not Reported in F.Supp.2d, 2010 WL 3911414 (W.D.N.Y.)
**(Cite as: 2010 WL 3911414 (W.D.N.Y.))**

with the NOI/Black studies program was constitutionally protected conduct, he cannot show that his affiliation therewith was a substantial motivating factor for the filing of the misbehavior report and the subsequent finding of guilt concerning the report. Defendant Knowles declares that he "did not even recall plaintiff prior to the hearing he conducted," and had no involvement whatsoever in any NOI activities. Dkt. # 21, p. 22. Similarly, defendant Noto declares that he had no knowledge of plaintiff's participation in the NOI/Black Studies program, and, up until the time of the instant litigation, "did not know that plaintiff attended such a course or was a member of the NOI." Dkt. # 22, p. 6. To this extent, plaintiff cannot demonstrate that his affiliation with the NOI/Black studies program was a motivating factor in defendants' actions. Since plaintiff cannot establish any plausible connection between NOI/Black studies participation and the misbehavior report and the guilty finding, his retaliation claim fails as a matter of law.

Assuming, *arguendo,* that plaintiff could show that the disciplinary actions were motivated by retaliatory animus (an assumption that has no basis in the record before this Court), plaintiff's retaliation claims would fail because defendants can easily show that they would have taken the same disciplinary actions even in the absence of the protected conduct. *See Davidson v. Chestnut,* 193 F.3d at 149 ("At the summary judgment stage, if the undisputed facts demonstrate that the challenged action clearly would have been taken on a valid basis alone, defendants should prevail."). The record shows that there was sufficient evidence, based on defendant Noto's investigation, to have charged plaintiff with a drug sale. Further, there was ample evidence at the Tier III disciplinary hearing for defendant Knowles to find plaintiff guilty of the drug sale charge. This is so particularly in the context of prison administration where courts must be cautious to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage. *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994).

Accordingly, defendants' motion for summary judgment on plaintiff's claim of retaliation is granted.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted. Dkt. # 18. The Clerk of the Court is directed to enter judgment in favor of the defendants.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

**\*8 SO ORDERED.**

W.D.N.Y.,2010.
Allred v. Knowles
Not Reported in F.Supp.2d, 2010 WL 3911414 (W.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



LEXSEE 1995 U.S.DIST. LEXIS 7136

**MINA POURZANDVAKIL, Plaintiff, -against- HUBERT HUMPHRY, JUDISICIAL SYSTEAM OF THE STATE OF MINNESOTA AND OLMESTED COUNTY COURT SYSTEAM, AND STATE OF MINNESOTA, SAINT PETER STATE HOSPITAL, DOCTOR GAMMEL STEPHELTON, ET EL ERICKSON, NORTH WEST BANK AND TRUST, OLMESTED COUNTY SOCIAL SERVICE, J.C. PENNY INSURNCE, METMORE FINICIAL, TRAVELER INSURNCE, COMECIAL UNION INSURNCE, HIRMAN INSURNCE, AMRICAN STATE INSURNCE, FARMERS INSURNCE, C. O BROWN INSURNCE, MSI INSURNCE, STEVEN YOUNGQUIST, KENT CHIRSTAIN, MICHEAL BENSON, UNITED AIRLINE, KOWATE AIRLINE, FORDMOTOR CRIDITE, FIRST BANK ROCHESTER, GEORGE RESTWICH, BRITISH AIRWAYS, WESTERN UNION, PRUDENIAL INSURNCE, T.C.F. BANK, JUDGE SANDY KIETH, JUDGE NIERGARI, OLMESTEAD COUNTY JUDGERING, JUDGE MORES, JUDGE JACOBSON, JUDGE CHALLIEN, JUDGE COLLIN, JUDGE THOMASE, JUDGE BUTTLER, JUDGE MORKE, JUDGE MOWEER, SERA CLAYTON, SUSAN MUDHAUL, RAY SCHMITE, Defendants.** [1]

    1   Names in the caption are spelled to reflect plaintiffs complaint.

Civil Action No. 94-CV-1594

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK

*1995 U.S. Dist. LEXIS 7136*

May 22, 1995, Decided
May 23, 1995, FILED

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff filed a complaint accusing defendants with kidnapping plaintiff and her daughter, torturing plaintiff in the Mayo Clinic, and causing plaintiff and her daughter to suffer physically, financially, and emotionally. Certain defendants sought vacation of the defaults entered against them without proper service, some sought dismissal of the complaint, and some sought both vacation of the defaults and dismissal.

**OVERVIEW:** Plaintiff served defendants by certified mail. The court determined that such service was not authorized under federal law or under either New York or Minnesota law. Additionally, plaintiff's extraterritorial service of process was not effective under *Fed. R. Civ. P.*

*4(k).* Defendants were not subject to federal interpleader jurisdiction, and they were not joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19.* No federal long-arm statute was argued as a basis for jurisdiction, and the alleged harm did not stem from acts in New York for jurisdiction under *N.Y. C.P.L.R. § 302(a).* The complaint showed no basis for subject matter jurisdiction against defendants that were insurance companies with no apparent relationship to claims of rape, torture, harassment, and kidnapping, and the court found that no basis for supplemental jurisdiction under *28 U.S.C.S. § 1367(a)* existed. Venue was clearly improper under *28 U.S.C.S. § 1391(b)* because no defendant resided in the district and none of the conduct complained of occurred there. Plaintiff's claims of civil rights violations were insufficient because her complaint was a litany of general conclusions, not specific allegations of fact.

**OUTCOME:** The court vacated all defaults. The court dismissed plaintiff's complaint against all moving and non-moving defendants. The dismissal of the complaint against certain defendants premised on the court's lack of power either over the person of the defendant or the subject matter of the controversy was without prejudice, but dismissals against the remaining defendants were with prejudice. Requests for sanctions and attorney's fees were denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Residential Service*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Agents*
*Governments > Federal Government > Employees & Officials*
[HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2)*. Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed. R. Civ. P. 4(e)(1)*.

*Business & Corporate Law > Agency Relationships > Agents Distinguished > General Overview*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Corporations*
[HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1), 4(e)(1)*.

*Civil Procedure > Pleading & Practice > Service of Process > Methods > General Overview*
[HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *N.Y. C.P.L.R. §§ 308, 311* (Supp. 1995); *N.Y. Bus. Corp. Law § 306* (Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995).

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview*
*Governments > Local Governments > Claims By & Against*
[HN4] Service on states, municipal corporations, or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2)*. Minnesota law does not authorize service on a governmental entity by certified mail. Minn. R. 4.03(d), (e) (1995).

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Parties > Interpleaders > General Overview*
[HN5] A plaintiff's extraterritorial service of process in New York can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York state; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. R. Civ. P. 4(k)*.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
[HN6] *N.Y. C.P.L.R. § 302(a)* provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state such as transacting any business in the state and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General*

*Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent Claims*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN7] *28 U.S.C.S. § 1367(a)* requires a relationship between the state and federal claims for pendent jurisdiction so that they form part of the same case or controversy.

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN8] See *28 U.S.C.S. § 1391(a)*.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN9] See *28 U.S.C.S. § 1391(1)*.

*Civil Procedure > Venue > Federal Venue Transfers > Improper Venue Transfers*
*Civil Procedure > Venue > Individual Defendants*
*Civil Procedure > Venue > Multiparty Litigation*
[HN10] Where venue is laid in the wrong district, the court shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought. *28 U.S.C.S. § 1406(a)*.

*Civil Procedure > Venue > Motions to Transfer > General Overview*
*Civil Procedure > Judicial Officers > Judges > Discretion*
*Governments > Legislation > Statutes of Limitations > General Overview*
[HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is to eliminate impediments to the timely disposition of cases and controversies on their merits.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss*
[HN12] Where a court has already dismissed against the moving parties on jurisdictional grounds, it has no power to address a *Fed. R. Civ. P. 12(b)(6)* issue.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*

*Civil Rights Law > General Overview*
[HN13] Complaints that rely on civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights instead of a litany of general conclusions that shock but have no meaning.

*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN14] A pro se plaintiff's complaint must be construed liberally and should be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN15] Even pro se complaints must show some minimum level of factual support for their claims.

*Civil Procedure > Parties > Self-Representation > General Overview*
*Civil Procedure > Counsel > Appointments*
*Civil Rights Law > Prisoner Rights > Prison Litigation Reform Act > Claim Dismissals*
[HN16] The United States Supreme Court explicitly has acknowledged a district court's power under *28 U.S.C.S. § 1915(d)* to dismiss as frivolous a complaint that lacks an arguable basis either in law or in fact. The Supreme Court has explicitly declined to rule, however, on whether a district court has the authority to dismiss sua sponte frivolous complaints filed by non-indigent plaintiffs. The law in the district of New York is that a district court may sua sponte dismiss a frivolous complaint even if the plaintiff has paid the filing fee.

**COUNSEL:** [*1] HUBERT H. HUMPHREY, III, Attorney General of the State of Minnesota, Attorney for Hubert H. Humphry, III, Judicial System of the State of Minnesota, St. Peter Regional Treatment Center, Gerald Gammell, MD, William Erickson, MD, Thomas Stapleton, MD, the Honorable James L. Mork, Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen, and Judge Lawrence Collins, St. Paul, MN, OF COUNSEL: JEROME L. GETZ, Assistant Attorney General.

CONDON & FORSYTH, P.C., Attorneys for British Airways, P.L.C. and Kuwait Airways Corp., New York, NY, OF COUNSEL: STEPHEN J. FEARON, ESQ., MICHAEL J. HOLLAND, ESQ.

DUNLAP & SEEGER, P.C., Attorneys for Olmsted County, Raymond Schmitz, Susan Mundahl, Norwest Bank Minnesota, N.A. (the Northwest Bank & Trust), C.O. Brown Agency, Inc., Rochester, MN, OF COUNSEL: GREGORY J. GRIFFITHS, ESQ.

ARTHUR, CHAPMAN, McDONOUGH, KETTERING & SMETAK, P.A., Attorneys for J.C. Penney Insurance Co. and Metropolitan Insurance Co., Minneapolis, MN, OF COUNSEL: EUGENE C. SHERMOEN, JR., ESQ.

SHAPIRO & KREISMAN, Attorneys for Metmor Financial, Inc., Rochester, NY, OF COUNSEL: JOHN A. DiCARO, ESQ.

COSTELLO, COONEY & FEARON, Attorneys [*2] for Travelers Insurance Companies; Hirman Insurance; Commercial Union Insurance Companies, Syracuse, NY, OF COUNSEL: PAUL G. FERRARA, ESQ., ROBERT J. SMITH, ESQ.

SMITH, SOVIK, KENDRICK & SUGNET, P.C., Attorneys for American States Insurance Co. and Prudential Insurance Co., Syracuse, NY, OF COUNSEL: THOMAS N. KAUFMANN, ESQ.

STEVEN C. YOUNGQUIST, ESQ., Pro Se, Rochester, MN.

THOMAS J. MARONEY, United States Attorney, Attorney for Michael Benson, Postmaster, Northern District of New York, Syracuse, NY, OF COUNSEL: WILLIAM F. LARKIN, Assistant United States Attorney.

GEORGE F. RESTOVICH & ASSOCIATES, Attorneys for George F. Restovich, Esq., Rochester, MN, OF COUNSEL: GEORGE F. RESTOVICH, ESQ.

CONBOY, McKAY, BACHMAN & KENDALL, L.L.P., Attorneys for Western Union, Watertown, NY, OF COUNSEL: GEORGE K. MYRUS, ESQ.

RICHARD MAKI, Pro Se, Rochester, MN.

**JUDGES:** ROSEMARY S. POOLER, UNITED STATES DISTRICT JUDGE

**OPINION BY:** ROSEMARY S. POOLER

**OPINION**

***MEMORANDUM-DECISION AND ORDER***

**INTRODUCTION**

In the four and one-half months since she filed this action, plaintiff Mina Pourzandvakil has filed three amended complaints and ten motions. She also has sought and received [*3] entry of default against ten defendants, none of whom she properly served. She twice has sought and been denied temporary restraining orders. She has included in her action defendants with no apparent connection to this forum, that were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of defendants have filed a total of twelve motions, some seeking vacation of the defaults entered against them, some seeking dismissal and others seeking both. We grant defendants' motions insofar as they seek vacation of the clerk's entries of default and dismissal of the complaint. We vacate *sua sponte* the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

**BACKGROUND**

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. [*4] Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also [*5] adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint

on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce [2] ("J.C. Penney"), British Airways, Kowate (sic) Airline ("Kuwait"), MSi Insurnce (sic) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (sic) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default,    [*6]    it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March [*7] 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper [3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

> 2    Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved

for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

> 3    Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

[*8]    The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or *Rule 12 of the Federal Rules of Civil Procedure*. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to *Fed. R. Civ. P. 12(b)* or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson [*9] and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to

Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. [*10] Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

> 4  The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against nonmoving defendants for failure to state a claim on which relief can be granted.
>
> 5  The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

[*11] Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

## ANALYSIS

### The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. [HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2).* Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed.* [*12] *R. Civ. P.*

*4(e)(1).* [HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1)* and *4(e)(1).* [HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See* N.Y. Civ. Prac. L. & R. §§ 308, 311 (McKinney Supp. 1995); *N.Y. Bus. Corp. Law § 306* (McKinney Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995). Finally, [HN4] service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2).* Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. [*13] R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

## II. The Jurisdictional Arguments

In addition to raising various [*14] other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

### A. Personal Jurisdiction

Maki, the state defendants, Olmsted County,

Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. [HN5] Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant [*15] is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Rule 14* or *Rule 19 of the Federal Rules of Civil Procedure* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. R. Civ. P. 4(k)*. Defendants are not subject to federal interpleader jurisdiction and they were not joined pursuant to *Rule 14* or *Rule 19*. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to *Rule 4(k). See N.Y. Civ. Prac. L. & R. § 302* (McKinney Supp. 1995). This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain [*16] minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id. § 302(a)*. The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of *Section 302(a)*. Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

## B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by *Fed. R. Civ. P. 8(a)(1)*. Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman*, argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff [*17] was a party. *District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983)*. These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. *28 U.S.C. § 1332*. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's [*18] address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under *28 U.S.C. § 1367(a). Section 1367(a)* [HN7] requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

6    We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. *28 U.S.C. § 1332(a)*. However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id. § 1332(a)(2)*. Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of *28 U.S.C. §*

*1603*. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See 28 U.S.C. § 1330*. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under *Section 1332. Cf. Hiram Walker & Sons, Inc. v. Kirk Line, 877 F.2d 1508, 1511-1512 (11th Cir. 1989), cert. denied, 131 L. Ed. 2d 219, 115 S. Ct. 1362 (1995)* (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under *28 U.S.C. § 1332*.

[*19] We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

## C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. [*20] The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

[HN8] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or

omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

*28 U.S.C. § 1391(a). Section 1391(b)* provides that federal question actions, except as otherwise provided by law, may be brought only in

[HN9] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

[*21] *Id. § 1391(b)*. The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. [HN10] Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id. § 1406(a)*. Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. [HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993)* (holding that it was an improper exercise of discretion to dismiss rather than transfer [*22] when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United

States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

### III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).* [7] [HN12] We already [*23] have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the *Rule 12(b)(6)* issue only on ASI's motion. *See Bell v. Hood, 327 U.S. 678, 682-83, 90 L. Ed. 939, 66 S. Ct. 773 (1946)* (subject matter jurisdiction); *Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963)* (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

> 7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other [*24] defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. [HN13] Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation [*25]

of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).* [HN14] A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)* (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr, 810 F.2d at 363.*

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not [*26] pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to [*27] amend her pleading and plaintiff still was not able to offer specifics. [9] [HN15] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White, 886 F.2d 721, 724 (4th Cir. 1989)).* We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).*

> 8    Former Supreme Court Justice Harry A. Blackmun.
> 9    We note also that plaintiff has not requested leave to amend in this action.

We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under *28 U.S.C. § 1915(d),* holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. [*28] [HN16] The Supreme Court explicitly has acknowledged a district court's power under *Section 1915(d)* to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams, 490 U.S. 319, 325, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989).* The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id. at 329 n.8.* The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter, 151 F.R.D. 537, 540 (S.D.N.Y. 1993),* aff'd 41 F.3d 1500 (2d Cir. 1994); *cf. Pillay v. I.N.S., 45 F.3d 14, 17 (2d Cir. 1995) (per curiam)* (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts [*29] and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler, 151 F.R.D. at 540.*

**IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions**

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture, 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991).* Moreover, her litigiousness has not yet reached the point

at which courts in this circuit have justified injunctive relief. *See id. at 694* (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants [*30] on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id. at 695.*

**CONCLUSION**

All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 188-9 (5th Cir. 1986)* (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co., 377 F.2d 194, 199 n.3 (2d Cir. 1967)* (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 875 (3d Cir.) cert. denied, 322 U.S. 740, 88 L. Ed. 1573, 64 S. Ct. 1057 (1944)* (dismissal for lack of personal jurisdiction is not [*31] a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

DATE: May 22, 1995

Syracuse, New York

ROSEMARY S. POOLER

UNITED STATES DISTRICT JUDGE